**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OTSUKA PHARMACEUTICAL CO., LTD. AND H. LUNDBECK A/S, | |
| Plaintiffs, | C.A. No. 19-1938-LPS |
| v. | |
| ZENARA PHARMA PRIVATE LTD. AND BIOPHORE INDIA PHARMACEUTICALS PRIVATE LTD., | |
| Defendants | |



**DEFENDANTS ZENARA AND BIOPHORE'S BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE MOTION FOR JUDGMENT ON THE PLEADINGS
OF NONINFRINGEMENT OF THE '419 PATENT**

OF COUNSEL:

Dmitry V. Shelhoff
Kenneth S. Canfield
Edward D. Pergament
PERGAMENT & CEPEDA LLP
89 Headquarters Plaza
North Tower, 14th Floor, Suite 1465
Morristown, NJ 07960
(973) 998-7722
dshellhoff@pergamentcepeda.com
kcanfield@pergamentcepeda.com
epergament@pergamentcepeda.com

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendants
Zenara Pharma Private Ltd. and
Biophore India Pharmaceuticals Private Ltd.*

Dated: May 14, 2020

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ ii

I.  Nature and Stage of Proceedings ........................................................................ 1

II.  Summary of Argument ......................................................................................... 1

III.  Statement of Facts ................................................................................................ 2

    A.  The '419 Patent ........................................................................................... 2

    B.  Biophore's ANDA Products ....................................................................... 7

IV.  Legal Standard ...................................................................................................... 8

    A.  Judgment on the Pleadings ......................................................................... 8

    B.  Limitations on the Doctrine of Equivalents .............................................. 9

    C.  Non-Infringement at the Rule 12(c) Stage .............................................. 11

V.  Argument ............................................................................................................ 14

    A.  No Literal Infringement ............................................................................ 14

    B.  No Infringement under the Doctrine of Equivalents .............................. 14

VI.  Conclusion .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Coherus BioSciences Inc.*,
 931 F.3d 1154 (Fed. Cir. 2019)...................................................................... 10, 11, 13, 16

*Amgen Inc. v. Coherus Biosciences Inc.*,
 C.A. No. 17-546, 2018 WL 1517689 (D. Del. Mar. 26, 2018)...................................... passim

*Anderson v. Local 435Union*,
 C.A. No. 12-1119, 2014 WL 495561 (D. Del. Sep. 30, 2014) ................................................ 9

*Boldrini v. Wilson*,
 542 F. App'x 152 (3d Cir. Oct 17, 2013)................................................................................. 9

*CSP Techs., Inc. v. Sud-Chemie AG*,
 643 F. App'x 953 (Fed. Cir. Mar. 22, 2016)........................................................................... 9

*Eagle Pharms. Inc v Slayback Pharma LLC*,
 382 F. Supp. 3d 341 (D. Del. 2019)............................................................................. *passim*

*Eagle Pharms. Inc v Slayback Pharma LLC*,
 No. 19-1924, slip op. (Fed. Cir. May 8, 2020) ............................................................ *passim*

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
 535 U.S. 722 (2002).............................................................................................................. 10

*In re Bendamustine Consol. Cases*,
 C.A. No. 13–2046, 2015 WL 1951399 (D. Del. Apr. 29, 2015) ................................... *passim*

*In re Burlington Coat Factory*,
 114 F.3d 1410 (3d Cir. 1997)................................................................................................. 8

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
 734 F.3d 1352 (Fed. Cir. 2013)...................................................................................... 10, 16

*Johnson & Johnson Assocs. v. R.E. Serv. Co.*,
 285 F.3d 1046 (Fed. Cir. 2002) (en banc).............................................................................. 9

*Maxwell v. J. Baker, Inc.*,
 83 F.3d 1098 (Fed. Cir. 1996)............................................................................................ 9, 14

*Planet Bingo, LLC. v. GameTech Int'l, Inc.*,
 472 F.3d 1338 (Fed. Cir. 2006)....................................................................................... 11, 17

*Rosenau v. Unifund Corp.*,
 539 F.3d 218 (3d Cir. 2008)................................................................................................... 8

*Warner-Jenkinson Co. Inc. v. Hilton Davis Chem. Co.*,
 520 U.S. 17 (1997)................................................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(c) ............................................................................................................. 1, 8

## I.  **NATURE AND STAGE OF PROCEEDINGS**

On October 11, 2019, Plaintiffs filed their Hatch-Waxman complaint (D.I. 1) against Defendants Zenara Pharma Private Ltd. and Biophore India Pharmaceuticals Ltd. (collectively, "Biophore") asserting infringement of five patents based on Biophore's submission to the FDA of ANDA No. 213477 for brexpiprazole tablets.  (*Id.* ¶¶ 1, 42-45.)  Count V of the complaint asserts literal infringement and infringement under the doctrine of equivalents ("DOE") of U.S. Patent No. 10,307,419 ("the '419 patent").  (*Id.* ¶¶ 99-108.)  The '419 patent expires years after the other patents-in-suit.  On October 30, 2019, Biophore answered the complaint, denying infringement of the '419 patent.  (D.I. 8 ¶¶ 99-108.)  In ensuing correspondence between counsel, Biophore explained that its proposed ANDA products do not infringe the '419 patent, invited Plaintiffs to withdraw the '419 patent, and informed Plaintiffs of Biophore's intent to file a Rule 12(c) motion, if necessary.  Plaintiffs did not withdraw the '419 patent.  Based on the undisputed composition of Biophore's proposed ANDA products, Biophore does not infringe the '419 patent as a matter of law.  Therefore, Biophore moves for leave to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on Count V.

## II.  **SUMMARY OF ARGUMENT**

Biophore's proposed ANDA products do not infringe the '419 patent literally because they do not meet three limitations present in all claims. All of the claims require a ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ However,  Biophore's proposed ANDA products ████████████████████████████████████████████ ████████████████████████████████████████████████████ examples in the '419 specification distinguished and criticized during prosecution to overcome a rejection based on

prior art.  Literal noninfringement cannot be clearer.

As for the DOE, disclosure-dedication precludes application of the DOE for all three limitations.  The patent discloses, but does not claim, ██████████████████████████████████ The patent discloses, but does not claim, ██████████████████████████████ And the patent discloses, but does not claim, ████████████████████████████████ ██████.  Plaintiffs are also estopped based on prosecution history estoppel from accusing ████████████████████████████████████████████████████" The limitation at issue was added during prosecution to overcome rejections based on prior art, thereby narrowing the claims so as to exclude ██████████████████████.  The amendment was directly related to patentability and made with a clear intent to exclude ██████████████████ ██████.  Further, allowing the claims to cover ████████████████████████ would vitiate the ████████████████ limitation by encompassing its antithesis.

A judgement on the pleadings is appropriate based on existing submissions to the Court, including Plaintiffs' complaint; the '419 patent, which is an exhibit thereto, and its file history; Biophore's answer; and Biophore's ANDA, to which both the complaint and the answer cite.  No further documents or discovery are required.  In accordance with decisions by this Court and the Federal Circuit, Count V should be dismissed.  Thus, Biophore's motion for leave to file a motion for judgment on the pleadings should be granted.

## III.    STATEMENT OF FACTS

### A.    The '419 Patent

The '419 patent claims tablets comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one ("brexpiprazole") or a salt thereof, along with certain excipients, and methods for producing the same.  (D.I. 1 Ex. G at cols. 15-16.)  The '419 patent has two

independent claims, claims 1 and 6.  Claim 1 is directed to a tablet, and claim 6 is directed to a

method for producing a tablet.  Claim 1 states:

> 1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises:
>
> 0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,



(*Id.* at 15:29-53 (emphasis added).)

In addition to reciting the brexpiprazole active pharmaceutical ingredient of the claimed

tablet, claim 1 also recites several required excipients, including " ███████████

███████████████████████████████████████████████████████

████████████████████" (*Id.* (emphasis added).)  Independent claim

6 also contains these limitations.  (*Id.* at 16:25-61.)

With respect to the claimed ████████████████████ the '419 patent

specification discloses alternative ███████, but the claims are limited to █████████████████ ███ ██████████████████ In particular, the specification discloses: "███████████████ ████████████████████████████████████████████████████ █████████████ ██ ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████

Similarly, with respect to the claimed ██████████████████████████ the specification discloses various alternative █████████, but the claims are limited to ██████████ █████████████████████████ In particular, the specification discloses: "██████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████

As for the ██████ the claims as filed did not include the limitation relating to the ██████████████ ███████████████████████████████). This limitation was added during prosecution to overcome a prior-art rejection.  In response to the examiner's initial rejection, applicant amended the pending independent claims to recite "████████████████ ██████████████████████████████ (pending claim 1; issued as claim 1) and ██ ██████████████████████████████████████" (pending claim 8; issued as claim 7).  (Ex. 1, 4/3/2018 Amendment at 2-4.)  Applicant relied on these amendments in its arguments to distinguish the examiner's prior art, starting in part:





After a further rejection, applicant again relied on

in its arguments to distinguish the prior art, stating in part:



(Ex. 2, 1/16/2019 Amendment at 6-12 ████████████████████████████████████ ████████████████████████████).)

In both responses, applicant discussed examples in its specification allegedly illustrating that the claimed ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████



(*Id.* at 14:1-24 (highlighting added).) ███████████████████

████████████████████████████████████████

**B.**     **Biophore's ANDA Products**

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████

## IV.   LEGAL STANDARD

### A.   Judgment on the Pleadings

"After pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Regional circuit law governs a court's review of such motions in patent cases.  *Eagle Pharms. Inc. v. Slayback Pharma LLC*, No. 19-1924, slip op. at 5 (Fed. Cir. May 8, 2020) [hereinafter *Eagle II*] (attached as Ex. 5), *aff'g*, *Eagle Pharms. Inc v Slayback Pharma LLC*, 382 F. Supp. 3d 341, 343 (D. Del. 2019) [hereinafter *Eagle I*].  Under Third Circuit law, a court should grant a Rule 12(c) motion where "the movant clearly establishes that no material issue of fact remains to be resolved and [the movant] is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *Eagle II*, slip op. at 5; *Eagle I*, 382 F. Supp. 3d at 343.

In addition to the pleadings themselves, a court may consider additional documents if they are "*integral to or explicitly relied* upon in the complaint."  *In re Bendamustine Consol. Cases*, C.A. No. 13–2046, 2015 WL 1951399, at *1 (D. Del. Apr. 29, 2015) (quoting *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Therefore, in Hatch-Waxman cases like the present case, courts consider asserted patents and their file histories, as well as defendants' NDAs/ANDAs.  *Id.* ("The court is satisfied that the … patents, their file histories, as well as the Moving Defendants' ANDA filings are all properly before the court, even at this preliminary stage. … Indeed, the patents and the ANDA filings comprise the entire basis for [plaintiff]'s complaints against the Moving Defendants—[plaintiff]'s argument that they are not 'integral' is puzzling.");  *Eagle I*, 382 F. Supp. at 343 n.1 ("I disagree with [plaintiff]'s argument that [defendant's] NDA is not 'integral' to the pleadings and therefore should not be considered in adjudicating this motion.").  When the factual allegations in a complaint contradict a document integral to the

8

pleadings, the document controls. *See Boldrini v. Wilson*, 542 F. App'x 152 (3d Cir. Oct 17, 2013); *Anderson v. Local 435Union*, C.A. No. 12-1119, 2014 WL 4955611, at *1 (D. Del. Sep. 30, 2014).

### B.    Limitations on the Doctrine of Equivalents

Although the DOE can provide for infringement under certain circumstances where literal infringement is absent, several doctrines limit application of the DOE, including disclosure-dedication, prosecution history estoppel, and claim vitiation.  These doctrines are issues of law based on a patent's specification and file history.

Disclosure-dedication: "'[W]hen a patent drafter discloses but declines to claim subject matter, … this action dedicates that unclaimed subject matter to the public.'"  *Eagle II*, slip op. at 6 (quoting *Johnson & Johnson Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc)); *Maxwell v. J. Baker, Inc.*, 83 F.3d 1098, 1106 (Fed. Cir. 1996).  "[A] patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents."  *Johnson*, 285 F.3d at 1055.  While unclaimed subject matter must be identified as an alternative to a claimed embodiment, no specific language is required for an embodiment to be dedicated to the public.  *CSP Techs., Inc. v. Sud-Chemie AG*, 643 F. App'x 953, 958-59 (Fed. Cir. Mar. 22, 2016); *see also Eagle II*, slip op. at 7 ("The disclosure-dedication doctrine does not require the specification to disclose the allegedly dedicated subject matter in an embodiment that exactly matches the claimed embodiment.").  Application of the disclosure-dedication rule is a question of law.  *Eagle II*, slip op. at 10;; *Johnson*, 285 F.3d at 1051-55.  Although often discussed in the context of the DOE, the disclosure-dedication rule "applies equally" to literal infringement, and the Federal Circuit has "frequently applied this rule to prohibit a finding of literal infringement."  *Maxwell*, 86 F.3d at 1106-07.

9

Prosecution history estoppel: "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) [hereinafter *Amgen II*]. "Prosecution history estoppel can occur in two ways: either (1) by making a narrowing amendment to the claims (amendment-based estoppel) or (2) by surrendering claim scope through argument to the patent examiner (argument-based estoppel)." *Id.* (affirming argument-based estoppel precluded DOE infringement) (internal quotation marks omitted). With respect to amendment-based estoppel, prosecution history estoppel "presumptively applies when the applicant made a narrowing claim amendment related to patentability." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013). "A patentee bears the burden to rebut the presumptive application of [amendment-based] prosecution history estoppel by establishing one of three exceptions by a preponderance of the evidence. First, the equivalent may have been unforeseeable at the time of the application. Second, the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question. Third, there may be some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent." *Id.* (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002)) (internal quotation marks, internal alteration marks, and citations omitted). As for argument-based estoppel, it applies when the prosecution history evinces "a clear and unmistakable surrender of subject matter." *Amgen II*, 931 F.3d at 1159. "[C]lear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel ... [t]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* at 1159-60

10

(internal quotation marks omitted; alterations original).  "Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law …."  *Id.* at 1159 (internal quotation marks omitted).

Vitiation: "[I]f a theory of equivalence would entirely vitiate a particular claim element, … judgment should be rendered by the court …."  *Warner-Jenkinson Co. Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).  As the Federal Circuit has explained, "The Supreme Court emphasized that the doctrine of equivalents must not expand to eliminate a claim element entirely." *Planet Bingo, LLC. v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1344-45 (Fed. Cir. 2006) (rejecting application of DOE that would change "before" to "after").

### C.      Non-Infringement at the Rule 12(c) Stage

"Application of the disclosure-dedication doctrine presents a question of law suitable for resolution on a motion for judgment on the pleadings." *Eagle I*, 382 F. Supp. 3d at 343-46, *aff'd*, *Eagle II*, slip op. at 10-11.  Thus, this Court has granted Rule 12(c) motions dismissing allegations of infringement based on application of disclosure-dedication and has been affirmed by the Federal Circuit in doing so.  *Eagle I*, 382 F. Supp. 3d at 343-46, *aff'd*, *Eagle II*, slip op. at 10-11; *Bendamustine*, 2015 WL 1951399, at *3.  In the related Rule 12(b)(6) context, in which the same standard applies, this Court dismissed allegations of infringement based on prosecution history estoppel and disclosure-dedication.  *Amgen Inc. v. Coherus Biosciences Inc.*, C.A. No. 17-546, 2018 WL 1517689 (D. Del. Mar. 26, 2018) [hereinafter *Amgen I*], *aff'd*, *Amgen II*, 931 F.3d at 1161 (affirming on prosecution history estoppel and not reaching disclosure-dedication).

In *Eagle*, a Hatch-Waxman case, the Court granted defendant's 12(c) motion, holding allegations of infringement under the DOE to be barred by the disclosure-dedication doctrine.  The patent claims at issue required a pharmaceutically acceptable fluid comprising a mixture of PEG

and propylene glycol.  *Eagle I*, 382 F. Supp. 3d at 343.  In contrast, the defendant's proposed NDA product contained PEG, but – instead of propylene glycol – a different, unclaimed second solvent. *Id.*  The Court noted that the specification of the asserted patents "explicitly and repeatedly identifie[d] [defendant's] second solvent as an alternative to propylene glycol." *Id.* at 345.  Thus, the Court ruled that plaintiff was "barred by the disclosure-dedication doctrine from alleging, based on [defendant's] substitution of [its] second solvent for propylene glycol, that [its] proposed … drug product infringes the solvent claim limitation under the doctrine of equivalents." *Id.* at 348.  In doing so, the Court rejected plaintiff's argument that resolution of the disclosure-dedication issue was improper at the 12(c) stage.  *Id.* at 346.  On appeal, the Federal Circuit affirmed, finding "no error in the district court's decision to grant judgment of non-infringement on the pleadings," explaining:

> The application of the disclosure-dedication doctrine is a question of law.  *Pfizer*, 429 F.3d at 1378.  Here the district court concluded that the patents themselves provided "sufficient context to decide a question of law, i.e., that the disclosure-dedication doctrine applies to bar Eagle's claims for infringement under the doctrine of equivalents." *Eagle*, 382 F. Supp. 3d at 346.

*Eagle II*, slip op. at 10-11 (rejecting plaintiff's attempt to manufacture a factual dispute through the submission of an expert declaration).

In *Bendamustine*, another Hatch-Waxman case, the Court likewise granted defendants' 12(c) motion on the basis that disclosure-dedication doctrine barred application of the DOE.  The patent claims at issue required tertiarybutyl alcohol ("TBA")-containing formulations, but defendants' proposed ANDA products did not contain TBA.  *Bendamustine*, 2015 WL 1951399, at *1.  The specification disclosed, but did not claim, the alternative solvents that defendants used in their proposed ANDA products.  *Id.* at *2.  Thus, disclosure-dedication barred application of the DOE, and the Court granted defendants' 12(c) motion.  *Id.* at *2-3.

In *Bendamustine*, the Court also explained that "[w]hen deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'"  *Id.* at *1; *see also Eagle I*, 382 F. Supp. 3d at 346 (citing *Amgen I* and analogizing *Amgen I*'s 12(b)(6) context to 12(c)).  In *Amgen I*, the Court granted defendant's 12(b)(6) motion to dismiss an infringement allegation based on prosecution history estoppel as well as disclosure-dedication. There, the patent claims required a combination of a first salt and a second salt, and recited specific salt combinations.  *Amgen I*, 2018 WL 1517689, at *1.  Plaintiffs argued that defendants infringed under the DOE through the use of a combination of two salts allegedly equivalent to one or more of the recited salt pairs.  *Id.*  This Court, however, held that "the prosecution history, namely, the patentee's correspondence in response to two office actions and a final rejection, shows a clear and unmistakable surrender of claim scope by the patentee."  *Id.* at *2.  "Amgen's correspondence with the Patent Office shows 'that the patentee clearly and unmistakably—and indeed, repeatedly—indicated to competitors that it surrendered processes using combinations of salts different from the '***particular*** combinations of salts recited in the claims.'"  *Id.* at *3.  In dismissing the infringement allegations, the Court rejected plaintiffs' argument that dismissal was premature:

> [T]he facts in the prosecution history here are undisputed.  Amgen acknowledges each of the statements to which [defendant] points and does not identify any conflicting evidence.  Amgen merely disputes interpretation of those facts, contending that, in context, they do not support a finding of estoppel.  But the Court has sufficient context in this case to make a decision of law that prosecution history estoppel applies.

*Id.* at *4 (citation omitted).  The Court cited disclosure-dedication as an additional reason for dismissal.  *Id.* at *3.  The Federal Circuit affirmed on prosecution history estoppel, finding it unnecessary to reach disclosure-dedication.  *Amgen II*, 931 F.3d at 1159-61.

V.   **ARGUMENT**

A.   **No Literal Infringement**

Biophore's proposed ANDA products do not infringe literally the claims of the '419 patent for at least three reasons.  First, the ANDA products do not contain a ███████████ ███████████ as required by all of the '419 claims.  (Ex. 2.)  Second, the ANDA products do not contain a "████████████████████ (*Id.*)  Third, the ███████████████ for the ANDA products ████████████████ do not meet the claim requirement that the ██████████████████████ ████████████ (*Id.*) ██████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████. *See Maxwell*, 86 F.3d at 1106-07 (disclosure-dedication applies to literal infringement).

B.   **No Infringement under the Doctrine of Equivalents**

Given the undisputed facts, there is also no infringement under the DOE due to the same three elements.  Specifically, the ████████████████████████ cannot encompass ████████████████████████, under the DOE as a matter of law.

First, Biophore's proposed ANDA products contain ███████████████

██████████████████████████████████████

██████████████████████████████████████

54-58.) █████████████████████████████████████████████████

███████████████ *See Eagle II*, slip. op. at 10-11; *Bendamustine*, 2015 WL 1951399, at *2-3;

*Amgen I*, 2018 WL 1517689, at *3.

    Second, Biophore's proposed ANDA products ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *See Eagle II*, slip op. at 10-11;

*Bendamustine*, 2015 WL 1951399, at *2-3; *Amgen I*, 2018 WL 1517689, at *3.

    Third, the ██████████████████ for Biophore's proposed ANDA products ██████

████████████████████ are not equivalent to a ████████████████ ██

██████████████████████ Disclosure-dedication applies here too. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ *See*

*Eagle II*, slip op. at 10-11; *Bendamustine*, 2015 WL 1951399, at *2-3.

    Regarding these three instances of disclosure-dedication – █████████████████

████████████████████ – this case is a repeat of the prior Hatch-Waxman cases where this Court

granted Rule 12(c) motions, holding there to be no infringement as a matter of law in view of the

asserted patents and accused NDA/ANDA.  In both *Eagle* and *Bendamustine*, the claims required

certain solvents, but the defendants used alternative solvents.  *Eagle I*, 382 F. Supp. 3d at 343; *Bendamustine*, 2015 WL 1951399, at *1.  Also, in both cases, the patentees disclosed, but did not claim, the defendants' alternative solvents.  *Eagle*, 382 F. Supp. 3d at 345; *Bendamustine*, 2015 WL 1951399, at *2.  The same is true here:  the '419 patent requires a ███████████████ ████████████████████████████████████████████ ████████████████████ ██████████████████████████████████████████████████████████████████████.

The patentees disclosed ██████████████████████████████████████████████, but did not claim them.  Thus, as in *Eagle* and *Bendamustine*, the disclosure-dedication doctrine dictates a holding of noninfringement as a matter of law.  *See Eagle II*, slip op. at 10-11; *Bendamustine*, 2015 WL 1951399, at *2-3.  Here, it does so for three distinct reasons.

Although disclosure-dedication alone is sufficient for this motion to be granted, with respect to the ████████████████████████, there are additional reasons why Biophore cannot infringe under the DOE: prosecution history estoppel and vitiation.  As for prosecution history estoppel, applicant added the limitation at issue and submitted argument directed to that limitation during prosecution to overcome rejections based on prior art.  (Ex. 1, Ex. 2.)  Relying on the amended claim language and examples in the specification, applicant multiple times explained how a ████████████████████████████████████████████████████ ████████████████████████████████████████████ (Ex. 1 at 7-8; Ex. 2 at 11-12.)  Thus, the subject matter surrendered by the amendments and accompanying argument necessarily includes ██████████████████████████████████████████  *See Amgen II*, 931 F.3d at 1159-60 (applying argument-based prosecution history estoppel); *Amgen I*, 2018 WL 1517689, at *2-*3 (same).  ████████████████████████████████████████████

(*See supra* §§ III.A,B.)  No exception to prosecution history estoppel applies.  *See Integrated*, 734

F.3d at 1356. ██████████████████████████ was certainly foreseeable, as evidenced by the use of the negative claim language and presence of Examples 3-5 and 3-7. The rationale for the amendment was directly related to the alleged equivalent: applicant surrendered ██████████████████ by amendment and argument to obtain the patent, explaining in detail why it did so. There is no reason, other than attempting to avoid prior art, why applicant could not have claimed ██████████████████. Instead, applicant consciously gave up coverage of such ██████████████, arguing the inferiority of such ████████████tures. *See Amgen I*, 2018 WL 1517689, at *3 ("Amgen's correspondence with the Patent Office shows 'that the patentee clearly and unmistakably—and indeed, repeatedly—indicated to competitors that it surrendered processes using combinations of salts different from [those claimed].'"). Both amendment-based and argument-based prosecution history estoppel prevent any attempt to cover ████████████████ under the DOE.

As for vitiation, permitting the claimed ████████████████████████ ████████████████ to encompass ██████████████████ as an equivalent would vitiate the claim limitation. The Federal Circuit "has refused to apply the [DOE] in … cases where the accused device contained the antithesis of the claimed structure." *Planet Bingo*, 472 F.3d at 1345. The specification and prosecution history make clear that ████████ ██████████████████ are the antithesis of the claimed ██████████████.

## VI.   **CONCLUSION**

Biophore does not infringe the '419 patent, literally or under the DOE. Biophore's motion for leave to file a motion for judgment on the pleadings as to Count V of Plaintiff's complaint should be granted.

Dated:  May 14, 2020

OF COUNSEL:

Dmitry V. Shelhoff
Kenneth S. Canfield
Edward D. Pergament
PERGAMENT & CEPEDA LLP
89 Headquarters Plaza
North Tower, 14th Floor, Suite 1465
Morristown, NJ 07960
(973) 998-7722
dshellhoff@pergamentcepeda.com
kcanfield@pergamentcepeda.com
epergament@pergamentcepeda.com

  /s/ Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendants*
*Zenara Pharma Private Ltd. and*
*Biophore India Pharmaceuticals Private Ltd.*

# EXHIBIT  1

PATENT
Attorney Docket No. 04676.0317-03000

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| Yoshiharu INOUE | ) Group Art Unit: 1615 |
| | ) |
| Application No.: 15/713,427 | ) Examiner: JeffreyT. Palenik |
| | ) |
| Filed:  September 22, 2017 | ) |
| | ) |
| For:   TABLET COMPRISING 7-[4-(4- | ) Confirmation No.:  5849 |
| BENZO[B] THIOPHEN-4-YL- | ) |
| PIPERAZIN-1-YL)BUTOXY]-1H- | ) |
| QUINOLIN-2-ONE OR A SALT | ) |
| THEREOF | ) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

## REPLY TO NON-FINAL OFFICE ACTION

In reply to the Office Action mailed November 3, 2017, the period for response

having been extended to April 3, 2018 by a request for extension of two months and fee

payment filed concurrently herewith, please amend the above-identified application as

follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

**AMENDMENTS TO THE CLAIMS:**

This listing of claims will replace all prior versions and listings of claims in the application:

1. (Currently Amended)   A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c) and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein the coating layer contains a colorant (e),

the colorant (e) contains an iron oxide and titanium oxide, and

the coating layer substantially does not contain polyethylene glycol.


2. (Currently Amended)  The tablet according to claim 1, wherein the tablet is an uncoated tablet comprises comprising:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet; and

0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

3. (Original)  The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

4-5.  (Canceled).

6. (Original)  The tablet according to claim 1 or 2, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

7. (Original)  The tablet according to claim 1 or 2, wherein the tablet does not contain povidone or crospovidone.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

8. (Currently Amended)  A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet; and

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet using the coating mixture,

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the colorant (e) contains an iron oxide and titanium oxide; and

the coating mixture substantially does not contain polyethylene glycol.

9. (Canceled).

## REMARKS

Claims 1-3 and 6-8 are pending.

Claims 4, 5 and 9 have been canceled without prejudice of disclaimer.

Claim 1 has been amended to point out the tablet contains a coating layer as described in now cancelled claims 4 and 5, and paragraphs 0044 and 0046 of the specification. Claim 2 has been amended to add further details regarding the coating layer as described, for example, in now canceled claim 5. Similarly , the amendments to claim 8 are based on now canceled claims 5 and 9, and paragraphs 0044 and 0046 of the specification. No new matter has been introduced by these amendments.

The Abstract was objected to as allegedly failing to include a cross-reference to related applications. Applicant disagrees. First, the Abstract is separate and distinct from a cross-reference to related applications. An abstract has been provided on page 36 of the application papers. Second, a cross-reference to related applications has been provided on page 1, lines 7-13 of the specification, but is not required to be there as benefit is properly claimed by the content of the Application Data Sheet, 37 CFR § 1.78(a)(3). Accordingly, that objection should be withdrawn.

Claims 1-7 have been rejected under pre-AIA 35 U.S.C. § 103 as being unpatentable over YAMASHITA et al. (U.S. Patent No. 7,888,362) in view of SAKO et al. (U.S. Patent No. 6,562,375). This rejection is considered improper as it fails to include documents relied on in the rejection. See In re Hoch, 166 USPQ 406 (CCPA 1970); MPEP 706.02(j). When a reference is relied on to support a rejection, whether or not in a minor capacity, that reference should be positively included in the statement of

the rejection.  The Examiner relied in the Handbook of Pharmaceutical Excipients and GUITARD to support this rejection, yet neither document was cited in the statement of the rejection.  In addition, the SAKO document cited does not appear to be relied on.  The rejection should be withdrawn for this reason alone.

The Examiner has argued that YAMASHITA broadly teaches a tablet that may comprise the recited active ingredient and may also include an excipient, a binder, a disintegrant and a lubricant.  The Examiner acknowledges that YAMASHITA does not describe that hydroxypropyl cellulose (HPC) is a suitable binder, but relies on the Handbook of Pharmaceutical Excipients as showing that HPC has been used as a suspending agent or viscosity modifying agent in pharmaceutical formulations.  However, the Examiner has cited no reason or motivation for selecting HPC over other binders known in the art, particularly one not described in YAMASHITA.  The tablets of Examples 1-1 to 1-3 comprise HPC, and Table 2 shows that these tablets have excellent disintegration ability.

The Examiner has further pointed out that YAMASHITA broadly suggests that the tablet may be coated and provides a specific example of such a coating at col. 89, lines 34-44 that does include polyethylene glycol (specifically substantially excluded by amended claim 1) and does not include a colorant containing iron oxide and titanium dioxide (both included in the coating of amended claim 1).  The Examiner further relies on GUITARD as teaching a tablet containing an active ingredient different from that claimed that may be coated (paragraph 0077) with a binder or one or more dyes to impart an individual appearance (paragraph 0085) and to make them instantly recognizable.  The dyes include iron oxides or titanium dioxide.

-6-

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

White GUITARD does suggest adding one or more dyes to impart an individual appearance, the combination of titanium dioxide and iron oxide in the coating of the claimed tablet imparts photostability to the coated tablet as described on page 12, paragraph 0045 of the specification.  Applicant has determined that when the coating layer contains iron oxide and titanium dioxide, and substantially  does not contain polyethylene glycol (suggested by both YAMASHITA and GUITARD), the increase in impurity  content is suppressed even after light irradiation, and the tablet has excellent photostability.  Such effects have been verified by Examples 3-5 and 3-7, as shown in Table 8 of the present specification.  In contrast, the tablets of Example 3-4 and 3-6, which contain polyethylene glycol (macrogol), the impurity content is increased (stability is lower). Neither YAMASHITA nor GUITARD describe or suggest these features, nor is the resultant increase in stability predictable from these documents, alone or in combination.  Accordingly, for all the reasons discussed above, this rejection should be withdrawn.

Claims 1-9 have been rejected under pre-AIA 35 USC § 103 as being unpatentable over YAMASHITA in view of SAKO and BELL et al. (US 2005/0043325 A1).  This rejection also appears to be improper as it does not appear the Examiner has relied in SATO (not discussed above), but on GUITARD.  The Examiner apparently relies on BELL as teaching conventional methods for producing coated tablets, but there is no teaching in any of the references (including BELL) of enhancing the photostability of the recited tablets by employing a coating layer that contains iron oxide and titanium dioxide and that substantially does not contain polyethylene glycol.  These are features and effects not predictable from the documents relied on.  In fact, none of

-7-

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

the prior art even appears to be concerned with the problem of photostability.  For all

the reasons discussed above, this rejection should be withdrawn.

Prompt and favorable reconsideration is respectfully requested.

Please grant any extensions of time required to enter this response and charge

any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

Dated: April 3, 2018                     By: _____

Charles E. Van Horn
Reg. No. 40,266
(202) 408-4000

-8-

# EXHIBIT   2

PATENT
Attorney Docket No. 04676.0317-03

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| **Yoshiharu INOUE** | ) Group Art Unit: 1615 |
| | ) |
| Application No.: 15/713,427 | ) Examiner: Jeffrey T. PALENIK |
| | ) |
| Filed:  September 22, 2017 | ) Confirmation No.:  5849 |
| | ) |
| For:   TABLET COMPRISING 7-[4-(4- | ) **VIA EFS-WEB** |
| BENZO[b]THIOPEN-4-YL- | ) |
| PIPERAZIN-1 -YL)BUTOXY]-1H- | ) |
| QUINOLIN-2-ONE OR A SALT | ) |
| THEREOF | ) |

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

**AMENDMENT WITH REQUEST FOR CONTINUED EXAMINATION**

This Amendment accompanies a Request for Continued Examination, fulfills the

requirement for a submission under 37 C.F.R. § 1.114, and responds to the final Office

Action dated July 16, 2018, the period for response having been extended to

January 16, 2019, by a petition for extension of time and fee filed concurrently herewith.

Applicant proposes that this application be amended as follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

## AMENDMENTS TO THE CLAIMS:

This listing of claims will replace all prior versions and listings of claims in the application:

1.    (Currently Amended)  A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c) and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein the coating layer contains hydroxypropyl methyl cellulose, talc, and a colorant (e),

the colorant (e) contains an iron oxide and titanium oxide, and

the coating layer substantially does not contain polyethylene glycol.

2.    (Previously Amended)  The tablet according to claim 1, wherein the tablet tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet; and

0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

3.　(Original)  The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

Claims 4 and 5.　(Canceled).

6.　(Original)  The tablet according to claim 1 or 2, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

7.　(Original)  The tablet according to claim 1 or 2, wherein the tablet does not contain povidone or crospovidone.

8.　(Currently Amended)  A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

-3-

(2) forming the obtained mixture into a tablet; and

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet using the coating mixture,

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the colorant (e) contains an iron oxide and titanium oxide;

the coating agent contains hydroxypropyl methyl cellulose and talc; and

the coating mixture substantially does not contain polyethylene glycol.

9.      (Canceled).

10.     (New)  The tablet according to claim 1, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

11.     (New)  The tablet according to claim 2, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

12.     (New)  The method for producing the tablet according to claim 8, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

## REMARKS

### I.    Claim Status

Upon entry of this Amendment, claims 1-3, 6-8, 10-12 are pending.  Applicant amends claims 1 and 8, support for the amendments can be found at, *e.g.*, at paragraphs [0076] and [0127] of the published application.[1] Applicant adds new claims 10-12, support for the new claims can be found at paragraph [0198] and in Table 6 of Example 3-1. Additionally, the originally-filed specification, claims, and abstract fully support the amendments to the claims. No new matter has been added. Applicant respectfully requests their entry.

### II.    Rejection under Pre-AIA 35 U.S.C. § 103(a)

The Office maintains the rejection of claims 1-3 and 6-8 under 35 U.S.C. § 103(a), as unpatentable over Yamashita (U.S. Patent No. 7,888,362 B1, also published as J.P. 2006/316052) in view of Guitard (U.S. Pre-Grant Publication No. 2008/0187582 A1) and Bell (U.S. Pre-Grant Publication No. 2005/0043325 A1). Office Action at 3-11.  Applicant continues to respectfully disagree and traverse this rejection for the reasons of record and the additional reasons below.

According to the Office, Yamashita is relied upon to teach "a conventional coating" and "discloses a coating formulation for a tablet as well (**col. 89, lines 34-45**)." Office Action at 5 (emphasis original).  In response to Applicant's arguments challenging the use of these Yamashita teachings, the Office clarifies their use of Yamashita by explaining that Yamashita "teaches additional options to using polyethylene glycol (**see**

---

[1]    Unless otherwise specified, all citations to the instant specification refer to the paragraph designations used in the published application, i.e., U.S. Patent Application Publication No. 2018/0008600.

-6-

**e.g., col. 17, lines 27-29**), thereby teaching and suggesting to the skilled artisan that polyethylene glycol is, in fact, not required." *Id.* at 12 (emphasis original).  The Office concludes that "as the reference discloses lubricant compounds which are noted alternatives to PEG, the Examiner respectfully maintains that *the broader brushstrokes of the reference clearly teach that PEG is not required*." *Id.* (emphasis added).  Here, Yamashita's teachings are disregarded; Yamashita's teachings do not support the assertions made by the Office.

As stated in the M.P.E.P., "[a]ll words in a claim must be considered in judging the patentability of that claim against the prior art." M.P.E.P. § 2143.03 (citing *In re Wilson*, 424 F.2d 1382, 1385, 165 U.S.P.Q. 494, 496 (C.C.P.A. 1970)).  When considering whether a claim is obvious, an examiner must make "a searching comparison of the claimed invention – *including all its limitations* – with the teaching of the prior art." *In re Ochiai*, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (emphasis added). Thus, as explained above, "obviousness requires a suggestion of all limitations in a claim." *CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (*citing In re Royka*, 490 F.2d 981, 985 (C.C.P.A. 1974)).  But here, Yamashita fails to teach and/or suggest "the coating layer contains hydroxypropyl methyl cellulose, talc, and a colorant (e)" and that "the coating layer substantially does not contain polyethylene glycol."

In Yamashita, the Office cites to the following passage to supply the support for "a conventional coating":

> For shaping in tablet form, various materials conventionally well known as carrier in the art can be widely used. As examples, **excipient** such as lactose, saccharose, sodium

chloride, glucose, urea, starch, calcium carbonate, kaolin, crystalline cellulose, silicate; **binder** such as water, ethanol, propanol, simple syrup, glucose solution, starch liquid, gelatine solution, carboxymethylcellulose, shellac, methylcellulose, potassium phosphate, polyvinylpyrrolidone; **disintegrating agent** such as dried starch, sodium alginate, agar powder, laminaran powder, sodium hydrogen carbonate, calcium carbonate, polyoxyethylene sorbitan fatty acid ester, sodium lauryl sulfate, stearic acid monoglyceride, starch, lactose; **disintegration preventing agent** such as saccharose, stearin, cacao butter, hydrogenated oil; sorbefacient such as quaternary ammonium base, sodium lauryl sulfate; **moisturizing agent** such as glycerine, starch; absorbing agent such as starch, lactose, kaolin, bentonite, colloidal silica; **lubricant** such as purified talc, stearate, borate powder, polyethylene glycol can be used, for example. Furthermore, **the tablet may be a tablet provided with conventional coating as required, for example, sugar-coated tablet, gelatine encapsulated tablet, enteric coating tablet, film coated tablet or double tablet, multilayer tablet**.

For **shaping in pill form**, various materials conventionally well known as carrier in the art can be widely used. As examples, **excipient** such as glucose, lactose, starch, cacao butter, hydrogenated vegetable oil, kaolin, talc; **binder** such as powdered gum arabic, powdered tragacanth, gelatine, ethanol; **disintegrating agent** such as laminaran, agar can be used, for example.

For **shaping in suppository form**, various materials conventionally well known as carrier can be widely used. Examples thereof include **polyethylene glycol**, cacao butter, higher alcohol, esters of higher alcohol, gelatine, semisynthesized glyceride, for example.

Yamashita at Col. 17, ll. 11-45 (emphases added).  Here, Yamashita outlines

"various materials conventionally well known as carrier[s] in the art can be widely used."

*Id.*  This disclosure identifies that polyethylene glycol can be used as a lubricant and

lists other possible "lubricants."  *Id.*  Yamashita's listing of possible types of carriers and

specific carrier examples, however, does not amount to the assertions made by the

Office. That is, Yamashita does not teach and/or suggest that because polyethylene glycol can be used as a **lubricant** and there are other listed **lubricants** that polyethylene glycol used as a **coating** could be substituted for any of the listed other **lubricants** or that polyethylene glycol is "optional" when used as a **coating**. There is no guidance provided by Yamashita to suggest such an interpretation nor has the Office cited to any type of scientific principle or anything else that would similarly suggest such a substitution or rationale. Instead, the Office merely makes the bald assertion. Office Action at 12.

In fact, examining the **coating** disclosure of Yamashita, it merely provides that "the tablet may be a tablet provided with ***conventional coating***." Yamashita at Col. 11, ll. 29-33 (emphasis added). Yamashita exemplifies what would be "conventional coatings" that includes "sugar-coated tablet, gelatine encapsulated tablet, enteric coating tablet, film coated tablet or double tablet, multilayer tablet." *Id.* None of those examples include any of the listed possible "lubricants" in Yamashita's disclosure nor any teachings regarding a particular coating composition, as recited by the pending claims.

Within Yamashita, it references "polyethylene glycol" in two other instances besides those described above. As reproduced above, Yamashita explains that polyethylene glycol can be used as a carrier in suppository form. Yamashita at Col. 17, ll. 41-45. Like the disclosure of lubricants, this in the context of **suppository form** fails to provide any guidance for using polyethylene glycol in a **coating**.

The last reference to "polyethylene glycol" is in the example highlighted by the Office from Yamashita. Office Action at 5 (pointing to Yamashita's disclosure at Col. 89,

lines 35-45).  Here, Yamashita's example, referenced by the Office, indicates that a coated tablet was prepared "with a film" including "3 g of polyethylene glycol 6000." Yamashita at Col. 89, ll. 35-45.  As provided by the claims and the specification, "polyethylene glycol (macrogol) is substantially not contained [in the coating layer]." Applicant's Specification at [0076].  Yamashita's coating also includes:  a film coating agent of TC-5, hydroxymethyl cellulose, castor oil, and ethanol.  This is Yamashita's only disclosure of a coating composition.  Yamashita's **coating** teaching fails to teach and/or suggest the specific claimed coating of: hydroxypropyl methyl cellulose, talc, and a colorant (e).  Moreover, Yamashita's general disclosure of "conventional coatings" fails to amount to a teaching of the specific coating recited in the claims.  In view of Yamashita's teachings, it remains unclear how a person of ordinary skill in the art would arrive at the claimed subject matter when Yamashita only discloses one coating composition outside the claimed subject matter and that teaches a coating layer with polyethylene glycol, where the claims recite a coating substantially without polyethylene glycol.

Instead, the Office's alleged motivation to find that polyethylene glycol is optional, Office Action at 5 and 12, amounts to improper hindsight in view of Applicant's disclosure. *See, e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 381 F.3d 1371 (Fed. Cir. 2004) ("the suggestion to combine references must not be derived by hindsight from knowledge of the invention itself."); *see In re Dow Chern.* Co., 837 F.2d 469, 473 (Fed. Cir. 1988) ("[t]here must be a reason or suggestion in the art for selecting the procedure used, other than the knowledge learned from the applicant's disclosure").  Absent some further guidance or rationale, *see* M.P.E.P. § 2141.01(III),

Yamashita fails to guide a person of ordinary skill in the art towards the claimed subject matter. The obviousness rejection is improper and should be withdrawn.

Additionally, as provided by the M.P.E.P., "the rationale to support a conclusion that the claim would have been obvious is that all the claimed elements were known in the prior art and one skilled in the art could have combined the elements as claimed by known methods with no change in their respective functions, and the combination yielded nothing more than *predictable results* to one of ordinary skill in the art. M.P.E.P. § 2143 (I)(A) (citing *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 416, 82 U.S.P.Q.2d 1385, 1395; *Sakraida v. AG Pro, Inc.,* 425 U.S. 273, 282, 189 U.S.P.Q. 449, 453 (1976); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 62-63, 163 U.S.P.Q. 673, 675 (1969); *Great Atl. & P. Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 87 U.S.P.Q. 303, 306 (1950)). "[I]t can be **important** to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR,* 550 U.S. at 418, 82 U.S.P.Q.2d at 1396 (emphasis added). "If *any of these findings cannot be made*, then this rationale cannot be used to support a conclusion that the claim would have been obvious to one of ordinary skill in the art." M.P.E.P. § 2143 (I)(A) (emphasis added). That is the case here; the Office fails to consider the unpredictability of the claimed composition.

For example, Applicant's Examples No. 3-5 and 3-7, particularly Table 7, of the present specification show that tablets coated in a coating liquid that "substantially does not contain polyethylene glycol" (referred to as Macrogol 6000 in Table 7) unexpectedly have "no increase in impurity, even after light irradiation." Applicant's Specification at

[0201]. Comparatively, the coatings used in Examples No. 3-4 and 3-6 contain polyethylene glycol and have increased impurity, which leads to reduced photostability and storage stability. *Id.* at [0067]. In contrast, neither Yamashita nor Guitard teaches that a coating layer that "substantially does not contain polyethylene glycol" results in "no increase in impurity." This effect is not predictable from the cited prior art.

That is, Guitard teaches that high stability may be obtained, but does not attribute this high stability to "a coating layer [that] substantially does not contain polyethylene glycol." Guitard at [0004], [0078], and [0081]. Guitard further allows for "a coating comprising . . . polyoxyethlyene glycol, e.g., PEG 6000 or PEG 8000." *Id.* at [0077]. This is consistent with Yamashita; Yamashita uses "a film coating agent made up of," *inter alia*, "3 g of polyethylene glycol 6000." Yamashita at Col. 89, ll. 34-44. Further, "[a] prior art reference must be considered in its entirety, i.e., as a whole, including portions that would lead away from the claimed invention." M.P.E.P. § 2142.02(VI) (*citing* W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 220 U.S.P.Q. 303 (Fed. Cir. 1983), *cert denied*, 469 U.S. 851 (1984)). Here, both Yamashita and Guitard teach coatings **with** polyethylene glycol and fail to recognize the unpredictability of a coating layer that "substantially does not contain polyethylene glycol" to result in "no increase in impurity."

For the foregoing reasons, the Office fails to establish a prima facie case of obviousness over the cited art. Applicant respectfully requests the withdrawal of the rejection.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## III.    Conclusion

In view of the foregoing amendments and remarks, Applicant respectfully requests reconsideration of this application and the timely allowance of the pending claims.

Please grant any extensions of time required to enter this response and charge any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

/Adriana L. Burgy/

Dated: January 16, 2019          By:_____

Adriana L. Burgy
Reg. No. 48,564
(202) 408-4000

# EXHIBIT   3

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   4

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT  5

# United States Court of Appeals for the Federal Circuit

————————————

**EAGLE PHARMACEUTICALS INC.,**
*Plaintiff-Appellant*

**v.**

**SLAYBACK PHARMA LLC,**
*Defendant-Appellee*

————————————

2019-1924

————————————

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-01953-CFC, United States District Judge Colm F. Connolly.

————————————

Decided: May 8, 2020

————————————

DANIEL BROWN, Latham & Watkins LLP, New York, NY, argued for plaintiff-appellant. Also represented by KENNETH G. SCHULER, MARC NATHAN ZUBICK, Chicago, IL; GREGORY SOBOLSKI, San Francisco, CA; GABRIEL BELL, Washington, DC.

CONSTANCE HUTTNER, Budd Larner, P.C., Short Hills, NJ, argued for defendant-appellee. Also represented by JAMES BARABAS, BETH C. FINKELSTEIN, ANDREW J. MILLER, Windels Marx Lane & Mittendorf LLP, Madison, NJ.

————————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

Eagle Pharmaceuticals appeals a district court judgment of non-infringement on the pleadings. Eagle sued Slayback Pharma LLC for infringing four patents covering Eagle's brand name bendamustine pharmaceutical product. Eagle argues that the district court committed two errors when it concluded that the dedication-disclosure doctrine barred Eagle's claim of infringement under the doctrine of equivalents. First, Eagle contends that the district court erred when it concluded that the asserted patents disclose, but do not claim, ethanol—and therefore dedicated ethanol to the public. Second, Eagle contends that the district court improperly applied the dedication-disclosure doctrine at the pleadings stage, in the presence of factual disputes and without drawing all inferences in Eagle's favor. Because we find no error in the district court's judgment on the pleadings, we affirm.

BACKGROUND

Eagle Pharmaceuticals Inc. ("Eagle") filed suit in the U.S. District Court for the District of Delaware accusing Slayback Pharma LLC ("Slayback") of infringing four patents under the doctrine of equivalents.[1] Eagle's infringement claims stem from Slayback's new drug application ("NDA") for a generic version of Eagle's branded bendamustine product, BELRAPZO®. J.A. 105. Bendamustine is used to treat chronic lymphocytic leukemia and indolent B-cell non-Hodgkin lymphoma.

For purposes of this appeal, Eagle's four asserted patents share essentially the same written description and all independent claims recite essentially the same limitations.

---

[1] Eagle asserted U.S. Patent Nos. 9,265,831; 9,572,796; 9,572,797; and 10,010,533.

The parties agree that Claim 1 of U.S. Patent No. 9,572,796 ("the '796 patent"), shown below in relevant part, is representative.[2]

1.  A non-aqueous liquid composition comprising:

    bendamustine, or a pharmaceutically accepta-
    ble salt thereof;

    a ***pharmaceutically acceptable fluid*** com-
    prising a mixture of polyethylene glycol and
    propylene glycol, wherein the ratio of poly-
    ethylene glycol to propylene glycol in the
    pharmaceutically acceptable fluid is from
    about 95:5 to about 50:50; and

    a stabilizing amount of an antioxidant;

    . . . .

'796 patent at col. 13 ll. 22–35 (emphasis added).

Slayback conceded that its generic product literally in-
fringes all claim limitations except for the "pharmaceuti-
cally acceptable fluid" limitation. Eagle asserted that
Slayback's product infringes the "pharmaceutically ac-
ceptable fluid" limitation under the doctrine of equivalents.
Specifically, Eagle asserted that the ethanol in Slayback's
product is insubstantially different from the propylene gly-
col ("PG") in the claimed composition.

On January 4, 2019, Slayback moved for a judgment of
non-infringement on the pleadings under Federal Rule of
Civil Procedure 12(c). Slayback argued that the disclosure-
dedication doctrine barred Eagle's claim of infringement
under the doctrine of equivalents because the asserted pa-
tents disclose, but do not claim, ethanol as an alternative
solvent to PG.

---

[2]    All citations are to U.S. Patent No. 9,572,796.

The specification expressly and repeatedly identifies "ethanol" as an alternative "pharmaceutically acceptable fluid" to PG. '796 patent at col. 1 ll. 60–64, col. 4 ll. 34–42, 43–48, col. 5 ll. 25–35, 38–50, col. 6 ll. 3–14, 31–65, col. 7 ll. 1–8. For example, the Summary of the Invention discloses that:

> In other aspects of the invention, the benda-mustine-containing compositions include a) a ***pharmaceutically acceptable fluid*** which contains one or more of propylene glycol, ***ethanol***, polyethylene glycol, benzyl alcohol and glycofurol, and b) a stabilizing amount of a chloride salt.

*Id.* at col. 1 ll. 60–64 (emphasis added). Likewise, the specification teaches that:

> Preferred ***pharmaceutically acceptable fluids*** include PG, PEG or ***ethanol*** in this embodiment of the invention.

*Id.* at col. 4 ll. 44–46 (emphasis added).

Eagle opposed Slayback's motion, arguing that the asserted patents do not disclose ethanol as an alternative to PG for the *claimed* embodiment that contains an antioxidant. J.A. 238. Eagle asserted that the specification only discloses ethanol when discussing *unclaimed* embodiments that contain chloride salt. *Id.* According to Eagle, a skilled artisan would thus "not understand the specification to teach ethanol as an alternative to propylene glycol in the claimed formulations." J.A. 234.

In support of its opposition, Eagle submitted an expert declaration from Dr. Mansoor Amiji. Dr. Amiji opined that a skilled artisan would understand the specification to disclose three distinct categories of formulations that each contain different ingredients and work in different ways. Dr. Amiji opined that a skilled artisan "would not view the specific ethanol-containing formulations including chloride

salts as a disclosure that ethanol was specifically identified as an alternative to the claim limitation at issue in the asserted claims." J.A. 260 ¶ 45. Slayback did not submit evidence to rebut Dr. Amiji's testimony.

On May 9, 2019, the district court granted Slayback's motion for judgment of non-infringement on the pleadings. The court determined that "[t]he parties have not identified a claim construction dispute, and the written description of the asserted patents unambiguously and repeatedly identifies [ethanol] as an alternative to propylene glycol." *Eagle Pharm., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 346 (D. Del. 2019). The court rejected Eagle's attempt to "manufacture a factual dispute" and declined to consider the expert declaration of Dr. Amiji. *Id.* at 346, 346 n.2. The court concluded that it had "sufficient context to decide a question of law—i.e., that the disclosure-dedication doctrine applies to bar Eagle's claims for infringement under the doctrine of equivalents." *Id.* at 346.

Eagle timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## ANALYSIS

We review the district court's judgment on the pleadings under the law of the regional circuit, which in this case is the Third Circuit. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018). The Third Circuit reviews the grant of judgment on the pleadings de novo, "accept[ing] all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw[ing] all reasonable inferences in favor of the non-moving party." *Id.* (quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)). In doing so, we "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). Rule 12(c) judgment is appropriate when the moving party clearly establishes that there are "no material

6        EAGLE PHARMACEUTICALS INC. v. SLAYBACK PHARMA LLC

issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hospital*, 530 F.3d 255, 259 (3d Cir. 2008); *see* FED. R. CIV. P. 12(c).

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 29 (1997). The doctrine of equivalents prevents "the unscrupulous copyist [from] mak[ing] unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). The central question for infringement under the doctrine of equivalents is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson*, 520 U.S. at 40.

The disclosure-dedication doctrine bars application of the doctrine of equivalents. *Johnson & Johnston Assoc. v. R.E. Servs.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc). It states that "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates the unclaimed subject matter to the public." *Id.* By preventing a patentee from recapturing unclaimed subject matter, the disclosure-dedication doctrine reinforces "the primacy of the claims in defining the scope of the patentee's exclusive right." *Id.* To determine whether the disclosure-dedication doctrine applies in a given case, we ask whether the specification discloses unclaimed subject matter with "such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed." *PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004). If the court concludes

that the inventor dedicated an alleged equivalent to the public, the patent owner cannot prevail on its doctrine of equivalents infringement claim based on that equivalent. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108 (Fed. Cir. 1996).

This appeal centers on Eagle's challenge to the merits and procedural aspects of the district court's application of the disclosure-dedication doctrine.

## A.

Eagle first challenges the merits of the district court's determination that the disclosure-dedication doctrine bars Eagle's infringement claims under the doctrine of equivalents. Eagle contends, as it did below, that the disclosure-dedication doctrine does not apply because the asserted patents do not disclose ethanol as an alternative to PG for the *claimed* embodiment containing an antioxidant.

Eagle contends that the asserted patents disclose three distinct "categories" of bendamustine formulations: (i) chloride salt formulations; (ii) antioxidant formulations; and (iii) dimethyl sulfoxide ("DMSO") formulations. Appellant Br. 20. According to Eagle, a skilled artisan would recognize that the three separate categories "have separate ingredients[] and work in different ways." *Id.* Eagle asserts that the specification only discloses ethanol as an alternative to PG when discussing the *unclaimed* chloride salt formulations; it never discloses ethanol as an alternative to PG when discussing the *claimed* antioxidant formulations. *Id.* at 4. As a result, Eagle concludes, a "skilled artisan would not understand that ethanol . . . is an alternative to PG in the separate, claimed 'PEG/PG/antioxidant' category of formulations." *Id.* at 20. We disagree.

The disclosure-dedication doctrine does not require the specification to disclose the allegedly dedicated subject matter in an embodiment that exactly matches the claimed embodiment. *Johnson*, 285 F.3d at 1052. In *Johnson*, we

rejected this embodiment-level approach to the disclosure-dedication doctrine and denied the patentee's attempt to avoid dedication by claiming that the disclosure occurred in an "alternative [embodiment] distinct from the claimed invention." *Id.* Instead, we have held that the disclosure-dedication doctrine requires only that the specification disclose the unclaimed matter "as an alternative to the relevant claim limitation." *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005).

We conclude that the asserted patents disclose ethanol as an alternative to PG in the "pharmaceutically acceptable fluid" claim limitation. The specification repeatedly identifies—without qualification—ethanol as an alternative pharmaceutically acceptable fluid. '796 patent at col. 1 ll. 60–64, col. 4 ll. 34–42, 43–48, col. 5 ll. 25–35, 38–50, col. 6 ll. 3–14, 31–65, col. 7 ll. 1–8. Aside from the description of certain exemplary embodiments, nothing in the specification suggests that these repeated disclosures of ethanol are limited to certain formulations, or that they do not extend to the claimed formulation.

Eagle asserts that, in *Pfizer*, we declined to apply the dedication-disclosure doctrine because the alleged alternative disclosed in the specification (microcrystalline cellulose) did not serve the same purpose (preventing hydrolysis) as the claimed "saccharide." 429 F.3d at 1379 (concluding that the disclosed microcrystalline cellulose "does not appear to relate to the claimed invention"). Eagle contends that the chloride salt category of formulations in the present case likewise "work[] by a different mechanism" than the claimed antioxidant formulations, and thus a skilled artisan would understand that ethanol does not relate to the claimed invention. Appellant Br. 30. We are not persuaded.

In *Pfizer*, the claim limitation-at-issue recited a specific purpose: "a suitable amount of a saccharide *to inhibit hydrolysis*." 429 F.3d at 1373, 1378 (emphasis added). The

asserted alternative, microcrystalline cellulose, was disclosed in the specification without any relation to hydrolysis. *Id.* As a result, we were "not convinced that one of ordinary skill in the art would come to the conclusion that the inventors have identified microcrystalline cellulose in that formulation as an alternative to a 'saccharide' that prevents hydrolysis." *Id.*

In this case, the claim limitation-at-issue has only one stated purpose: that the fluid be "pharmaceutically acceptable." Unlike in *Pfizer*, the specification here repeatedly discloses ethanol as serving that purpose, i.e., the specification expressly discloses ethanol as a "pharmaceutically acceptable fluid." *E.g.*, '796 patent at col. 1 ll. 60–64, col. ll. 34–42, 43–48. We therefore hold that the asserted patents dedicated ethanol to the public by disclosing, but not claiming, ethanol as an alternative to PG in the "pharmaceutically acceptable solvent" claim limitation. As a result, we affirm the district court on this point.

## B.

Eagle also challenges the district court's judgment on procedural grounds. Eagle asserts that, at the time the district court entered judgment of non-infringement on the pleadings, a factual dispute existed: whether a skilled artisan would understand the specification to disclose ethanol as an alternative to PG in the claimed invention. Eagle argues that the district court erred by resolving that factual dispute at the pleadings stage without drawing all reasonable inferences in Eagle's favor. Appellant Br. 46 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018)). Specifically, Eagle argues that the district court was required to infer that a "skilled artisan would not have understood that ethanol was an alternative to PG in the claimed 'PEG/PG/Antioxidant' category of formulations." *Id.* at 44. Eagle explains that the district court erred by improperly ignoring Dr. Amiji's declaration, which

was "the best (and *only*) evidence of a skilled artisan's understanding of [the] disclosure." *Id*. at 45.

As a preliminary matter, when ruling on a Rule 12(c) motion, district courts have discretion to consider evidence outside the complaint for purposes of deciding whether to accept that evidence and convert the motion into one for summary judgment. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992); *see also* 5C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1371 (3d ed.) ("As is true of practice under Rule 12(b)(6), it is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)."). We conclude that the district court did not abuse its discretion when it set aside Dr. Amiji's declaration. The district court reviewed Dr. Amiji's declaration and determined that it was merely an "attempt[] to manufacture a factual dispute." *Eagle*, 382 F. Supp. 3d at 346. The district court also found that the patents themselves provided "sufficient context to decide" the legal issue at hand. *Id.* Eagle has not persuaded us otherwise. In opposing Slayback's motion to dismiss, Eagle conceded that the district court's "reliance on expert testimony would be improper at this preliminary [pleadings] stage." J.A. 233.

We find no error in the district court's decision to grant judgment of non-infringement on the pleadings. The application of the disclosure-dedication doctrine is a question of law. *Pfizer*, 429 F.3d at 1378. Here the district court concluded that the patents themselves provided "sufficient context to decide a question of law, i.e., that the disclosure-dedication doctrine applies to bar Eagle's claims for infringement under the doctrine of equivalents." *Eagle*, 382 F. Supp. 3d at 346.

Expert testimony is not always required for a district court to determine how a skilled artisan would understand

a patent's disclosure and claimed invention. *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) (stating that a patent's disclosure may be "easily understandable without the need for expert explanatory testimony"). For example, in *Amgen Inc. v. Coherus BioSciences Inc.*, we held that expert testimony was not necessary to understand whether a patent owner "clearly and unmistakably surrendered unclaimed [disclosure] during prosecution." 931 F.3d 1154, 1160 (Fed. Cir. 2019) (affirming judgment of non-infringement on the pleadings because prosecution history precluded Amgen's infringement allegations based on the doctrine of equivalents). We explained that "Amgen's statements during prosecution," on their face, showed that "a competitor would reasonably believe that Amgen surrendered unclaimed salt combinations" as a matter of law. *Id.* (internal quotations omitted).

Here, we conclude that the only reasonable inference that can be made from the patent disclosures is that a skilled artisan would understand the patents to disclose ethanol as an alternative to the claimed PG. Nothing in the record permits us to infer that a skilled artisan "would have understood that the patent specification describes distinct categories of formulations that contain different ingredients and work in different ways." Appellant Br. 44. As a result, even when viewing the pleadings in the light most favorable to Eagle, we conclude there is no material issue of fact to resolve and Slayback is entitled to judgment in its favor as a matter of law.

## CONCLUSION

We have considered Eagle's other arguments and find them unpersuasive. We affirm the district court's judgment of non-infringement on the pleadings.

## AFFIRMED

### COSTS

No costs.