# J. E. 1



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

August 05, 2019

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM
THE RECORDS OF THIS OFFICE OF:

U.S. PATENT: *10,307,419*
ISSUE DATE: *June 04, 2019*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

SYLVIA HOLLEY
Certifying Officer

BREX00000210



US010307419B2

(12) **United States Patent**
Inoue

(10) Patent No.: **US 10,307,419 B2**
(45) Date of Patent: **Jun. 4, 2019**

(54) **TABLET COMPRISING 7-[4-(4-BENZO[B] THIOPEN-4-YL-PIPERAZIN-1-YL)BUTOXY]- 1H-QUINOLIN-2-ONE OR A SALT THEREOF**

(71) Applicant: **OTSUKA PHARMACEUTICAL CO., LTD.**, Tokyo (JP)

(72) Inventor: **Yoshiharu Inoue**, Osaka (JP)

(73) Assignee: **OTSUKA PHARMACEUTICAL CO., LTD.**, Tokyo (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/713,427**

(22) Filed: **Sep. 22, 2017**

(65) **Prior Publication Data**

US 2018/0008600 A1    Jan. 11, 2018

**Related U.S. Application Data**

(63) Continuation of application No. 15/444,113, filed on Feb. 27, 2017, now abandoned, which is a continuation of application No. 15/019,874, filed on Feb. 9, 2016, now abandoned, which is a continuation of application No. 14/351,325, filed as application No. PCT/JP2012/076415 on Oct. 12, 2012, now abandoned.

(30) **Foreign Application Priority Data**

Oct. 14, 2011    (JP) ................................ 2011-227057

(51) Int. Cl.
  A61K 31/496    (2006.01)
  A61K 9/20    (2006.01)
  A61K 9/28    (2006.01)
  A61K 9/00    (2006.01)
(52) U.S. Cl.
  CPC .......... *A61K 31/496* (2013.01); *A61K 9/0056* (2013.01); *A61K 9/205* (2013.01); *A61K 9/2013* (2013.01); *A61K 9/2018* (2013.01); *A61K 9/2054* (2013.01); *A61K 9/2059* (2013.01); *A61K 9/2813* (2013.01); *A61K 9/2866* (2013.01)
(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,562,375 | B1 | 5/2003 | Sako et al. |
| 7,888,362 | B2 | 2/2011 | Yamashita et al. |
| 2003/0153617 | A1* | 8/2003 | Dalen .................. A61K 9/2866 514/460 |
| 2005/0043325 | A1 | 2/2005 | Bell et al. |
| 2007/0154544 | A1 | 7/2007 | Hrakovsky et al. |
| 2008/0187582 | A1 | 8/2008 | Guitard et al. |
| 2009/0318560 | A1 | 12/2009 | Parent et al. |
| 2010/0105710 | A1 | 4/2010 | Murakawa et al. |

| | | | |
|---|---|---|---|
| 2010/0130569 | A1* | 5/2010 | Okamoto ............. A61K 31/428 514/367 |
| 2010/0179322 | A1 | 7/2010 | Yamashita et al. |
| 2011/0152286 | A1 | 6/2011 | Yamashita et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| ES | 2318693 T3 | 5/2009 |
| JP | 2006-61067 A | 3/2006 |
| JP | 2006-316052 | 11/2006 |
| JP | 2008-115172 | 5/2008 |
| JP | 2010-268748 A | 12/2010 |
| KR | 10-2010-0099113 | 9/2010 |
| WO | WO 2009/047565 A2 | 4/2009 |
| WO | WO 2012/137071 A1 | 10/2012 |

OTHER PUBLICATIONS

Abilify—FDA label, 2008.
Abilify—FDA label, Feb. 2011.
Communication pursuant to Rule 114(2) EPC dated Oct. 2, 2015, issued in European Patent Application No. 12840025.6.
Communication pursuant to Rule 94(3) EPC dated Dec. 11, 2015, issued in European Patent Application No. 12840025.6.
English-language International Search Report from the Japanese Patent Office for International Application No. PCT/JP2012/076415, dated Jan. 8, 2013.
Japanese Pharmaceutical Excipients Directory, Jul. 2007, pp. 66, 93, 181 and 223.
Maeda, Kenji, "Preclinical Pharmacology of Brexpiprazole (OPC-34712): A Novel Compound with Dopamine D2 Receptor Partial Agonist Activity," Sep. 2011.
Maeda et al., "Brexpiprazole I: In Vitro and In Vivo Characterization of a Novel Serotonin-Dopamine Activity Modulator," The Journal of Pharmacology and Experimental Therapeutics, 350: pp. 589-604m Sep. 2014.
Office Action dated Dec. 10, 2015 for EA Application No. 201490783.
Office Action for corresponding JP Application No. 2013-538582 dated Jul. 7, 2016.
"Otsuka HD places top priority on development of OPC-34712," Pharma Japan, 2219, 3 (Jan. 3, 2011).

(Continued)

*Primary Examiner* — Jeffrey T. Palenik
(74) *Attorney, Agent, or Firm* — Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

(57) **ABSTRACT**

This invention relates to a tablet containing, as an active ingredient, 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl) butoxy]-1H-quinolin-2-one or a salt thereof, that has excellent disintegration ability, storage stability and photostability.
The tablet of the present invention comprising an uncoated tablet containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, excipients such as lactose, corn starch, and microcrystalline cellulose; disintegrants such as low-substituted hydroxypropylcellulose, croscarmellose sodium, and sodium carboxymethyl starch; binders such as hydroxypropylcellulose; lubricants such as stearate;
  and further comprising a coating layer, containing hypromellose; talc; titanium oxide; colorant; and the like, the coating layer being applied to the surface of the uncoated tablet.

**7 Claims, 1 Drawing Sheet**

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

**US 10,307,419 B2**

Page 2

(56) **References Cited**

OTHER PUBLICATIONS

Rowe, R.C., "The opacity of tablet film coatings," Journal of Pharmacy and Pharmacology, vol. 36, Jan. 1, 1984, pp. 569-572.

Strategy and Novel Technology on Pharmaceutical Preparations, Mar. 2007, pp. 30-31.

Supplementary European Search Report for corresponding EP Application No. EP 12 84 0025 dated Feb. 10, 2015.

Tiefenbacher, Eva-Maria et al., "Photodegradation of Some Quinolones Used as Antimicrobial Therapeutics," Journal of Pharmaceutical Sciences, Apr. 1994, vol. 83, No. 4, pp. 463-467.

Principles and equipment for coating of pharmaceutical preparations, 2006, pp. 123 to 125.

Decision of Rejection dated Jan. 6, 2017 in China Patent Application No. 201280050586.1.

Office Action for corresponding JP Application No. 2017-008854 dated Jan. 30, 2018.

Pharmaceutics: The Science of Dosage Form Design, 1988, 1st Edition, pp. 134, 136, 249, 250, 303, 443 and 444.

Pharmaceutics: The Science of Dosage Form Design, 2002, 2nd Edition, pp. 134, 136, 249, 250,303, 443 and 444.

Pharmaceutics: The Science of Dosage Form Design, 2002, 2nd Edition, p. 441.

Korean Office Action dated Jan. 3, 2019, issued in corresponding Korean Application No. 10-2014-7010656 by the Korean Intellectual Property Office.

* cited by examiner

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

**U.S. Patent**     Jun. 4, 2019     US 10,307,419 B2



Copy provided by USPTO from the PIRS Image Database on 08-02-2019

BREX00000213

US 10,307,419 B2

1

## TABLET COMPRISING 7-[4-(4-BENZO[B]THIOPEN-4-YL-PIPERAZIN-1-YL)BUTOXY]-1H-QUINOLIN-2-ONE OR A SALT THEREOF

This application is a continuation of U.S. application Ser. No. 15/019,874, filed Feb. 9, 2016, which is a continuation of U.S. application Ser. No. 14/351,325, 371 (c) date of Apr. 11, 2014, now abandoned, which is the National Stage Application of PCT/JP2012/076415, filed Oct. 12, 2012, and claims benefit to JP 2011-227057 filed Oct. 14, 2011, all of which are incorporated herein by reference.

### TECHNICAL FIELD

The present invention relates to a tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient.

### BACKGROUND ART

7-[4-(4-Benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one (hereunder referred to as Compound (I)) or a salt thereof is known to act as a dopamine $D_2$ receptor partial agonist, a serotonin 5-$HT_{2A}$ receptor antagonist, and an $\alpha_1$ adrenergic receptor antagonist, as well as a serotonin uptake inhibitor (or a serotonin reuptake inhibitor) (Patent Literature 1), and to possess a wide therapeutic spectrum in the treatment of central nervous system diseases (in particular, schizophrenia).

### CITATION LIST

#### Patent Literature

PTL 1: Japanese Unexamined Patent Publication No. 2006-316052

### SUMMARY OF INVENTION

#### Technical Problem

An object of the present invention is to provide a tablet comprising Compound (I) or a salt thereof as an active ingredient and having excellent disintegration ability, storage stability, and high photostability.

#### Solution to Problem

The present inventors conducted intensive research to achieve the above object and found that a tablet comprising Compound (I) or a salt thereof as an active ingredient and further comprising lactose, corn starch, microcrystalline cellulose or like excipient; low-substituted hydroxypropyl cellulose, croscarmellose sodium, sodium carboxymethyl starch or like disintegrant; and hydroxypropyl cellulose or like binder exhibits excellent disintegration ability and storage stability. The present inventors further found that higher photostability can be attained by applying a coating layer containing a colorant. The present invention was completed through further studies based on this finding, and provides the following items.

Item 1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2one or a salt thereof as an active ingredient.

2

Item 2. The tablet according to Item 1, further comprising: an excipient (a), a binder (b), a disintegrant (c) and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

the binder (b) is a cellulose derivative;

the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

the lubricant (d) is a stearate.

Item 3. The tablet according to Item 2,

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate.

Item 4. The tablet according to Item 2 or 3, wherein the tablet is an uncoated tablet comprising:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet.

Item 5. The tablet according to any one of Items 2 to 4, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

Item 6. The tablet according to any one of Items 1 to 5, which further comprises a coating layer on the surface thereof.

Item 7. The tablet according to Item 6, which further comprises the colorant (e) in the coating layer,

wherein the colorant (e) contains an iron oxide, and

the tablet contains 0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

Item 8. The tablet according to any one of Items 1 to 7, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

Item 9. The tablet according to any one of Items 1 to 8, wherein the tablet does not contain povidone or crospovidone.

Item 10. A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet,

wherein the excipient is at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

the binder (b) is a cellulose derivative;

the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

the lubricant (d) is a stearate.

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

US 10,307,419 B2

3

Item 11. The method for producing the tablet according to Item 10, further comprising the step of:

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a mixture, and coating the surface of the tablet using the mixture.

### Advantageous Effects of Invention

The tablet of the present invention exhibits excellent disintegration ability, storage stability, and high photostability, so that it can be effectively used in the medical field.

### BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 is a graph showing dissolution test results of tablets obtained in Examples 1-1 to 1-3, and Examples 2-1 to 2-3.

### DESCRIPTION OF EMBODIMENTS

The tablet of the present invention comprises Compound (I) or a salt thereof as an active ingredient.

Here, the tablet of the present invention may be an uncoated tablet having no coating layer applied thereon or a coated tablet having a coating layer on the surface thereof. Furthermore, the tablet of the present invention may be used as an orally disintegrating tablet.

Compound (I) or a salt thereof can be produced by a known method, for example, that disclosed in Japanese Unexamined Patent Publication No. 2006-316052 or a method based thereon.

Salts of Compound (I) are not particularly limited as long as they are pharmacologically acceptable. Preferable examples thereof include: metal salts such as alkali metal salts (e.g., sodium salts and potassium salts), alkaline earth metal salts (e.g., calcium salts and magnesium salts), salts of inorganic bases such as ammonium salts, alkali metal carbonates (e.g., lithium carbonate, potassium carbonate, sodium carbonate, and cesium carbonate), alkali metal hydrogen carbonates (e.g., lithium hydrogen carbonate, sodium hydrogen carbonate, and potassium hydrogen carbonate), and alkali metal hydroxides (e.g., lithium hydroxide, sodium hydroxide, potassium hydroxide, and cesium hydroxide); salts of organic bases such as tri(lower)alkylamines (e.g., trimethylamine, triethylamine, and N-ethyldiisopropylamine), pyridine, quinoline, piperidine, imidazole, picoline, dimethylaminopyridine, dimethylaniline, N-(lower)alkyl-morpholine (e.g., N-methylmorpholine), 1,5-diazabicyclo[4.3.0]non-5-ene (DBN), 1,8-diazabicyclo [5.4.0]undec-7-ene (DBU), 1,4-diazabicyclo[2.2.2]octane (DABCO); salts of inorganic acids such as hydrochloride, hydrobromate, sulfate, nitrate, and phosphate; salts of organic acids such as formate, acetate, propionate, oxalate, malonate, succinate, fumarate, maleate, lactate, malate, citrate, tartrate, carbonate, picrate, methanesulfonate, ethanesulfonate, p-toluenesulfonate, and glutamate; and the like.

Compound (I) or a salt thereof in the above forms may be used singly or in a combination of two or more.

The content of Compound (I) or a salt thereof is preferably about 0.05 to 25% by weight, and more preferably about 0.1 to 15% by weight with respect to the weight of the tablet (the weight of an uncoated tablet before applying a coating when the tablet is a coated tablet).

The tablet of the present invention preferably comprises additives such as an excipient (a), a binder (b), a disintegrant (c), and a lubricant (d).

4

Examples of excipients (a) include, for example, sugar such as fructose, white soft sugar, sucrose, powdered sucrose, lactose, powdered hydrogenated maltose starch syrup, and maltose; sugar alcohols such as D-mannitol, D-sorbitol, xylitol, erythritol, maltitol; starch such as wheat starch, corn starch, and potato starch; starch derivatives such as dextrin, beta-cyclodextrin; cellulose or ca derivative thereof such as microcrystalline cellulose, powdered cellulose, ethyl cellulose, carboxymethyl cellulose (carmellose), sodium carboxymethyl cellulose (carmellose sodium), and microcrystalline cellulose/carmellose sodium; silicic acid or a salt thereof such as light anhydrous silicic acid, hydrated silicon dioxide, silicon dioxide, calcium silicate, magnesium silicate, and magnesium aluminometasilicate; kaolin; titanium oxide; magnesium oxide; talc; precipitated calcium carbonate; anhydrous dibasic calcium phosphate.

These excipients (a) may be used singly or in a combination of two or more. Among these, sugar, a sugar alcohol, starch, and cellulose are preferable, and lactose, microcrystalline cellulose and corn starch are more preferable.

The excipient (a) content is not particularly limited, and is preferably about 10 to 98.5% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 20 to 95%, and still more preferably about 30 to 90% by weight.

The excipient (a) amount is not particularly limited, and is preferably about 1 to 2000 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably about 3 to 1800 parts by weight.

By setting the content and the amount of the excipient (a) as described above, the productivity can be improved.

Examples of the binder (b) include sucrose; white soft sugar; pregelatinized starch; partially pregelatinized starch; cellulose or a derivative thereof such as microcrystalline cellulose, methyl cellulose, ethyl cellulose, sodium carboxymethyl cellulose (carmellose sodium), hydroxyethyl cellulose, hydroxyethyl methyl cellulose, hydroxypropyl cellulose, low-substituted hydroxypropyl cellulose, hydroxypropyl methyl cellulose (hypromelloses such as hypromellose 2208, hypromellose 2906, and hypromellose 2910), other polysaccharides such as acacia, powdered acacia, agar, powdered agar, guar gum, tragacanth, powdered tragacanth, pullulan, and pectin; acrylic acid based polymer such as methacrylic acid copolymer L, methacrylic acid copolymer LD, methacrylic acid copolymer S, ethyl acrylate-methyl methacrylate copolymer dispersion, aminoalkyl methacrylate copolymer E, and aminoalkyl methacrylate copolymer RS; sodium alginate; purified gelatin; hydrolyzed gelatin powder; carboxyvinyl polymer; copolyvidone; povidone; polyvinyl alcohol. These binders (b) may be used singly or in a combination of two or more. Among these, a cellulose derivative is preferable, and hydroxypropyl cellulose is more preferable. It should be noted that, when povidone is contained as a binder (b), the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if this component is substantially not contained.

The binder (b) content is not particularly limited, and is preferably about 0.1 to 20% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), and more preferably about 0.5 to 5% by weight.

The binder (b) amount is not particularly limited, and is preferably about 0.01 to 100 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably about 0.1 to 50 parts by weight. By setting the content

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

US 10,307,419 B2

5                                                                6

and amount of the binder (b) as described above, the productivity and disintegration ability can be improved.

Examples of disintegrants (c) include starch or a derivative thereof such as wheat starch, corn starch, potato starch, partially pregelatinized starch, sodium carboxymethyl starch, and hydroxypropyl starch; cellulose or a derivative thereof such as microcrystalline cellulose, carboxymethyl cellulose (carmellose), calcium carboxymethyl cellulose (carmellose calcium), croscarmellose sodium, and low-substituted hydroxypropyl cellulose; crospovidone; alginic acid; and bentonite. These disintegrants (c) may be used singly or in a combination of two or more. Among these, starch or a derivative thereof, and cellulose or a derivative thereof are preferable, and sodium carboxymethyl starch, carmellose calcium, croscarmellose sodium and low-substituted hydroxypropyl cellulose are more preferable. It should be noted that, when crospovidone is contained, the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if this component is substantially not contained.

Here, in the present specification, "low-substituted hydroxypropyl cellulose" is a derivative of cellulose including hydroxypropoxyl groups by about 5 to 16%. The amount of the hydroxypropoxyl groups in the low-substituted hydroxypropyl cellulose may be measured by a method listed in, for example, the Japanese Pharmacopeia. The low-substituted hydroxypropyl cellulose may be produced by a method known in the art, or a commercially available product thereof may also be used. Examples of commercially available products of the low-substituted hydroxypropyl cellulose include, but are not limited to, "LH series" and "NBD series" manufactured by Shin-Etsu Chemical Co., Ltd.

Furthermore, in the present specification, "hydroxypropyl cellulose" is a derivative of cellulose including hydroxypropoxyl groups by about 50 to 85%. The amount of the hydroxypropoxyl groups in the hydroxypropyl cellulose may be measured by a method listed in, for example, the Japanese Pharmacopeia. The hydroxypropyl cellulose may be produced by a method known in the art, or a commercially available product thereof may also be used. Examples of commercially available products of the hydroxypropyl cellulose include, but are not limited to, "HPC series" manufactured by Nippon Soda Co., Ltd.; and "Klucel series" manufactured by Hercules Inc.

In the present specification, "sodium carboxymethyl starch" is a derivative of starch including sodium about 6 to 11%.

The disintegrant (c) content is not particularly limited, and is preferably about 1 to 25% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 2 to 20% by weight, and still more preferably about 3 to 15% by weight.

Furthermore, the disintegrant (c) amount is not particularly limited, and is preferably about 0.1 to 500 parts by weight per 1 part by weight of Compound (I) or a salt thereof, more preferably about 1 to 500 parts by weight, and still more preferably about 1 to 250 parts h weight. By setting the content and amount of the disintegrant (c) as described above, the disintegration ability can be improved.

Examples of lubricants (d) include stearic acid or a salt thereof such as stearic acid, aluminum stearate, calcium stearate, and magnesium stearate; carnauba wax; glycerol ester of fatty acid; hydrogenated oil; yellow beeswax; white beeswax; talc; sodium stearyl fumarate; and polyethylene glycol (macrogols such as macrogol 400, macrogol 600, macrogol 1500, macrogol 4000, and macrogol 6000). These

lubricants (d) may be used singly or in a combination of two or more. Among these, stearate, sucrose ester of fatty acid, and hydrogenated oil are preferable, and magnesium stearate is more preferable.

The lubricant (d) content is not particularly limited, and is preferably about 0.1 to 10% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 0.2 to 8% by weight, and still more preferably about 0.3 to 7% by weight.

The lubricant (d) amount is not particularly limited, and is preferably about 0.01 to 50 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably about 0.02 to 30 parts by weight. By setting the content and amount of the lubricant (d) as described above, the tabletability can be improved.

The tablet of the present invention may comprise other components in addition to the excipient (a), the binder (b), the disintegrant (c), and the lubricant (d). Examples of other components include various additives applicable to tablets, such as colorants, pH adjusters, preservatives, absorbefacients, taste enhancers, antioxidants, buffers, chelating agents, abrasives, solvents, hardening agents, surfactants, sweeteners, fluidizers, brightening agents, and flavors. Those components may be used in an amount that does not adversely affect the present invention.

The tablet of the present invention may be used as an uncoated tablet that comprises the above described components but does not have a coating layer provided thereon. A coated tablet (film-coated tablet) provided with a coating layer is preferable to achieve long-term storage stability and prevent degradation due to light or the like.

The coating layer may comprise pharmaceutical additives, such as a coating agent, plasticizer, dispersant, defoaming agent, and the like, usually used for coating (for providing a coat to) orally administrable pharmaceutical preparations.

Examples of additives include celluloses such as microcrystalline cellulose, methyl cellulose, ethyl cellulose, carmellose sodium, hydroxypropyl cellulose, and hydroxypropyl methyl cellulose (hypromellose) and derivatives thereof; polyethylene glycol (macrogol); polyvinyl alcohol; titanium oxide; and talc. These additives may be used singly or in a combination of two or more.

Among these, a combination of hydroxypropyl methyl cellulose (hypromellose), talc, and titanium oxide, which are components for coating agent, is preferable. It should be noted that, when polyethylene glycol (macrogol) exists in the coating layer, the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if polyethylene glycol (macrogol) is substantially not contained.

Furthermore, with regard to the coated tablet, by coloring the coating layer, photostability can be supplied to the coated tablet. Therefore, a colorant (e) is preferably added to the coating agent for coating the tablet.

Examples of colorants (e) include: iron oxides such as red ferric oxide, yellow ferric oxide, and black iron oxide; titanium oxide; beta-carotene; food blue No. 2; food blue No. 2 aluminium lake; and riboflavin.

Among these, containing an iron oxide is more preferable from a standpoint of not only adding a color to the tablet but also further improving photostability of the tablet.

The colorant (e) may be suitably selected, or used in combination, depending on the color of the coated tablet prepared. For example, to obtain a white coated tablet, titanium oxide is used; to obtain a red coated tablet, a combination of titanium oxide and red ferric oxide is used;

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

US 10,307,419 B2

7

to obtain a yellow coated tablet, a combination of titanium oxide and yellow ferric oxide is used; to obtain a blue coated tablet, a combination of titanium oxide and food blue No. 2 aluminium lake is used; to obtain an orange coated tablet, a combination of titanium oxide, red ferric oxide, and yellow ferric oxide is used; to obtain a green coated tablet, a combination of titanium oxide, yellow ferric oxide, and black iron oxide, or a combination of titanium oxide, yellow ferric oxide and food blue No. 2 aluminium lake is used; and to obtain a purple coated tablet, a combination of titanium oxide, red ferric oxide and black iron oxide, or a combination of titanium oxide, red ferric oxide and food blue No. 2 aluminium lake is used. As described above, a coated tablet may be made into various colors.

The colorant (e) content is preferably about 0.1 to 3% by weight with respect to the total weight of the coated tablet, and about 5 to 50% by weight with respect to the weight of the coating layer of the coated tablet.

The amount of a coating layer in tablet that is coated using the coating agent and a colorant (e) that is contained if necessary is preferably about 1 to 10 parts by weight per 100 parts by weight of a tablet (uncoated tablet) before having a coating provided thereon.

Specific preferable examples of the additives contained in the tablet of the present invention include:

as an excipient (a), at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

as a binder (b), cellulose derivatives;

as a disintegrant (c), at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and,

as a lubricant (d), stearates.

From a standpoint of productivity and disintegration ability, these additives are preferably used in a combination of: as an excipient (a), at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose; as a binder (b), hydroxypropyl cellulose; as a disintegrant (c), at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and, as a lubricant (d), magnesium stearate.

The tablet of the present invention preferably contains each of the components in the content and amount shown below.

Content of each of the Components in the Tablet Compound (I) or a salt thereof:
0.05 to 20% by weight
Sugar and/or sugar alcohol: 20 to 80% by weight
Starch: 5 to 50% by weight
Cellulose: 1 to 30% by weight
Hydroxypropyl cellulose: 0.1 to 20% by weight
At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:
1 to 25% by weight
Stearate 0.1 to 10% by weight
Amount of each of the Components in the Tablet per 1 part by weight of Compound (I) or a Salt thereof
Sugar and/or sugar alcohol: 1 to 1000 parts by weight
Starch: 1 to 400 parts by weight
Cellulose: 0.1 to 200 parts by weight
Hydroxypropyl cellulose: 0.01 to 100 parts by weight
At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:
0.1 to 500 parts by weight
Stearate: 0.01 to 50 parts by weight

8

The content and amount of each of the components in a further preferable mode of the tablet of the present invention are shown below.

Content of each of the Components in the Tablet Compound (I) or a salt thereof:
0.1 to 15% by weight
Lactose: 30 to 60% by weight
Corn starch: 10 to 30% by weight
Microcrystalline cellulose: 5 to 20% by weight
Hydroxypropyl cellulose: 0.5 to 10% by weight
At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:
2 to 15% by weight
Magnesium stearate: 0.1 to 10% by weight
Amount of each of the Components in the Tablet per 1 Part by Weight of Compound (I) or a Salt Thereof
Lactose: 2 to 500 parts by weight
Corn starch: 2 to 200 parts by weight
Microcrystalline cellulose: 0.5 to 100 parts by weight
Hydroxypropyl cellulose: 0.05 to 50 parts by weight
At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:
1 to 250 parts by weight
Magnesium stearate: 0.05 to 30 parts by weight
When the tablet of the present invention is a coated tablet, preferable examples of the additives contained in the coated tablet include, as the components for an uncoated tablet before coating:

as an excipient (a), at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

as a binder (b), cellulose derivatives;

as a disintegrant (c), at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

as a lubricant (d), stearates, and

as components for the coating layer:

cellulose derivatives, talc, titanium oxides and iron oxides as colorant (e).

Furthermore, when the tablet of the present invention is a coated tablet, a more preferable combination is a formulation obtained by applying a coating layer on an uncoated tablet; in which, the uncoated tablet contains Compound (I) or a salt thereof, lactose, corn starch, microcrystalline cellulose, low-substituted hydroxypropyl cellulose, hydroxypropyl cellulose, and magnesium stearate, and the coating layer contains hypromellose, talc, titanium oxide, and at least one colorant (e) (iron oxide) selected from the group consisting of red ferric oxide, yellow ferric oxide, and black iron oxide.

The preferable content and amount of each of the components, and further preferable content and amount of each of the components in a preferable mode of the coated tablet are shown below.

Content of each of the Components in the Uncoated Tablet
Compound (I) or a salt thereof:
0.05 to 20% by weight
Sugar and/or sugar alcohol: 20 to 80% by weight
Starch: 5 to 50% by weight
Cellulose: 1 to 30% by weight
Hydroxypropyl cellulose: 0.1 to 20% by weight

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

BREX00000217

US 10,307,419 B2

9

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:

1 to 25% by weight

Stearate: 0.1 to 10% by weight

Content of each of the Components in the Coating Layer (per entire coated tablet)

Cellulose derivative: 1 to 6% by weight

Talc: 0.1 to 1% by weight

Titanium oxide: 0.1 to 2% by weight

Iron oxide: 0.01 to 1% by weight

Amount of each of the Components in the Coated Tablet per 1 part by weight of Compound (I) or a Salt thereof

Lactose: 1 to 1000 parts by weight

Starch: 1 to 400 parts by weight

Cellulose: 0.1 to 200 parts by weight

Hydroxypropyl cellulose: 0.01 to 100 parts by weight

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:

0.1 to 500 parts by weight

Stearate: 0.01 to 50 parts by weight

Hypromellose: 0.1 to 50 parts by weight

Talc: 0.01 to 10 parts by weight

Titanium oxide: 0.01 to 20 parts by weight

Iron oxide: 0.0005 to 5 parts by weight

The content and amount of each of the components in a further preferable mode of the coated tablet are shown below.

Content of each of the Components in the Uncoated Tablet

Compound (I) or a salt thereof:

0.1 to 15% by weight

Lactose: 30 to 60% by weight

Corn starch: 10 to 30% by weight

Microcrystalline cellulose: 5 to 20% by weight

Hydroxypropyl cellulose: 0.5 to 10% by weight

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

2 to 15% by weight

Magnesium stearate: 0.1 to 10% by weight

Content of each of the Components in the Coating Layer (per entire coated tablet)

Hypromellose: 1.5 to 4% by weight

Talc: 0.2 to 0.5% by weight

Titanium oxide: 0.2 to 1% by weight

Iron oxide: 0.02 to 0.5% by weight

Amount of each of the Components in the Coated Tablet per 1 part by weight of Compound (I) or a Salt thereof

Lactose: 2 to 500 parts by weight

Corn starch: 2 to 200 parts by weight

Microcrystalline cellulose: 0.5 to 100 parts by weight

Hydroxypropyl cellulose: 0.05 to 50 parts by weight

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

1 to 250 parts by weight

Magnesium stearate: 0.05 to 30 parts by weight

Hypromellose: 0.2 to 40 parts by weight

Talc: 0.02 to 8 parts by weight

Titanium oxide: 0.02 to 15 parts by weight

Iron oxide: 0.001 to 2.5 parts by weight

The method for producing the tablet of the present invention is not particularly limited; for example, the tablet of the present invention can be produced by a step of forming into a tablet a mixture containing Compound (I) or a salt thereof, and components other than Compound (I) or a salt thereof

10

necessary to form a tablet (i.e., an excipient (a), a binder (b), a disintegrant (c), a lubricant (d) and the like). Alternatively, the tablet of the present invention can be produced by the method comprising: granulating a mixture containing Compound (I) or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and forming the obtained mixture into a tablet.

The granulation method used for forming the granulated substance into a tablet is not particularly limited. Examples thereof include dry granulation methods and wet granulation methods (e.g., a fluidized-bed granulation method, and a knead-granulation method). Among these, wet granulation methods are preferably used for the production, from a standpoint of being able to uniformly mix the active ingredient and other components in the tablet, and being able to obtain a tablet whose components are uniformly distributed therein.

Examples of the tablet forming methods include tableting, such as direct compression tableting, dry tableting, wet tableting, and external lubrication tableting.

The coated tablet of the present invention can be produced by mixing a coating agent, a colorant (e), and a liquid medium; spraying the obtained liquid mixture on the surface of the uncoated tablet obtained by the method described above; and successively drying it.

Examples of the liquid medium (e.g., a dispersion medium) used in the above described step include: water; methanol, ethanol, isopropanol, and like lower alcohols; acetone, methyl ethyl ketone, and like ketones; dichloromethane, dichloromethane, chloroform, carbon tetrachloride and like halogenated hydrocarbons; and mixtures of these solvents.

The tablet of the present invention preferably comprises Compound (I), which is an active ingredient, or a salt thereof in an amount of about 0.05 to 25 mg calculated as Compound (I).

The dose of the tablet of the present invention is suitably selected according to the intended use; the patient's age, sex, and other conditions; the severity of the disease; and the like. The dose is preferably selected so that the amount of Compound (I) (i.e., the active ingredient) or a salt thereof taken is about 0.05 to 6 mg per day calculated as Compound (I).

## EXAMPLES

The present invention is explained in detail below with reference to Examples. However, the scope of the present invention is not limited to these Examples. Note that in all of the Examples described below, Compound (I) was "7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one."

### Example 1

Uncoated tablets (a tablet not provided with a coating layer) of Compound (I) were produced using the components and amounts shown in Table 1, by following the procedures described below.

### Example 1-1

Compound (I), lactose, corn starch, microcrystalline cellulose (CEOLUS PH-301), and low-substituted hydroxypropylcellulose (LH-11, manufactured by Shin-Etsu Chemical Co., Ltd., hydroxypropoxyl groups content: 10.0 to 12.9%) were weighed and mixed. A separately prepared aqueous

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

BREX00000218

US 10,307,419 B2

11

solution of hydroxypropylcellulose was added to the powder mixture, followed by wet kneading granulation. After drying and sizing the result, magnesium stearate was added thereto and mixed. The resulting mixture was compressed using a single tableting machine equipped with a punch of diameter 6.5 mm in such a manner that the weight of the tablet became 100 mg, obtaining uncoated tablets containing 10 mg of Compound (I) per tablet.

### Example 1-2

Compound (I), lactose, corn starch, microcrystalline cellulose, and croscarmellose sodium were weighed and mixed. A separately prepared aqueous solution of hydroxypropylcellulose was added to the powder mixture, followed by wet kneading granulation. After drying and sizing the result, magnesium stearate was added thereto and mixed. The resulting mixture was compressed using a single tableting machine equipped with a punch of diameter 6.5 mm in such a manner that the weight of the tablet became 100 mg, obtaining uncoated tablets containing 10 mg of Compound (I) per tablet.

### Example 1-3

Compound (I), lactose, corn starch, microcrystalline cellulose, and sodium carboxymethyl starch were weighed and mixed. A separately prepared aqueous solution of hydroxypropylcellulose was added to the powder mixture, followed by wet kneading granulation. After drying and sizing the result, magnesium stearate was added thereto and mixed. The resulting mixture was compressed using a single tableting machine equipped with a punch of diameter 6.5 mm in such a manner that the weight of the tablet became 100 mg, obtaining uncoated tablets containing 10 mg of Compound (I) per tablet.

TABLE 1

| Components (mg) | Example 1-1 | Example 1-2 | Example 1-3 |
|---|---|---|---|
| Compound (I) | 10.0 | 10.0 | 10.0 |
| Lactose | 48.2 | 53.2 | 53.2 |
| Corn starch | 20.0 | 20.0 | 20.0 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | — | — |
| Croscarmellose sodium | — | 5.0 | — |
| Sodium carboxymethyl starch | — | — | 5.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.8 | 0.8 | 0.8 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |

Table 2 shows the tablet properties of uncoated tablets obtained in Examples 1-1 to 1-3.

TABLE 2

| Tablet properties | Example 1-1 | Example 1-2 | Example 1-3 |
|---|---|---|---|
| Hardness (Kp, n = 3) | 5.4 | 5.6 | 4.7 |
| Thickness (mm, n = 3) | 2.78 | 2.77 | 2.82 |
| Disintegration time (mm:ss, n = 6) | 1:18-1:36 | 2:00-2:16 | 1:09-1:35 |

The measurement of disintegration time (disintegration test) results show the measurement results of six tablets of each Example. The test was performed using water as a test

12

liquid according to the disintegration test of the Japanese Pharmacopeia (without an auxiliary disk).

### Examples 2-1 to 2-3

The uncoated tablets produced in Examples 1-1 to 1-3 each having a weight of 100 mg and containing 10 mg of Compound (I) were subjected to coating by spraying a coating liquid comprising the coating layer components whose amounts are shown in Table 3 thereby obtaining coated tablets.

TABLE 3

| Components (mg) | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Uncoated tablet | Example 1-1 | Example 1-2 | Example 1-3 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |
| Coating layer (mg) | | | |
| Hypromellose | 2.07 | 2.07 | 2.07 |
| Macrogol 6000 | 0.30 | 0.30 | 0.30 |
| Talc | 0.30 | 0.30 | 0.30 |
| Titanium oxide | 0.30 | 0.30 | 0.30 |
| Yellow ferric oxide | 0.03 | 0.03 | 0.03 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 103.0 | 103.0 | 103.0 |

Measurements of disintegration time (disintegration tests) were performed for the coated tablets produced in Examples 2-1 to 2-3 in the same manner as in Example 1-1. Table 4 shows the results. No delay in disintegration time due to coating was observed in the coated tablets produced in Examples 2-1 to 2-3.

TABLE 4

| | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Disintegration time (mm:ss, n = 6) | 1:35-1:50 | 2:22-2:40 | 1:26-1:44 |

Dissolution tests were performed for the uncoated tablets produced in Examples 1-1 to 1-3, and the coated tablets produced in Examples 2-1 to 2-3. FIG. 1 shows the results.

The dissolution test results show the average values of the measurement results of two tablets of each Example. The dissolution test was performed in accordance with the dissolution test method (paddle method; 50 rpm) of the Japanese Pharmacopeia, using a disodium hydrogenphosphate-citric acid buffer solution (900 mL) with pH 4.5 as a test liquid.

The dissolution test results confirm excellent dissolution profiles of the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3.

Furthermore, a stability test was performed for the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3 under the storage conditions of light irradiation (visible light: total illuminance of $1.8 \times 10^6$ lux·hr; ultraviolet light: total intensity of 300 W·hr/m²) and a closed system at 40° C. (sealed in bottles for one month or three months). The contents of Compound (I) and impurity after the storage in each condition were measured. Table 5 shows the results.

Note that after the storage under the above light irradiation conditions, yellow coloring was observed in the uncoated tablets produced in Examples 1-1 to 1-3.

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

BREX00000219

US 10,307,419 B2

**13**

TABLE 5

| | Example No. | | | | | |
|---|---|---|---|---|---|---|
| | 1-1 | 1-2 | 1-3 | 2-1 | 2-2 | 2-3 |
| | Contents of Compound (I) (%, n = 3) | | | | | |
| Initial | 98.1 | 99.4 | 99.7 | 99.6 | 101.5 | 101.9 |
| Light irradiation | 98.3 | 99.3 | 99.8 | 100.0 | 101.7 | 102.3 |
| 40° C. - 1 month | 99.6 | 101.4 | 100.8 | 102.2 | 103.5 | 103.4 |
| 40° C. - 3 months | 98.0 | 100.5 | 100.0 | 100.1 | 102.8 | 103.5 |
| | Content of impurity (%, n = 1) | | | | | |
| Initial | 0.365 | 0.362 | 0.371 | 0.373 | 0.367 | 0.374 |
| Light irradiation | 0.662 | 0.634 | 0.592 | 0.477 | 0.500 | 0.463 |
| 40° C. - 1 month | 0.354 | 0.78 | 0.376 | 0.370 | 0.393 | 0.411 |
| 40° C. - 3 months | 0.409 | 0.373 | 0.401 | 0.385 | 0.409 | 0.419 |

### Example 3-1

Using the components and amounts shown in Table 6, uncoated tablets containing 0.25 mg of Compound (I) per tablet were produced in the same manner as in Example 1-1, except that a rotary tableting machine equipped with a punch of diameter 6.0 mm was used to obtain uncoated tablets each having a weight of 90 mg.

TABLE 6

| Components (mg) | Example 3-1 |
|---|---|
| Compound (I) | 0.25 |
| Lactose | 48.15 |
| Corn starch | 20.0 |
| Microcrystalline cellulose | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 |
| Hydroxypropylcellulose | 1.0 |
| Magnesium stearate | 0.6 |
| Weight of uncoated tablet (mg) | 90.0 |

### Examples 3-2 to 3-9

The uncoated tablets produced in Example 3-1 each having a weight of 90 mg and containing 0.25 mg of Compound (I) were subjected to coating by spraying a coating liquid comprising the coating layer components whose amounts are shown in Table 7 thereby obtaining coated tablets.

**14**

TABLE 7

| | Example No. | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
| Uncoated tablet Weight of uncoated tablet (mg) | Example 3-1 90.0 | | | | | | | |
| Coating layer (mg) | | | | | | | | |
| Hypromellose | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 |
| Macrogol 6000 | 0.3 | — | 0.3 | — | 0.3 | — | 0.3 | — |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.6 | 0.6 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 |
| red ferric oxide | — | — | 0.06 | 0.06 | — | — | — | — |
| Yellow ferric pride | — | — | — | — | 0.06 | 0.06 | — | — |
| Food blue No. 2 | — | — | — | — | — | — | 0.06 | 0.06 |
| Aluminum lake (3-5%) | | | | | | | | |
| Weight of coat layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

Furthermore, a stability test was performed for the uncoated tablets produced in Example 3-1 and the coated tablets produced in Examples 3-2 to 3-9 under the storage conditions of light irradiation (visible light: total illuminance of $1.8 \times 10^6$ lux·hr; ultraviolet light: total intensity of 300 W·hr/m²) and an open system at 40° C./75% RH (three months, six months), i.e., conditions as or more severe as those of Examples 1-1 to 1-3 and Examples 2-1 to 2-3. The contents of impurity after the storage in each condition were measured. Table 8 shows the results.

No increase in impurity was observed in the tablets of Examples 3-5 and 3-7, even after the light irradiation.

| | Example No. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 3-1 | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
| | (Content of Impurity: %, n = 1) | | | | | | | | |
| Initial | 0.687 | 0.772 | 0.773 | 0.683 | 0.713 | 0.677 | 0.805 | 0.951 | 0.909 |
| Light irradiation | 4.142 | 2.069 | 1.469 | 1.401 | 0.676 | 1.493 | 0.675 | 2.573 | 1.186 |
| 40° C./ 75% RH - 3 months | 0.980 | 1.820 | 0.900 | 1.613 | 1.093 | 1.483 | 1.112 | 2.055 | 1.393 |
| 40° C./ 75% RH - 6 months | 1.140 | 2.264 | 1.672 | 2.232 | 1.232 | 1.766 | 1.247 | 2.130 | 1.783 |

### Examples 4-1 to 4-13

Coated tablets of Compound (I) of Examples 4-1 to 4-13 that comprise the components and amounts shown in Table 9 were produced in the same manner as in Example 3-2.

TABLE 9

| Components (mg) | Example No. | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4-1 | 4-2 | 4-3 | 4-4 | 4-5 | 4-6 | 4-7 | 4-8 | 4-9 | 4-10 | 4-11 | 4-12 | 4-13 |
| Compound (I) | 0.05 | 0.25 | 0.5 | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 0.25 | 0.25 | 0.25 | 1.0 |
| Lactose | 46.35 | 48.15 | 47.9 | 47.4 | 46.4 | 45.4 | 44.4 | 43.4 | 42.4 | 48.15 | 48.15 | 48.15 | 47.4 |
| Corn starch | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 |

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

US 10,307,419 B2

15          16

TABLE 9-continued

| Components (mg) | Example No. | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4-1 | 4-2 | 4-3 | 4-4 | 4-5 | 4-6 | 4-7 | 4-8 | 4-9 | 4-10 | 4-11 | 4-12 | 4-13 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 |
| Weight of uncoated | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 |
| Hypromellose | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.57 |
| Red ferric oxide | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | — | — | 0.02 | 0.01 |
| Yellow ferric oxide | — | — | — | — | — | — | — | — | — | — | 0.04 | — | — |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

INDUSTRIAL APPLICABILITY

The tablet of the present invention comprising benzothiophen compound (I) or a salt thereof has excellent disintegration ability, storage stability, and photostability. Therefore, the tablet of the present invention is highly usable in the medical field.

The invention claimed is:

1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,

10 to 98.5% by weight of the excipient (a), which is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

0.1 to 20% by weight of the binder (b), which is hydroxypropyl cellulose;

1 to 25% by weight of the disintegrant (c), which is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

0.1 to 10% by weight of the lubricant (d), which is magnesium stearate;

wherein said coating comprises hydroxypropyl methylcellulose, talc, and a colorant (e), the colorant (e) is present in an amount ranging from 0.1 to 50% by weight of the coating and comprises iron oxide and titanium oxide, and the coating substantially does not contain polyethylene glycol.

2. The tablet according to claim 1, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

3. The tablet according to claim 1, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

4. The tablet according to claim 1, wherein the tablet does not contain povidone or crospovidone.

5. The tablet according to claim 1, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

6. A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b] thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet form; and

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet form using the coating mixture to form the tablet,

wherein the tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,

10 to 98.5% by weight of the excipient (a), which is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

0.1 to 20% by weight of the binder (b), which is hydroxypropyl cellulose;

1 to 25% by weight of the disintegrant (c), which is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

0.1 to 10% by weight of the lubricant (d), which is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein said coating agent comprises hydroxypropyl methyl cellulose and talc, the colorant (e) is present in an amount ranging from 0.1 to 50% by weight of the coating mixture and comprises iron oxide and titanium oxide, and

the coating mixture substantially does not contain polyethylene glycol.

7. The method for producing the tablet according to claim 6, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

* * * * *

BREX00000221

Copy provided by USPTO from the PIRS Image Database on 08-02-2019

BREX00000222



BREX00000223

PTO-1683
(Rev. 7-96)

BREX00000224

# J. E. 2

~ 1 ~

DESCRIPTION

Title of Invention:
Tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-
5   yl)butoxy]-1H-quinolin-2-one or a salt thereof

       This application is a continuation of U.S. Application
No. 15/019,874, filed February 9, 2016, which is a continuation
of U.S. Application No. 14/351,325, 371(c) date of April 11,
10   2014, now abandoned, which is the National Stage Application of
PCT/JP2012/076415, filed October 12, 2012, and claims benefit to
JP 2011-227057 filed October 14, 2011, all of which are
incorporated herein by reference.

15   Technical Field
     [0001]
       The present invention relates to a tablet comprising 7-
[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-
one or a salt thereof as an active ingredient.
20
Background Art
     [0002]
       7-[4-(4-Benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-
1H-quinolin-2-one (hereunder referred to as Compound (I)) or a
25   salt thereof is known to act as a dopamine $D_2$ receptor partial
agonist, a serotonin 5-HT$_{2A}$ receptor antagonist, and an $\alpha_1$
adrenergic receptor antagonist, as well as a serotonin uptake
inhibitor (or a serotonin reuptake inhibitor) (Patent Literature
1), and to possess a wide therapeutic spectrum in the treatment
30   of central nervous system diseases (in particular,
schizophrenia).

Citation List
   Patent Literature
35   [0003]

4829-5503-8532, v. 1

BREX00004902

- 2 -

PTL 1: Japanese Unexamined Patent Publication No. 2006-316052

Summary of Invention
 Technical Problem
5  [0004]
       An object of the present invention is to provide a
tablet comprising Compound (I) or a salt thereof as an active
ingredient and having excellent disintegration ability, storage
stability, and high photostability.

10

Solution to Problem
   [0005]
       The present inventors conducted intensive research to
achieve the above object and found that a tablet comprising
15  Compound (I) or a salt thereof as an active ingredient and
further comprising lactose, corn starch, microcrystalline
cellulose or like excipient; low-substituted hydroxypropyl
cellulose, croscarmellose sodium, sodium carboxymethyl starch or
like disintegrant; and hydroxypropyl cellulose or like binder
20  exhibits excellent disintegration ability and storage stability.
The present inventors further found that higher photostability
can be attained by applying a coating layer containing a
colorant. The present invention was completed through further
studies based on this finding, and provides the following items.
25  [0006]
       Item 1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-
yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as
an active ingredient.
   [0007]
30       Item 2. The tablet according to Item 1, further
comprising:
       an excipient (a), a binder (b), a disintegrant (c) and
a lubricant (d),
       wherein the excipient (a) is at least one member
35  selected from the group consisting of sugars, sugar alcohols,

4829-5503-8532, v. 1

BREX00004903

~ 3 ~

starches, and celluloses;

the binder (b) is a cellulose derivative;

the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch
5 derivatives; and

the lubricant (d) is a stearate.

[0008]

Item. 3

The tablet according to Item 2,
10 wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected
15 from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate.

[0009]
20 Item 4. The tablet according to Item 2 or 3, wherein the tablet is an uncoated tablet comprising:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);
25 0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet.

[0010]
30 Item 5. The tablet according to any one of Items 2 to 4, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);
35 0.01 to 100 parts by weight of the binder (b);

BREX00004904

-- 4 --

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

[0011]

Item 6. The tablet according to any one of Items 1 to 5, which further comprises a coating layer on the surface thereof.

[0012]

Item 7. The tablet according to Item 6, which further comprises the colorant (e) in the coating layer,

wherein the colorant (e) contains an iron oxide, and

the tablet contains 0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

[0013]

Item 8. The tablet according to any one of Items 1 to 7, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

[0014]

Item 9. The tablet according to any one of Items 1 to 8, wherein the tablet does not contain povidone or crospovidone.

[0015]

Item 10. A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet,

wherein the excipient (a) is at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

the binder (b) is a cellulose derivative;

the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

the lubricant (d) is a stearate.

[0016]

BREX00004905

- 5 -

Item 11. The method for producing the tablet according to Item 10, further comprising the step of:

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a mixture, and coating the surface of the tablet using the mixture.

Advantageous Effects of Invention

[0017]

The tablet of the present invention exhibits excellent disintegration ability, storage stability, and high photostability, so that it can be effectively used in the medical field.

Brief Description of Drawings

[0018]

Fig. 1 is a graph showing dissolution test results of tablets obtained in Examples 1-1 to 1-3, and Examples 2-1 to 2-3.

Description of Embodiments

[0019]

The tablet of the present invention comprises Compound (I) or a salt thereof as an active ingredient.

Here, the tablet of the present invention may be an uncoated tablet having no coating layer applied thereon or a coated tablet having a coating layer on the surface thereof. Furthermore, the tablet of the present invention may be used as an orally disintegrating tablet.

Compound (I) or a salt thereof can be produced by a known method, for example, that disclosed in Japanese Unexamined Patent Publication No. 2006-316052 or a method based thereon.

[0020]

Salts of Compound (I) are not particularly limited as long as they are pharmacologically acceptable. Preferable examples thereof include: metal salts such as alkali metal salts

4829-5503-8532, v. 1

- 6 -

(e.g., sodium salts and potassium salts), alkaline earth metal
salts (e.g., calcium salts and magnesium salts), salts of
inorganic bases such as ammonium salts, alkali metal carbonates
(e.g., lithium carbonate, potassium carbonate, sodium carbonate,
5    and cesium carbonate), alkali metal hydrogen carbonates (e.g.,
lithium hydrogen carbonate, sodium hydrogen carbonate, and
potassium hydrogen carbonate), and alkali metal hydroxides (e.g.,
lithium hydroxide, sodium hydroxide, potassium hydroxide, and
cesium hydroxide); salts of organic bases such as
10   tri(lower)alkylamines (e.g., trimethylamine, triethylamine, and
N-ethyldiisopropylamine), pyridine, quinoline, piperidine,
imidazole, picoline, dimethylaminopyridine, dimethylaniline, N-
(lower)alkyl-morpholine (e.g., N-methylmorpholine), 1,5-
diazabicyclo[4.3.0]non-5-ene (DBN), 1,8-diazabicyclo[5.4.0]undec-
15   7-ene (DBU), 1,4-diazabicyclo[2.2.2]octane (DABCO); salts of
inorganic acids such as hydrochloride, hydrobromate, sulfate,
nitrate, and phosphate; salts of organic acids such as formate,
acetate, propionate, oxalate, malonate, succinate, fumarate,
maleate, lactate, malate, citrate, tartrate, carbonate, picrate,
20   methanesulfonate, ethanesulfonate, p-toluenesulfonate, and
glutamate; and the like.

[0021]

        Compound (I) or a salt thereof in the above forms may
be used singly or in a combination of two or more.

25   [0022]

        The content of Compound (I) or a salt thereof is
preferably about 0.05 to 25% by weight, and more preferably about
0.1 to 15% by weight with respect to the weight of the tablet
(the weight of an uncoated tablet before applying a coating when
30   the tablet is a coated tablet).

[0023]

        The tablet of the present invention preferably
comprises additives such as an excipient (a), a binder (b), a
disintegrant (c), and a lubricant (d).

35   [0024]

BREX00004907

— 7 —

Examples of excipients (a) include, for example, sugar such as fructose, white soft sugar, sucrose, powdered sucrose, lactose, powdered hydrogenated maltose starch syrup, and maltose; sugar alcohols such as D-mannitol, D-sorbitol, xylitol,
5   erythritol, maltitol; starch such as wheat starch, corn starch, and potato starch; starch derivatives such as dextrin, beta-cyclodextrin; cellulose or a derivative thereof such as microcrystalline cellulose, powdered cellulose, ethyl cellulose, carboxymethyl cellulose (carmellose), sodium carboxymethyl
10  cellulose (carmellose sodium), and microcrystalline cellulose/carmellose sodium; silicic acid or a salt thereof such as light anhydrous silicic acid, hydrated silicon dioxide, silicon dioxide, calcium silicate, magnesium silicate, and magnesium aluminometasilicate; kaolin; titanium oxide; magnesium
15  oxide; talc; precipitated calcium carbonate; anhydrous dibasic calcium phosphate.
[0025]

These excipients (a) may be used singly or in a combination of two or more. Among these, sugar, a sugar alcohol,
20  starch, and cellulose are preferable, and lactose, microcrystalline cellulose and corn starch are more preferable.
[0026]

The excipient (a) content is not particularly limited, and is preferably about 10 to 98.5% by weight with respect to the
25  weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 20 to 95%, and still more preferably about 30 to 90% by weight.
[0027]

The excipient (a) amount is not particularly limited,
30  and is preferably about 1 to 2000 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably about 3 to 1800 parts by weight.

By setting the content and the amount of the excipient (a) as described above, the productivity can be improved.
35  [0028]

BREX00004908

~ 8 ~

Examples of the binder (b) include sucrose; white soft
sugar; pregelatinized starch; partially pregelatinized starch;
cellulose or a derivative thereof such as microcrystalline
cellulose, methyl cellulose, ethyl cellulose, sodium
5    carboxymethyl cellulose (carmellose sodium), hydroxyethyl
cellulose, hydroxyethyl methyl cellulose, hydroxypropyl
cellulose, low-substituted hydroxypropyl cellulose, hydroxypropyl
methyl cellulose (hypromelloses such as hypromellose 2208,
hypromellose 2906, and hypromellose 2910},; other polysaccharides
10   such as acacia, powdered acacia, agar, powdered agar, guar gum,
tragacanth, powdered tragacanth, pullulan, and pectin; acrylic
acid based polymer such as methacrylic acid copolymer L,
methacrylic acid copolymer LD, methacrylic acid copolymer S,
ethyl acrylate-methyl methacrylate copolymer dispersion,
15   aminoalkyl methacrylate copolymer E, and aminoalkyl methacrylate
copolymer RS; sodium alginate; purified gelatin; hydrolyzed
gelatin powder; carboxyvinyl polymer; copolyvidone; povidone;
polyvinyl alcohol.  These binders (b) may be used singly or in a
combination of two or more.  Among these, a cellulose derivative
20   is preferable, and hydroxypropyl cellulose is more preferable.  It
should be noted that, when povidone is contained as a binder (b),
the obtained tablet tends to have reduced photostability and
storage stability.  Therefore, it is more preferable if this
component is substantially not contained.
25   [0029]

The binder (b) content is not particularly limited, and
is preferably about 0.1 to 20% by weight with respect to the
weight of the tablet (when the tablet is coated, the weight of
the uncoated tablet), and more preferably about 0.5 to 5% by
30   weight.
[0030]

The binder (b) amount is not particularly limited, and
is preferably about 0.01 to 100 parts by weight per 1 part by
weight of Compound (I) or a salt thereof, and more preferably
35   about 0.1 to 50 parts by weight.  By setting the content and

4829-5503-8532, v. 1

BREX00004909

- 9 -

amount of the binder (b) as described above, the productivity and
disintegration ability can be improved.

[0031]

Examples of disintegrants (c) include starch or a
5   derivative thereof such as wheat starch, corn starch, potato
starch, partially pregelatinized starch, sodium carboxymethyl
starch, and hydroxypropyl starch; cellulose or a derivative
thereof such as microcrystalline cellulose, carboxymethyl
cellulose (carmellose), calcium carboxymethyl cellulose
10  (carmellose calcium), croscarmellose sodium, and low-substituted
hydroxypropyl cellulose; crospovidone; alginic acid; and
bentonite.  These disintegrants (c) may be used singly or in a
combination of two or more.  Among these, starch or a derivative
thereof, and cellulose or a derivative thereof are preferable,
15  and sodium carboxymethyl starch, carmellose calcium,
croscarmellose sodium and low-substituted hydroxypropyl cellulose
are more preferable.  It should be noted that, when crospovidone
is contained, the obtained tablet tends to have reduced
photostability and storage stability.  Therefore, it is more
20  preferable if this component is substantially not contained.

[0032]

Here, in the present specification, "low-substituted
hydroxypropyl cellulose" is a derivative of cellulose including
hydroxypropoxyl groups by about 5 to 16%.  The amount of the
25  hydroxypropoxyl groups in the low-substituted hydroxypropyl
cellulose may be measured by a method listed in, for example, the
Japanese Pharmacopeia.  The low-substituted hydroxypropyl
cellulose may be produced by a method known in the art, or a
commercially available product thereof may also be used.  Examples
30  of commercially available products of the low-substituted
hydroxypropyl cellulose include, but are not limited to, "LH
series" and "NBD series" manufactured by Shin-Etsu Chemical Co.,
Ltd.

[0033]

35      Furthermore, in the present specification,

BREX00004910

~ 10 ~

"hydroxypropyl cellulose" is a derivative of cellulose including
hydroxypropoxyl groups by about 50 to 85%. The amount of the
hydroxypropoxyl groups in the hydroxypropyl cellulose may be
measured by a method listed in, for example, the Japanese
5  Pharmacopeia. The hydroxypropyl cellulose may be produced by a
method known in the art, or a commercially available product
thereof may also be used. Examples of commercially available
products of the hydroxypropyl cellulose include, but are not
limited to, "HPC series" manufactured by Nippon Soda Co., Ltd.;
10 and "Klucel series" manufactured by Hercules Inc.
    [0034]
         In the present specification, "sodium carboxymethyl
starch" is a derivative of starch including sodium about 6 to
11%.
15 [0035]
         The disintegrant (c) content is not particularly
limited, and is preferably about 1 to 25% by weight with respect
to the weight of the tablet (when the tablet is coated, the
weight of the uncoated tablet), more preferably about 2 to 20% by
20 weight, and still more preferably about 3 to 15% by weight.
    [0036]
         Furthermore, the disintegrant (c) amount is not
particularly limited, and is preferably about 0.1 to 500 parts by
weight per 1 part by weight of Compound (I) or a salt thereof,
25 more preferably about 1 to 500 parts by weight, and still more
preferably about 1 to 250 parts by weight. By setting the content
and amount of the disintegrant (c) as described above, the
disintegration ability can be improved.
    [0037]
30       Examples of lubricants (d) include stearic acid or a
salt thereof such as stearic acid, aluminum stearate, calcium
stearate, and magnesium stearate; carnauba wax; glycerol ester of
fatty acid; hydrogenated oil; yellow beeswax; white beeswax;
talc; sodium stearyl fumarate; and polyethylene glycol (macrogols
35 such as macrogol 400, macrogol 600, macrogol 1500, macrogol 4000,

4829-5603-8532, v. 1

BREX00004911

- 11 -

and macrogol 6000). These lubricants (d) may be used singly or in a combination of two or more. Among these, stearate, sucrose ester of fatty acid, and hydrogenated oil are preferable, and magnesium stearate is more preferable.

5   [0038]

The lubricant (d) content is not particularly limited, and is preferably about 0.1 to 10% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 0.2 to 8% by weight,
10   and still more preferably about 0.3 to 7% by weight.
[0039]

The lubricant (d) amount is not particularly limited, and is preferably about 0.01 to 50 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably
15   about 0.02 to 30 parts by weight. By setting the content and amount of the lubricant (d) as described above, the tabletability can be improved.
[0040]

The tablet of the present invention may comprise other
20   components in addition to the excipient (a), the binder (b), the disintegrant (c), and the lubricant (d). Examples of other components include various additives applicable to tablets, such as colorants, pH adjusters, preservatives, absorbefacients, taste enhancers, antioxidants, buffers, chelating agents, abrasives,
25   solvents, hardening agents, surfactants, sweeteners, fluidizers, brightening agents, and flavors. Those components may be used in an amount that does not adversely affect the present invention.
[0041]

The tablet of the present invention may be used as an
30   uncoated tablet that comprises the above described components but does not have a coating layer provided thereon. A coated tablet (film-coated tablet) provided with a coating layer is preferable to achieve long-term storage stability and prevent degradation due to light or the like.

35

BREX00004912

~ 12 ~

[0042]

The coating layer may comprise pharmaceutical
additives, such as a coating agent, plasticizer, dispersant,
defoaming agent, and the like, usually used for coating (for
5   providing a coat to) orally administrable pharmaceutical
preparations.

[0043]

Examples of additives include celluloses such as
microcrystalline cellulose, methyl cellulose, ethyl cellulose,
10  carmellose sodium, hydroxypropyl cellulose, and hydroxypropyl
methyl cellulose (hypromellose) and derivatives thereof;
polyethylene glycol (macrogol); polyvinyl alcohol; titanium
oxide; and talc.  These additives may be used singly or in a
combination of two or more.

15  [0044]

Among these, a combination of hydroxypropyl methyl
cellulose (hypromellose), talc, and titanium oxide, which are
components for coating agent, is preferable.  It should be noted
that, when polyethylene glycol (macrogol) exists in the coating
20  layer, the obtained tablet tends to have reduced photostability
and storage stability.  Therefore, it is more preferable if
polyethylene glycol (macrogol) is substantially not contained.

[0045]

Furthermore, with regard to the coated tablet, by
25  coloring the coating layer, photostability can be supplied to the
coated tablet.  Therefore, a colorant (e) is preferably added to
the coating agent for coating the tablet.

[0046]

Examples of colorants (e) include: iron oxides such as
30  red ferric oxide, yellow ferric oxide, and black iron oxide;
titanium oxide; beta-carotene; food blue No. 2; food blue No. 2
aluminium lake; and riboflavin.

[0047]

Among these, containing an iron oxide is more
35  preferable from a standpoint of not only adding a color to the

BREX00004913

-- 13 --

tablet but also further improving photostability of the tablet.
[0048]

The colorant (e) may be suitably selected, or used in
combination, depending on the color of the coated tablet
5  prepared. For example, to obtain a white coated tablet, titanium
oxide is used; to obtain a red coated tablet, a combination of
titanium oxide and red ferric oxide is used; to obtain a yellow
coated tablet, a combination of titanium oxide and yellow ferric
oxide is used; to obtain a blue coated tablet, a combination of
10  titanium oxide and food blue No. 2 aluminium lake is used; to
obtain an orange coated tablet, a combination of titanium oxide,
red ferric oxide, and yellow ferric oxide is used; to obtain a
green coated tablet, a combination of titanium oxide, yellow
ferric oxide, and black iron oxide, or a combination of titanium
15  oxide, yellow ferric oxide and food blue No. 2 aluminium lake is
used; and to obtain a purple coated tablet, a combination of
titanium oxide, red ferric oxide and black iron oxide, or a
combination of titanium oxide, red ferric oxide and food blue No.
2 aluminium lake is used. As described above, a coated tablet may
20  be made into various colors.
[0049]

The colorant (e) content is preferably about 0.1 to 3%
by weight with respect to the total weight of the coated tablet,
and about 5 to 50% by weight with respect to the weight of the
25  coating layer of the coated tablet.
[0050]

The amount of a coating layer in tablet that is
coated using the coating agent and a colorant (e) that is
contained if necessary is preferably about 1 to 10 parts by
30  weight per 100 parts by weight of a tablet (uncoated tablet)
before having a coating provided thereon.
[0051]

Specific preferable examples of the additives contained
in the tablet of the present invention include:
35  as an excipient (a), at least one member selected from

BREX00004914

– 14 –

the group consisting of sugars, sugar alcohols, starches, and
celluloses;

        as a binder (b), cellulose derivatives;

        as a disintegrant (c), at least one member selected
5  from the group consisting of cellulose derivatives and starch
derivatives; and,

        as a lubricant (d), stearates.

[0052]

        From a standpoint of productivity and disintegration
10  ability, these additives are preferably used in a combination of:
as an excipient (a), at least one member selected from the group
consisting of lactose, corn starch, and microcrystalline
cellulose; as a binder (b), hydroxypropyl cellulose; as a
disintegrant (c), at least one member selected from the group
15  consisting of low-substituted hydroxypropyl cellulose,
croscarmellose sodium, and sodium carboxymethyl starch; and, as a
lubricant (d), magnesium stearate.

[0053]

        The tablet of the present invention preferably contains
20  each of the components in the content and amount shown below.

[0054]

        Content of each of the Components in the Tablet
Compound (I) or a salt thereof:

               0.05 to 20% by weight
25  Sugar and/or sugar alcohol:   20 to 80% by weight

Starch:             5 to 50% by weight

Cellulose:         1 to 30% by weight

Hydroxypropyl cellulose: 0.1 to 20% by weight

At least one member selected from the group consisting of low-
30  substituted hydroxypropyl cellulose, croscarmellose sodium, and
starch derivatives:

                 1 to 25% by weight

Stearate:          0.1 to 10% by weight

[0055]

35          Amount of each of the Components in the Tablet per 1

BREX00004915

-- 15 --

part by weight of Compound (I) or a Salt thereof
Sugar and/or sugar alcohol:   1 to 1000 parts by weight
Starch:   1 to 400 parts by weight
Cellulose:   0.1 to 200 parts by weight
5   Hydroxypropyl cellulose:   0.01 to 100 parts by weight
At least one member selected from the group consisting of low-
substituted hydroxypropyl cellulose, croscarmellose sodium, and
starch derivatives:
                              0.1 to 500 parts by weight
10   Stearate:                 0.01 to 50 parts by weight
[0056]
        The content and amount of each of the components in a
further preferable mode of the tablet of the present invention
are shown below.
15   [0057]
        Content of each of the Components in the Tablet
Compound (I) or a salt thereof:
                              0.1 to 15% by weight
Lactose:                      30 to 60% by weight
20   Corn starch:             10 to 30% by weight
Microcrystalline cellulose:  5 to 20% by weight
Hydroxypropyl cellulose:     0.5 to 10% by weight
At least one member selected from the group consisting of low-
substituted hydroxypropyl cellulose, croscarmellose sodium, and
25   sodium carboxymethyl starch:
                              2 to 15% by weight
Magnesium stearate:          0.1 to 10% by weight
[0058]
        Amount of each of the Components in the Tablet per 1
30   Part by Weight of Compound (I) or a Salt Thereof
Lactose:                      2 to 500 parts by weight
Corn starch:                  2 to 200 parts by weight
Microcrystalline cellulose:  0.5 to 100 parts by weight
Hydroxypropyl cellulose:     0.05 to 50 parts by weight
35   At least one member selected from the group consisting of low-

BREX00004916

– 16 –

substituted hydroxypropyl cellulose, croscarmellose sodium, and
sodium carboxymethyl starch:

|  |  |
|---|---|
|  | 1 to 250 parts by weight |
| Magnesium stearate: | 0.05 to 30 parts by weight |

5   [0059]

When the tablet of the present invention is a coated
tablet, preferable examples of the additives contained in the
coated tablet include, as the components for an uncoated tablet
before coating:

10              as an excipient (a), at least one member selected from
the group consisting of sugars, sugar alcohols, starches, and
celluloses;

              as a binder (b), cellulose derivatives;

              as a disintegrant (c), at least one member selected
15  from the group consisting of cellulose derivatives and starch
derivatives; and

              as a lubricant (d), stearates, and
as components for the coating layer:

              cellulose derivatives, talc, titanium oxides and iron
20  oxides as colorant (e).

    [0060]

              Furthermore, when the tablet of the present invention
is a coated tablet, a more preferable combination is a
formulation obtained by applying a coating layer on an uncoated
25  tablet; in which, the uncoated tablet contains Compound (I) or a
salt thereof, lactose, corn starch, microcrystalline cellulose,
low-substituted hydroxypropyl cellulose, hydroxypropyl cellulose,
and magnesium stearate, and the coating layer contains
hypromellose, talc, titanium oxide, and at least one colorant (e)
30  (iron oxide) selected from the group consisting of red ferric
oxide, yellow ferric oxide, and black iron oxide.

    [0061]

              The preferable content and amount of each of the
components, and further preferable content and amount of each of
35  the components in a preferable mode of the coated tablet are

BREX00004917

- 17 -

shown below.

[0062]

Content of each of the Components in the Uncoated Tablet

5   Compound (I) or a salt thereof:
                                  0.05 to 20% by weight
    Sugar and/or sugar alcohol:   20 to 80% by weight
    Starch:                       5 to 50% by weight
    Cellulose:                    1 to 30% by weight
10  Hydroxypropyl cellulose:      0.1 to 20% by weight
    At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:
                                  1 to 25% by weight
15  Stearate:                     0.1 to 10% by weight
    [0063]

Content of each of the Components in the Coating Layer (per entire coated tablet)
    Cellulose derivative:         1 to 6% by weight
20  Talc:                         0.1 to 1% by weight
    Titanium oxide:               0.1 to 2% by weight
    Iron oxide:                   0.01 to 1% by weight
    [0064]

Amount of each of the Components in the Coated Tablet
25  per 1 part by weight of Compound (I) or a Salt thereof
    Lactose:                      1 to 1000 parts by weight
    Starch:                       1 to 400 parts by weight
    Cellulose:                    0.1 to 200 parts by weight
    Hydroxypropyl cellulose:      0.01 to 100 parts by weight
30  At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:
                                  0.1 to 500 parts by weight
    Stearate:                     0.01 to 50 parts by weight
35  Hypromellose:                 0.1 to 50 parts by weight

BREX00004918

- 18 -

| | |
|---|---|
| Talc: | 0.01 to 10 parts by weight |
| Titanium oxide: | 0.01 to 20 parts by weight |
| Iron oxide: | 0.0005 to 5 parts by weight |

[0065]

The content and amount of each of the components in a further preferable mode of the coated tablet are shown below.

[0066]

Content of each of the Components in the Uncoated Tablet

| | |
|---|---|
| Compound (I) or a salt thereof: | |
| | 0.1 to 15% by weight |
| Lactose: | 30 to 60% by weight |
| Corn starch: | 10 to 30% by weight |
| Microcrystalline cellulose: | 5 to 20% by weight |
| Hydroxypropyl cellulose: | 0.5 to 10% by weight |

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

| | |
|---|---|
| | 2 to 15% by weight |
| Magnesium stearate: | 0.1 to 10% by weight |

[0067]

Content of each of the Components in the Coating Layer (per entire coated tablet)

| | |
|---|---|
| Hypromellose: | 1.5 to 4% by weight |
| Talc: | 0.2 to 0.5% by weight |
| Titanium oxide: | 0.2 to 1% by weight |
| Iron oxide: | 0.02 to 0.5% by weight |

[0068]

Amount of each of the Components in the Coated Tablet per 1 part by weight of Compound (I) or a Salt thereof

| | |
|---|---|
| Lactose: | 2 to 500 parts by weight |
| Corn starch: | 2 to 200 parts by weight |
| Microcrystalline cellulose: | 0.5 to 100 parts by weight |
| Hydroxypropyl cellulose: | 0.05 to 50 parts by weight |

At least one member selected from the group consisting of low-

BREX00004919

-- 19 --

substituted hydroxypropyl cellulose, croscarmellose sodium, and
sodium carboxymethyl starch:

| | |
|---|---|
| | 1 to 250 parts by weight |
| Magnesium stearate: | 0.05 to 30 parts by weight |
| Hypromellose: | 0.2 to 40 parts by weight |
| Talc: | 0.02 to 8 parts by weight |
| Titanium oxide: | 0.02 to 15 parts by weight |
| Iron oxide: | 0.001 to 2.5 parts by weight |

[0069]
      The method for producing the tablet of the present
invention is not particularly limited; for example, the tablet of
the present invention can be produced by a step of forming into a
tablet a mixture containing Compound (I) or a salt thereof, and
components other than Compound (I) or a salt thereof necessary to
form a tablet (i.e., an excipient (a), a binder (b), a
disintegrant (c), a lubricant (d) and the like). Alternatively,
the tablet of the present invention can be produced by the method
comprising: granulating a mixture containing Compound (I) or a
salt thereof, an excipient (a), a binder (b), and a disintegrant
(c), and further mixing thereto a lubricant (d); and forming the
obtained mixture into a tablet.
[0070]
      The granulation method used for forming the granulated
substance into a tablet is not particularly limited. Examples
thereof include dry granulation methods and wet granulation
methods (e.g., a fluidized-bed granulation method, and a knead-
granulation method). Among these, wet granulation methods are
preferably used for the production, from a standpoint of being
able to uniformly mix the active ingredient and other components
in the tablet, and being able to obtain a tablet whose components
are uniformly distributed therein.
[0071]
      Examples of the tablet forming methods include
tableting, such as direct compression tableting, dry tableting,

BREX00004920

- 20 -

wet tableting, and external lubrication tableting.

[0072]

   The coated tablet of the present invention can be
produced by mixing a coating agent, a colorant (e), and a liquid
5  medium; spraying the obtained liquid mixture on the surface of
the uncoated tablet obtained by the method described above; and
successively drying it.

[0073]

   Examples of the liquid medium (e.g., a dispersion
10  medium) used in the above described step include: water;
methanol, ethanol, isopropanol, and like lower alcohols; acetone,
methyl ethyl ketone, and like ketones; dichloromethane,
dichloroethane, chloroform, carbon tetrachloride and like
halogenated hydrocarbons; and mixtures of these solvents.

15  [0074]

   The tablet of the present invention preferably
comprises Compound (I), which is an active ingredient, or a salt
thereof in an amount of about 0.05 to 25 mg calculated as
Compound (I).

20  [0075]

   The dose of the tablet of the present invention is
suitably selected according to the intended use; the patient's
age, sex, and other conditions; the severity of the disease; and
the like.  The dose is preferably selected so that the amount of
25  Compound (I) (i.e., the active ingredient) or a salt thereof
taken is about 0.05 to 6 mg per day calculated as Compound (I).


Examples

[0076]

30     The present invention is explained in detail below with
reference to Examples.  However, the scope of the present
invention is not limited to these Examples. Note that in all of
the Examples described below, Compound (I) was "7-[4-(4-
benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one."

35  [0077]

BREX00004921

~ 21 ~

Example 1

　　Uncoated tablets (a tablet not provided with a coating
layer) of Compound (I) were produced using the components and
amounts shown in Table 1, by following the procedures described
5　below.

[0078]

Example 1-1

　　Compound (I), lactose, corn starch, microcrystalline
cellulose (CEOLUS PH-301), and low-substituted
10　hydroxypropylcellulose (LH-11, manufactured by Shin-Etsu Chemical
Co., Ltd., hydroxypropoxyl groups content: 10.0 to 12.9%) were
weighed and mixed. A separately prepared aqueous solution of
hydroxypropylcellulose was added to the powder mixture, followed
by wet kneading granulation. After drying and sizing the result,
15　magnesium stearate was added thereto and mixed. The resulting
mixture was compressed using a single tableting machine equipped
with a punch of diameter 6.5 mm in such a manner that the weight
of the tablet became 100 mg, obtaining uncoated tablets
containing 10 mg of Compound (I) per tablet.

20　[0079]

Example 1-2

　　Compound (I), lactose, corn starch, microcrystalline
cellulose, and croscarmellose sodium were weighed and mixed. A
separately prepared aqueous solution of hydroxypropylcellulose
25　was added to the powder mixture, followed by wet kneading
granulation. After drying and sizing the result, magnesium
stearate was added thereto and mixed. The resulting mixture was
compressed using a single tableting machine equipped with a punch
of diameter 6.5 mm in such a manner that the weight of the tablet
30　became 100 mg, obtaining uncoated tablets containing 10 mg of
Compound (I) per tablet.

[0080]

Example 1-3

　　Compound (I), lactose, corn starch, microcrystalline
35　cellulose, and sodium carboxymethyl starch were weighed and mixed.

BREX00004922

— 22 —

A separately prepared aqueous solution of hydroxypropylcellulose
was added to the powder mixture, followed by wet kneading
granulation.  After drying and sizing the result, magnesium
stearate was added thereto and mixed.  The resulting mixture was
5   compressed using a single tableting machine equipped with a punch
of diameter 6.5 mm in such a manner that the weight of the tablet
became 100 mg, obtaining uncoated tablets containing 10 mg of
Compound (I) per tablet.
[0081]
10

4829-5503-8532, v. 1

BREX00004923

– 23 –

Table 1

| Components (mg) | Example 1–1 | Example 1–2 | Example 1–3 |
|---|---|---|---|
| Compound (I) | 10.0 | 10.0 | 10.0 |
| Lactose | 48.2 | 53.2 | 53.2 |
| Corn starch | 20.0 | 20.0 | 20.0 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | – | – |
| Croscarmellose sodium | – | 5.0 | – |
| Sodium carboxymethyl starch | – | – | 5.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.8 | 0.8 | 0.8 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |

[0082]

Table 2 shows the tablet properties of uncoated tablets obtained in Examples 1–1 to 1–3.

[0083]

Table 2

| Tablet properties | Example 1–1 | Example 1–2 | Example 1–3 |
|---|---|---|---|
| Hardness (Kp, n=3) | 5.4 | 5.6 | 4.7 |
| Thickness (mm, n=3) | 2.78 | 2.77 | 2.82 |
| Disintegration time (mm:ss, n=6) | 1:18–1:36 | 2:00–2:16 | 1:09–1:35 |

[0084]

The measurement of disintegration time (disintegration test) results show the measurement results of six tablets of each Example. The test was performed using water as a test liquid according to the disintegration test of the Japanese Pharmacopeia (without an auxiliary disk).

[0085]

Examples 2–1 to 2–3

The uncoated tablets produced in Examples 1–1 to 1–3 each having a weight of 100 mg and containing 10 mg of Compound

BREX00004924

-- 24 --

(I) were subjected to coating by spraying a coating liquid
comprising the coating layer components whose amounts are shown
in Table 3 thereby obtaining coated tablets.

[0086]

5   Table 3

| Components (mg) | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Uncoated tablet | Example 1-1 | Example 1-2 | Example 1-3 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |
| Coating layer (mg) | | | |
| Hypromellose | 2.07 | 2.07 | 2.07 |
| Macrogol 6000 | 0.30 | 0.30 | 0.30 |
| Talc | 0.30 | 0.30 | 0.30 |
| Titanium oxide | 0.30 | 0.30 | 0.30 |
| Yellow ferric oxide | 0.03 | 0.03 | 0.03 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 103.0 | 103.0 | 103.0 |

[0087]

        Measurements of disintegration time (disintegration
tests) were performed for the coated tablets produced in Examples
10   2-1 to 2-3 in the same manner as in Example 1-1.  Table 4 shows
the results. No delay in disintegration time due to coating was
observed in the coated tablets produced in Examples 2-1 to 2-3.

[0088]

15   Table 4

| | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Disintegration time (mm:ss, n=6) | 1:35-1:50 | 2:22-2:40 | 1:26-1:44 |

[0089]

BREX00004925

-- 25 --

Dissolution tests were performed for the uncoated tablets produced in Examples 1-1 to 1-3, and the coated tablets produced in Examples 2-1 to 2-3.  Fig. 1 shows the results.
[0090]

5    The dissolution test results show the average values of the measurement results of two tablets of each Example.  The dissolution test was performed in accordance with the dissolution test method (paddle method; 50 rpm) of the Japanese Pharmacopoeia, using a disodium hydrogenphosphate-citric acid buffer solution
10   (900 mL) with pH 4.5 as a test liquid.
[0091]

The dissolution test results confirm excellent dissolution profiles of the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3.
15   [0092]

Furthermore, a stability test was performed for the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3 under the storage conditions of light irradiation (visible light: total illuminance
20   of $1.8 \times 10^6$ lux·hr; ultraviolet light: total intensity of 300 W·hr/m$^2$) and a closed system at 40°C (sealed in bottles for one month or three months).  The contents of Compound (I) and impurity after the storage in each condition were measured.  Table 5 shows the results.
25   [0093]

Note that after the storage under the above light irradiation conditions, yellow coloring was observed in the uncoated tablets produced in Examples 1-1 to 1-3.
[0094]

30

BREX00004926

~ 26 ~

Table 5

| Example No. | 1-1 | 1-2 | 1-3 | 2-1 | 2-2 | 2-3 |
|---|---|---|---|---|---|---|
| | Contents of Compound (I) (%, n=3) | | | | | |
| Initial | 98.1 | 99.4 | 99.7 | 99.6 | 101.5 | 101.9 |
| Light irradiation | 98.3 | 99.3 | 99.8 | 100.0 | 101.7 | 102.3 |
| 40°C ~1 month | 99.6 | 101.4 | 100.8 | 102.2 | 103.5 | 103.4 |
| 40°C ~3 months | 98.0 | 100.5 | 100.0 | 100.1 | 102.8 | 103.5 |
| | Content of impurity (%, n=1) | | | | | |
| Initial | 0.365 | 0.362 | 0.371 | 0.373 | 0.367 | 0.374 |
| Light irradiation | 0.662 | 0.634 | 0.592 | 0.477 | 0.500 | 0.463 |
| 40°C ~ 1 month | 0.354 | 0.378 | 0.376 | 0.370 | 0.393 | 0.411 |
| 40°C ~ 3 months | 0.409 | 0.373 | 0.401 | 0.385 | 0.409 | 0.419 |

Example 3-1

Using the components and amounts shown in Table 6,
uncoated tablets containing 0.25 mg of Compound (I) per tablet
were produced in the same manner as in Example 1-1, except that a
rotary tableting machine equipped with a punch of diameter 6.0 mm
was used to obtain uncoated tablets each having a weight of 90 mg.
[0095]

Table 6

| Components (mg) | Example 3-1 |
|---|---|
| Compound (I) | 0.25 |
| Lactose | 48.15 |
| Corn starch | 20.0 |
| Microcrystalline cellulose | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 |
| Hydroxypropylcellulose | 1.0 |
| Magnesium stearate | 0.6 |
| Weight of uncoated tablet (mg) | 90.0 |

[0096]

Examples 3-2 to 3-9

4829-5503-8532, v. 1

BREX00004927

— 27 —

The uncoated tablets produced in Example 3-1 each having a weight of 90 mg and containing 0.25 mg of Compound (I) were subjected to coating by spraying a coating liquid comprising the coating layer components whose amounts are shown in Table 7 thereby obtaining coated tablets.

[0097]

Table 7

| Example No. | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
|---|---|---|---|---|---|---|---|---|
| Uncoated tablet | Example 3-1 | | | | | | | |
| Weight of uncoated tablet (mg) | 90.0 | | | | | | | |
| Coating layer (mg) | | | | | | | | |
| Hypromellose | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 |
| Macrogol 6000 | 0.3 | — | 0.3 | — | 0.3 | — | 0.3 | — |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.6 | 0.6 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 |
| red ferric oxide | — | — | 0.06 | 0.06 | — | — | — | — |
| Yellow ferric oxide | — | — | — | — | 0.06 | 0.06 | — | — |
| Food blue No. 2 Aluminium lake (3-5%) | — | — | — | — | — | — | 0.06 | 0.06 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

[0098]

Furthermore, a stability test was performed for the uncoated tablets produced in Example 3-1 and the coated tablets produced in Examples 3-2 to 3-9 under the storage conditions of light irradiation (visible light: total illuminance of $1.8 \times 10^6$ lux·hr; ultraviolet light: total intensity of 300 W·hr/m$^2$) and an open system at 40°C/75% RH (three months, six months), i.e., conditions as or more severe as those of Examples 1-1 to 1-3 and Examples 2-1 to 2-3. The contents of impurity after the storage in each condition were measured. Table 8 shows the results.

No increase in impurity was observed in the tablets of Examples 3-5 and 3-7, even after the light irradiation.

BREX00004928

~ 28 ~

[0099]

BREX00004929

Table 8

| Example No. | 3-1 | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | (Content of Impurity: %, n=1) | | | | | |
| Initial | 0.687 | 0.772 | 0.773 | 0.663 | 0.713 | 0.677 | 0.905 | 0.951 | 0.909 |
| Light irradiation | 4.142 | 2.069 | 1.469 | 1.401 | 0.676 | 1.493 | 0.675 | 2.573 | 1.186 |
| 40°C/75% RH - 3 months | 0.980 | 1.820 | 0.900 | 1.613 | 1.093 | 1.483 | 1.112 | 2.055 | 1.393 |
| 40°C/75% RH - 6 months | 1.140 | 2.264 | 1.672 | 2.232 | 1.232 | 1.766 | 1.247 | 2.130 | 1.783 |

BREX00004930

4829-5603-8532, v. 1

~ 30 ~

[0100]

Examples 4-1 to 4-13

        Coated tablets of Compound (I) of Examples 4-1 to 4-13
that comprise the components and amounts shown in Table 9 were
5   produced in the same manner as in Example 3-2.

[0101]

BREX00004931

Table 9

| Components (mg) | Example No. | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4-1 | 4-2 | 4-3 | 4-4 | 4-5 | 4-6 | 4-7 | 4-8 | 4-9 | 4-10 | 4-11 | 4-12 | 4-13 |
| Compound (I) | 0.05 | 0.25 | 0.5 | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 0.25 | 0.25 | 0.25 | 1.0 |
| Lactose | 46.35 | 48.15 | 47.9 | 47.4 | 46.4 | 45.4 | 44.4 | 43.4 | 42.4 | 46.15 | 48.15 | 46.15 | 47.4 |
| Corn starch | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 |
| Weight of uncoated tablet (mg) | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 |
| Hypromellose | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.57 |
| Red ferric oxide | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | - | - | - | 0.01 |
| Yellow ferric oxide | - | - | - | - | - | - | - | - | - | - | 0.04 | 0.02 | - |
| Black iron oxide | - | - | - | - | - | - | - | - | - | 0.06 | 0.02 | 0.04 | 0.02 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

4829-8503-8522, v. 1

BREX00004932

~ 32 ~

Industrial Applicability

[0102]

      The tablet of the present invention comprising benzothiophen compound (I) or a salt thereof has excellent disintegration ability, storage stability, and photostability.  Therefore, the tablet of the present invention is highly usable in the medical field.

BREX00004933

- 33 -

CLAIMS

1.  A tablet comprising 7-[4-{4-benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c), and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate.

2.  The tablet according to claim 1, wherein the tablet is an uncoated tablet comprising:

0.05 to 25% by weight of 7-[4-{4-benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet.

3.  The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-{4-benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

BREX00004934

-- 34 --

0.01 to 50 parts by weight of the lubricant (d).

4.   The tablet according to claim 1, which
further comprises a coating layer on the surface thereof.

5.   The tablet according to claim 4, which
further comprises the colorant (e) in the coating layer,
        wherein the colorant (e) contains an iron
oxide, and
        the tablet contains 0.1 to 50% by weight of the
colorant (e) with respect to the weight of the coating
layer.

6.   The tablet according to claim 1 or 2, which
is obtained by forming, into a tablet, a granulated
substance obtained through wet granulation.

7.   The tablet according to claim 1 or 2,
wherein the tablet does not contain povidone or
crospovidone.

8.   A method for producing a tablet, the method
comprising the steps of:
        (1) granulating a mixture containing 7-{4-{4-
benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-
2-one or a salt thereof, an excipient (a), a binder (b),
and a disintegrant (c), and further mixing thereto a
lubricant (d); and
        (2) forming the obtained mixture into a tablet,
        wherein the excipient (a) is at least one
member selected from the group consisting of lactose, corn
starch, and microcrystalline cellulose;
        the binder (b) is hydroxypropyl cellulose;
        the disintegrant (c) is at least one member
selected from the group consisting of low-substituted

BREX00004935

# J. E. 3

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

22852        7590      11/03/2017
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413

| EXAMINER |
|---|
| PALENIK, JEFFREY T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1615 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/03/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

regional-desk@finnegan.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 15/713,427 | | Applicant(s) INOUE, Yoshiharu | |
|---|---|---|---|---|
| | Examiner Jeffrey T Palenik | | Art Unit 1615 | AIA Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>22 September 2017</u>
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b) ☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☑ Claim(s) <u>1-9</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☑ Claim(s) <u>1-9</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☑ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>22 September 2017</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a)☑ All    b)☐ Some**    c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☑ Certified copies of the priority documents have been received in Application No. <u>14/351,325</u>.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)                    3)☐ Interview Summary (PTO-413)
                                                              Paper No(s)/Mail Date _____.
2)☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)    4)☐ Other: _____.
  Paper No(s)/Mail Date <u>9/22/2017</u>.

BREX00004975

Application/Control Number: 15/713,427                                                    Page 2
Art Unit: 1615

## DETAILED ACTION

### STATUS OF THE APPLICATION

Claims 1-9 are presented and represent all claims currently under consideration on the

merits.

**The present application is being examined under the pre-AIA first to invent**

**provisions.**


### INFORMATION DISCLOSURE STATEMENT

One Information Disclosure Statement (IDS) filed 22 September 2017 is acknowledged

and has been considered.  Those references not present in the current file wrapper are verified as

being on file in a parent application.  See **MPEP §609.02(I)**.


### SPECIFICATION

The abstract of the disclosure is objected to because the following content is missing:

**Content of Specification**

(b) CROSS-REFERENCES TO RELATED APPLICATIONS: See **37 CFR 1.78** and

**MPEP §211** et seq.

Correction is required in accordance with **MPEP §608.01(b).**

## CLAIM REJECTIONS - 35 USC §103

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under pre-

AIA 35 U.S.C. 103(a) are summarized as follows:

    1. Determining the scope and contents of the prior art.
    2. Ascertaining the differences between the prior art and the claims at issue.
    3. Resolving the level of ordinary skill in the pertinent art.
    4. Considering objective evidence present in the application indicating obviousness or
nonobviousness.

This application currently names joint inventors. In considering patentability of the

claims under pre-AIA 35 U.S.C. 103(a), the Examiner presumes that the subject matter of the

various claims was commonly owned at the time any inventions covered therein were made

absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and invention dates of each claim that was not commonly owned at the

time a later invention was made in order for the Examiner to consider the applicability of pre-

AIA 35 U.S.C. 103(c) and potential pre-AIA 35 U.S.C. 102(e), (f) or (g) prior art under pre-AIA

35 U.S.C. 103(a).

**Claims 1-7 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over**

**Yamashita et al. (USPN 7,888,362 B1, also published as JP 2006/316052; IDS reference) in**

**view of Sako et al. (USPN 6,562,375; IDS reference).**

Claim 1 recites a tablet comprising the compound 7-[4-(4-benzo[b]thiophen-4-yl-

piperazin-1-yl)butoxy]-1H-quinolin-2-one (structure shown here):

7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1h-quinolin-2-one

The above compound is disclosed by **Yamashita** as a species of general formula (1) **(see e.g., claim 7, first compound)**. Incorporation of such compounds into tablet form is also taught and suggested **(see e.g., col. 17, lines 1-40; notably lines 8 and 11-40)**.

Claim 1 further recites that the tablet will further comprise: a) an excipient, b) a binder, c) a disintegrant, and d) a lubricant. The inclusion of these generic categories of compounds within the tablet form are also taught and suggested by the reference **(see col. 17, lines 11-40 and col. 89, lines 35-45)**.

These same passages are relied upon to teach and suggest the compound limitations recited in claim 3. Lactose and microcrystalline cellulose (aka Avicel) are taught as examples of excipients. Cellulose derivatives such as methylcellulose and carboxymethylcellulose are disclosed as examples of binders. Starch and dried starch are taught as examples of disintegrating agents. Stearates such as magnesium stearate are taught as examples of lubricants.

Regarding claim 4, the reference expressly teaches that the tablets formed may also be provided with a conventional coating as required (e.g., sugar-coating, enteric, film, etc.) **(see e.g., col. 17, lines 11-40)**. The specific example discussed above, discloses a coating formulation for the tablet as well **(col. 89, lines 35-45)**.

BREX00004978

Application/Control Number: 15/713,427                                        Page 5
Art Unit: 1615

Regarding the limitations of claim 6, the Examiner accorded the claim its broadest reasonable interpretation, considers the composition recited therein to be read upon by either of the compositions recited in claims 1 or 2. That is, claim 6 is considered to be drawn to the composition recited rather than the method by which it is produced, especially as the compositional and structural (i.e., tablet) limitations are met. See **MPEP §2113**.

The limitations of claim 7 are considered to be taught and suggested by the reference notably as the use of povidone (aka polyvinylpyrrolidone) is considered optional **(see e.g., col. 17, lines 11-40)**. Here, PVP is disclosed as being an example of a binder compound which can be used in the practiced compositions. That is, since it can be used and other options for the binder are taught and suggested, the use of PVP within the composition is considered to be optional. The reference is completely silent regarding crospovidone (or polyvinyl polypyrrolidone).

Lastly, regarding claim 5, as discussed above the tablet compositions are taught as further comprising a coating layer **(e.g., col. 17, lines 29-33)**. The reference teaches that the pharmaceutical compositions prepared may further comprise such additional components as pigments or color. However, Yamashita discloses neither the limitations that the pigment comprises iron oxide nor that the colorant is present in the coating layer in an amount ranging from 0.1-50 weight percent of said coating.

With regard to the compositional limitations recited in claim 1, the only perceived deficiency in the teachings of the reference is that hydroxypropyl cellulose (HPC) is not expressly disclosed, although other cellulose derivative compounds are taught and suggested as examples of binders. A person consulting the *Handbook of Pharmaceutical Excipients*, for example, would observe that compounds such as methylcellulose and HPC are both used as

BREX00004979

Application/Control Number: 15/713,427                                                    Page 6
Art Unit: 1615

suspending agents/viscosity modifying agents **(see e.g., pp. 134 and 181 of *HoPE*; 1986)**.

Based on these definitions in the prior art, a person of ordinary skill would thus be provided a

reasonable expectation of arriving at the instantly claimed invention understanding that such

compounds as methylcellulose could be substituted by HPC, absent a clear showing of evidence

to the contrary.

 Where Yamashita would be considered deficient is in its teachings of the tablet core

composition which functions as a carrier for the claimed piperazin compound as well as with

regard to the iron oxide colorant.

 **Guitard** is considered to remedy these deficiencies. The Examiner acknowledges that

the piperazin compound disclosed by Guitard is not the same. However, the compound is

disclosed as being formed into a tablet which is optionally coated **(see claim 20)** and which is

free of povidone or PVP. The Examiner thus advances that the key deficiency which is resolved

by Guitard is with respect to the carrier composition and that a person of skill in the art at the

time of the instant invention would have had a reasonable expectation of successfully achieving

the claimed composition in view of the combined teachings. Regarding the practiced carrier,

Guitard expressly teaches:

> ➢ **Claims 3, 4, and 15** of the reference disclose the filler (e.g., excipient), that it is
>   present in an amount ranging from 15-65% by weight of the tablet composition or
>   core tablet, and that such compounds which embody the filler include lactose and
>   microcrystalline cellulose;

> ➢ **Claims 11, 12, and 19** of the reference disclose the binder and that it is present in an
>   amount ranging from 0-5% by weight of the tablet composition or core tablet, and

BREX00004980

that such compounds which embody the binder include hydroxyl propyl cellulose (HPC);

➢ **Claims 5, 6, and 16** of the reference disclose the disintegrant and that it is present in an amount ranging from 5-15% by weight of the tablet composition or core tablet, and that such compounds which embody the disintegrant include crosslinked sodium carboxymethylcellulose (aka croscarmellose sodium); and

➢ **Claims 9, 10, and 18** of the reference disclose the lubricant and that it is present in an amount ranging from 0.5-2% by weight of the tablet composition or core tablet, and that magnesium stearate.

Thus, in resolving the carrier discrepancy of Yamashita, the Examiner notes that both references disclose the formation of tablet compositions wherein the dosage forms contain nearly all of the same carrier components and the same class of active compound will be released from said carrier (i.e., piperazin-based compounds). In response to Applicant's previous assertions regarding the generic teachings of Yamashita, the Examiner has presented Guitard as a showing in the art which gives directed guidance in producing the carrier as claimed. That is, the compounds are known and known to be used together. Amounts for said compounds are also known as evidenced above. As such, release of the alleged advantageous release profile alluded to in Applicant's response (i.e., not claimed) would also be reasonably expected.

Lastly, regarding the colorant deficiency, Guitard teaches and suggests at **¶[0085]** that "[t]he composition of the tablet ... may be coloured or marked so as to impart an individual appearance and to make them instantly recognizable. The use of dyes can serve to enhance the appearance as well as to identify the forms. Dyes suitable for use in pharmacy typically include ... iron oxides".

BREX00004981

Guitard does not teach or suggest that the dye is used in any particular amount within the

practiced tablet formulation.  Despite this, the Examiner respectfully advances that to arrive at

such an amount as is instantly claimed would have been well within the purview of the skilled

artisan at the time of the instant invention.  Such a limitation, absent a clear showing of evidence

to the contrary is broadly and reasonably considered to be tantamount to an aesthetic design

change.  See **MPEP §2144.04(I)** wherein the courts "found that matters relating to

ornamentation only which have no mechanical function cannot be relied upon to patentably

distinguish the claimed invention from the prior art."

Thus, based on the combined guidance of the prior art, it is apparent that one of ordinary

skill in the art would have had a reasonable expectation of success in producing the claimed

composition.  Therefore, the invention as a whole would have been *prima facie* obvious to one of

ordinary skill in the art at the time the invention was made, as evidenced by the references, in

combination, absent a clear showing of evidence to the contrary.

**Claims 1-9 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over
Yamashita et al. (USPN 7,888,362 B1, also published as JP 2006/316052; IDS reference) in
view of Sako et al. (USPN 6,562,375; IDS reference) and Bell et al. (US Pre-Grant
Publication N° 2005/0043325 A1; IDS reference).**

The limitations of claim 8 are directed to a method which comprises granulating a

mixture of the following components: the active ingredient 7-[4-(4-benzo[b]thiophen-4-yl-

piperazin-1-yl)butoxy]-1H-quinolin-2-one, in addition to: a) an excipient, b) a binder, c) a

disintegrant, and d) a lubricant, and then forming the mixture into a tablet.  Claim 9 recites an

additional step wherein a colorant coating is mixed and then applied to the tablet.

The teachings of **Yamashita** and **Sako** are discussed above, which are, at the outset, considered to teach and suggest the claimed composition.  It is disclosed further that dosage forms immediately encompassed by the scope of the invention include both granular forms and tablet forms **(see e.g., col. 17, lines 11-33; and col. 89, "Preparation Examples")**.  Yamashita is, thus considered to be heavily geared toward tablet preparation; the Preparation Examples section even discloses mixing the requisite components together and obtaining a tablet. Yamashita is considered to be somewhat deficient in that it does not expressly disclose the step of granulating the components together prior to mixing them together to form a tablet.  The Examiner advances that such a teaching is considered to be suggested at the very least particularly given that the reference teaches and suggests granules as a dosage form.

However, in anticipation of Applicant's traversal of this point, the Examiner alternatively acknowledges that Yamashita teaches and alludes to the fact that tableting procedures are known in the art **(see e.g., col. 17, lines 11-12)**.  Such known, conventional tableting procedures are evidenced by such showings in the prior art as are provided by **Bell et al.**  Therein, the reference discloses typical tablet carrier compositions such as those disclosed in ¶[0253] (shown below):

| Ingredient | % w/w |
|---|---|
| Compound of formula (I) | 10.00* |
| Microcrystalline cellulose | 64.12 |
| Lactose | 21.38 |
| Croscarmellose sodium | 3.00 |
| Magnesium stearate | 1.50 |

*Quantity adjusted in accordance with drug activity.

The disclosure for each of the microcrystalline cellulose/lactose combination, croscarmellose sodium, and magnesium stearate components is considered to read on the recited percentage limitations of claim 2.  Though this particular example does not include hydroxypropyl cellulose, ¶[0255] does teach and suggest the use of the compound as a

granulation binder and that it is in alternative to PVP. That is, a tablet carrier composition is

taught and suggested which uses HPC as binder and that said composition need not contain

povidone. To the granulation, ¶[0254] discloses that a typical tablet may be prepared using

standard processes known to a formulation chemist (i.e., a person of ordinary skill in the

pharmaceutical arts) which include different modes of granulation (e.g., wet granulation) and

direct compression. The paragraph adds that such tablets may be coated as well.

Thus, based on the combined teachings of the references, it is apparent that one of

ordinary skill in the art would have had a reasonable expectation of success in not only achieving

the claimed composition, but also in deriving the instantly claimed method of preparing said

composition. The Examiner has re-presented the teachings of Yamashita and Sako, previously

relied upon in the parent application demonstrating that such compositions are known in the art.

The Bell reference is newly cited to demonstrate that methods for producing coated tablets such

as that which is instantly claimed are, in fact, known and well-established in the prior art. The

Examiner concedes that Bell does not employ the instantly claimed active ingredient. However,

it is argued that Yamashita also teaches that many different active ingredients are envisioned as

being used with its disclose tablet carrier. Such a position is considered to be supported by

Bell's teaching of a "typical" tablet. See ¶¶[0253]-[0255].

Therefore, the invention as a whole would have been *prima facie* obvious to one of

ordinary skill in the art at the time the invention was made, absent a clear showing of evidence to

the contrary.

All claims have been rejected; no claims are allowed.

## CORRESPONDENCE

Any inquiry concerning this communication or earlier communications from the
Examiner should be directed to Jeffrey T. Palenik whose telephone number is (571) 270-1966.
The Examiner can normally be reached on **9:30 am – 7:00 pm; M-F (EST)**.

If attempts to reach the Examiner by telephone are unsuccessful, the Examiner's
supervisor, Robert A. Wax can be reached on (571) 272-0623. The fax phone number for the
organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent
Application Information Retrieval (PAIR) system. Status information for published applications
may be obtained from either Private PAIR or Public PAIR. Status information for unpublished
applications is available through Private PAIR only. For more information about the PAIR
system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would
like assistance from a USPTO Customer Service Representative or access to the automated
information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Jeffrey T. Palenik/
Primary Examiner, Art Unit 1615

# J. E. 4

PATENT
Attorney Docket No. 04676.0317-03000

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    )
                                         )
Yoshiharu INOUE                          )    Group Art Unit: 1615
                                         )
Application No.: 15/713,427              )    Examiner: JeffreyT. Palenik
                                         )
Filed:  September 22, 2017               )
                                         )
For:  TABLET COMPRISING 7-[4-(4-         )    Confirmation No.:  5849
      BENZO[B] THIOPHEN-4-YL-            )
      PIPERAZIN-1-YL)BUTOXY]-1H-         )
      QUINOLIN-2-ONE OR A SALT           )
      THEREOF                            )

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

## REPLY TO NON-FINAL OFFICE ACTION

In reply to the Office Action mailed November 3, 2017, the period for response

having been extended to April 3, 2018 by a request for extension of two months and fee

payment filed concurrently herewith, please amend the above-identified application as

follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

BREX00005012

PATENT
Attorney Docket No. 04676.0317-03

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| Yoshiharu INOUE | ) Group Art Unit: 1615 |
| | ) |
| Application No.: 15/713,427 | ) Examiner: JeffreyT. Palenik |
| | ) |
| Filed:  September 22, 2017 | ) |
| | ) |
| For:   TABLET COMPRISING 7-[4-(4- | ) Confirmation No.:  5849 |
| BENZO[B] THIOPHEN-4-YL- | ) |
| PIPERAZIN-1-YL)BUTOXY]-1H- | ) |
| QUINOLIN-2-ONE OR A SALT | ) |
| THEREOF | ) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

## PETITION FOR EXTENSION OF TIME

Applicant petitions for a two-month extension of time to file a reply to the

Non-Final Office Action of November 3, 2017.  A fee of $600.00 is enclosed.

Please grant any additional extensions of time required to enter the attached

reply and charge any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

Dated: April 3, 2018                    By:   _Charles E Van Horn_

Charles E. Van Horn
Reg. No. 40,266
(202) 408-4000

4839-8365-2189, v. 1

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15713427 |
| **Filing Date:** | 22-Sep-2017 |
| **Title of Invention:** | Tablet Comprising 7-[4-(4-benzo[b]thiopen-4-yl-piperazin-1 -yl)butoxy] -1H- Quinolin-2-One or a Salt Thereof |
| **First Named Inventor/Applicant Name:** | Yoshiharu INOUE |
| **Filer:** | Charles E. Van Horn/Kimberly Slazer |
| **Attorney Docket Number:** | 04676.0317-03000 |

Filed as Large Entity

### Filing Fees for   Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 1252 | 1 | 600 | 600 |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | 600 |

BREX00005015

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 32238069 |
| **Application Number:** | 15713427 |
| **International Application Number:** | |
| **Confirmation Number:** | 5849 |
| **Title of Invention:** | Tablet Comprising 7-[4-(4-benzo[b]thiopen-4-yl-piperazin-1 -yl)butoxy]-1H-Quinolin-2-One or a Salt Thereof |
| **First Named Inventor/Applicant Name:** | Yoshiharu INOUE |
| **Customer Number:** | 22852 |
| **Filer:** | Charles E. Van Horn/Kimberly Slazer |
| **Filer Authorized By:** | Charles E. Van Horn |
| **Attorney Docket Number:** | 04676.0317-03000 |
| **Receipt Date:** | 03-APR-2018 |
| **Filing Date:** | 22-SEP-2017 |
| **Time Stamp:** | 19:21:39 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $600 |
| RAM confirmation Number | 040418INTEFSW00005650060916 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

BREX00005016

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Reply-as-filed.pdf | 299832<br><br>bd0254da01e5fc5712eb659566e5765197f77982 | yes | 8 |

| Multipart Description/PDF files in .zip description ||||
|---|---|---|---|
| Document Description || Start | End |
| Applicant Arguments/Remarks Made in an Amendment || 5 | 8 |
| Claims || 2 | 4 |
| Amendment/Req. Reconsideration-After Non-Final Reject || 1 | 1 |

**Warnings:**

**Information:**

| 2 | Extension of Time | ext-of-time.pdf | 37949<br><br>52ad9f0aon610ce15dffad0ev681bdec237d8e7c | no | 1 |

**Warnings:**

**Information:**

| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30650<br><br>92d404dd96dd784e604f3499a2a6763e96bda47c | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 368431 |||

BREX00005017

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BREX00005018

## REMARKS

Claims 1-3 and 6-8 are pending.

Claims 4, 5 and 9 have been canceled without prejudice of disclaimer.

Claim 1 has been amended to point out the tablet contains a coating layer as described in now cancelled claims 4 and 5, and paragraphs 0044 and 0046 of the specification. Claim 2 has been amended to add further details regarding the coating layer as described, for example, in now canceled claim 5. Similarly , the amendments to claim 8 are based on now canceled claims 5 and 9, and paragraphs 0044 and 0046 of the specification. No new matter has been introduced by these amendments.

The Abstract was objected to as allegedly failing to include a cross-reference to related applications. Applicant disagrees. First, the Abstract is separate and distinct from a cross-reference to related applications. An abstract has been provided on page 36 of the application papers. Second, a cross-reference to related applications has been provided on page 1, lines 7-13 of the specification, but is not required to be there as benefit is properly claimed by the content of the Application Data Sheet, 37 CFR § 1.78(a)(3). Accordingly, that objection should be withdrawn.

Claims 1-7 have been rejected under pre-AIA 35 U.S.C. § 103 as being unpatentable over YAMASHITA et al. (U.S. Patent No. 7,888,362) in view of SAKO et al. (U.S. Patent No. 6,562,375). This rejection is considered improper as it fails to include documents relied on in the rejection. See In re Hoch, 166 USPQ 406 (CCPA 1970); MPEP 706.02(j). When a reference is relied on to support a rejection, whether or not in a minor capacity, that reference should be positively included in the statement of

4823-1287-7405, v. 1

BREX00005019

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

the rejection. The Examiner relied in the Handbook of Pharmaceutical Excipients and GUITARD to support this rejection, yet neither document was cited in the statement of the rejection. In addition, the SAKO document cited does not appear to be relied on. The rejection should be withdrawn for this reason alone.

The Examiner has argued that YAMASHITA broadly teaches a tablet that may comprise the recited active ingredient and may also include an excipient, a binder, a disintegrant and a lubricant. The Examiner acknowledges that YAMASHITA does not describe that hydroxypropyl cellulose (HPC) is a suitable binder, but relies on the Handbook of Pharmaceutical Excipients as showing that HPC has been used as a suspending agent or viscosity modifying agent in pharmaceutical formulations. However, the Examiner has cited no reason or motivation for selecting HPC over other binders known in the art, particularly one not described in YAMASHITA. The tablets of Examples 1-1 to 1-3 comprise HPC, and Table 2 shows that these tablets have excellent disintegration ability.

The Examiner has further pointed out that YAMASHITA broadly suggests that the tablet may be coated and provides a specific example of such a coating at col. 89, lines 34-44 that does include polyethylene glycol (specifically substantially excluded by amended claim 1) and does not include a colorant containing iron oxide and titanium dioxide (both included in the coating of amended claim 1). The Examiner further relies on GUITARD as teaching a tablet containing an active ingredient different from that claimed that may be coated (paragraph 0077) with a binder or one or more dyes to impart an individual appearance (paragraph 0085) and to make them instantly recognizable. The dyes include iron oxides or titanium dioxide.

4823-1287-7405, v 1

BREX00005020

White GUITARD does suggest adding one or more dyes to impart an individual appearance, the combination of titanium dioxide and iron oxide in the coating of the claimed tablet imparts photostability to the coated tablet as described on page 12, paragraph 0045 of the specification.  Applicant has determined that when the coating layer contains iron oxide and titanium dioxide, and substantially  does not contain polyethylene glycol (suggested by both YAMASHITA and GUITARD), the increase in impurity  content is suppressed even after light irradiation, and the tablet has excellent photostability.  Such effects have been verified by Examples 3-5 and 3-7, as shown in Table 8 of the present specification.  In contrast, the tablets of Example 3-4 and 3-6, which contain polyethylene glycol (macrogol), the impurity content is increased (stability is lower). Neither YAMASHITA nor GUITARD describe or suggest these features, nor is the resultant increase in stability predictable from these documents, alone or in combination.  Accordingly, for all the reasons discussed above, this rejection should be withdrawn.

Claims 1-9 have been rejected under pre-AIA 35 USC § 103 as being unpatentable over YAMASHITA in view of SAKO and BELL et al. (US 2005/0043325 A1).  This rejection also appears to be improper as it does not appear the Examiner has relied in SATO (not discussed above), but on GUITARD.  The Examiner apparently relies on BELL as teaching conventional methods for producing coated tablets, but there is no teaching in any of the references (including BELL) of enhancing the photostability of the recited tablets by employing a coating layer that contains iron oxide and titanium dioxide and that substantially does not contain polyethylene glycol.  These are features and effects not predictable from the documents relied on.  In fact, none of

BREX00005021

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

the prior art even appears to be concerned with the problem of photostability.  For all

the reasons discussed above, this rejection should be withdrawn.

Prompt and favorable reconsideration is respectfully requested.

Please grant any extensions of time required to enter this response and charge

any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

Dated: April 3, 2018                    By:_____

Charles E. Van Horn
Reg. No. 40,266
(202) 408-4000

-8-

4823-1287-7405, v. 1

BREX00005022

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## AMENDMENTS TO THE CLAIMS:

This listing of claims will replace all prior versions and listings of claims in the application:

1. (Currently Amended)   A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c) and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein the coating layer contains a colorant (e),

the colorant (e) contains an iron oxide and titanium oxide, and

the coating layer substantially does not contain polyethylene glycol.

2. (Currently Amended)  The tablet according to claim 1, wherein the tablet is an uncoated tablet comprises comprising:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

BREX00005023

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet; and

0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

3. (Original)  The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

4-5.  (Canceled).

6. (Original)  The tablet according to claim 1 or 2, which is obtained by forming into a tablet, a granulated substance obtained through wet granulation.

7. (Original)  The tablet according to claim 1 or 2, wherein the tablet does not contain povidone or crospovidone.

4823-1287-7405, v. 1

BREX00005024

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

8. (Currently Amended)  A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet; and

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet using the coating mixture,

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the colorant (e) contains an iron oxide and titanium oxide; and

the coating mixture substantially does not contain polyethylene glycol.

9. (Canceled).

4823-1287-7405, v. 1

BREX00005025

# J. E. 5

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

| | |
|---|---|
| 22852         7590         07/16/2018<br>FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP<br>901 NEW YORK AVENUE, NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001-4413<br>UNITED STATES OF AMERICA | **EXAMINER**<br>PALENIK, JEFFREY T |
| | **ART UNIT** / **PAPER NUMBER**<br>1615 |
| | **NOTIFICATION DATE** / **DELIVERY MODE**<br>07/16/2018     ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

regional-desk@finnegan.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No.<br>15/713,427 | | Applicant(s)<br>INOUE, Yoshiharu | |
|---|---|---|---|---|
| | Examiner<br>Jeffrey T Palenik | | Art Unit<br>1615 | AIA Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
   Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>3 April 2018</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☑ This action is **FINAL.**   2b) ☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-3 and 6-8</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-3 and 6-8</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**

   a)☑ All   b)☐ Some**   c)☐ None of the:

   1.☐ Certified copies of the priority documents have been received.

   2.☑ Certified copies of the priority documents have been received in Application No. <u>14/351,325</u>.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>4/25/18; 5/31/18</u>.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

BREX00005094

Application/Control Number: 15/713,427                                                Page 2
Art Unit: 1615

## DETAILED ACTION

### STATUS OF THE APPLICATION

Receipt is acknowledged of Applicant's Amendments and Remarks, filed 3 April 2018,

in the matter of Application N° 15/713,427. Said documents have been entered on the record.

The Examiner further acknowledges the following:

**The present application is being examined under the pre-AIA first to invent**

**provisions.**

Claims 4, 5, and 9 have been canceled. Claims 1 and 8 have been amended to include the

limitations of the canceled claims. No claims have been added. No new matter has been added.

Thus, claims 1-3 and 6-8 now represent all claims currently under consideration.

### INFORMATION DISCLOSURE STATEMENT

Two new Information Disclosure Statements (IDS) filed 25 April 2018 and 31 May 2018

are acknowledged and have been considered.

### WITHDRAWN REJECTIONS

Rejection under 35 USC 103

Applicant's amendments to claim 1 is considered sufficient in overcoming the

obviousness rejection previously raised over the combined teachings of Yamashita and Sako. As

such, the rejection is **withdrawn**.

Application/Control Number: 15/713,427                                          Page 3
Art Unit: 1615

**MAINTAINED REJECTIONS**

The following rejections are maintained from the previous Office Correspondence dated

3 November 2017 since the art which was previously cited continues to read on the

amended/previously recited limitations.

**CLAIM REJECTIONS - 35 USC §103**

The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under pre-

AIA 35 U.S.C. 103(a) are summarized as follows:

    1. Determining the scope and contents of the prior art.
    2. Ascertaining the differences between the prior art and the claims at issue.
    3. Resolving the level of ordinary skill in the pertinent art.
    4. Considering objective evidence present in the application indicating obviousness or
nonobviousness.

This application currently names joint inventors.  In considering patentability of the

claims under pre-AIA 35 U.S.C. 103(a), the Examiner presumes that the subject matter of the

various claims was commonly owned at the time any inventions covered therein were made

absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and invention dates of each claim that was not commonly owned at the

time a later invention was made in order for the Examiner to consider the applicability of pre-

AIA 35 U.S.C. 103(c) and potential pre-AIA 35 U.S.C. 102(e), (f) or (g) prior art under pre-AIA

35 U.S.C. 103(a).

    *Claims 1-3 and 6-8* **are rejected under pre-AIA 35 U.S.C. 103(a) as being**

**unpatentable over Yamashita et al. (USPN 7,888,362 B1, also published as JP 2006/316052;**

**IDS reference) in view of Guitard et al. (US Pre-Grant Publication N° 2008/0187582 A1)**

BREX00005096

Application/Control Number: 15/713,427                                              Page 4
Art Unit: 1615

**and Bell et al. (US Pre-Grant Publication Nº 2005/0043325 A1; IDS reference) [emphasis**

**added to reflect canceled claims].**

Claim 1 recites a tablet comprising the compound 7-[4-(4-benzo[b]thiophen-4-yl-

piperazin-1-yl)butoxy]-1H-quinolin-2-one (structure shown here):



7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1h-quinolin-2-one

The above compound is disclosed by **Yamashita** as a species of general formula (1) **(see**

**e.g., claim 7, first compound)**.  Incorporation of such compounds into tablet form is also taught

and suggested **(see e.g., col. 17, lines 1-40; notably lines 8 and 11-40)**.

Claim 1 further recites that the tablet will further comprise:

a) an excipient which is at least one of lactose, starch, or microcrystalline cellulose;

b) a binder which is hydroxypropyl cellulose;

c) a disintegrant which is at least one of the following selected from the group consisting

of low-substituted HPC, croscarmellose sodium, and sodium carboxymethyl starch; and

d) a lubricant which is magnesium stearate.

The tablet further comprises a coating layer comprising e) a colorant wherein the colorant

comprises an iron oxide or titanium oxide and wherein the coating layer essentially does not

contain polyethylene glycol.

Application/Control Number: 15/713,427                                                                    Page 5
Art Unit: 1615

The inclusion of these generic categories of compounds within the tablet form are also

taught and suggested Yamashita **(see col. 17, lines 11-40 and col. 89, lines 35-45)**.

These same passages are relied upon to teach and suggest the compound limitations

recited in claim 3. Lactose and microcrystalline cellulose (aka Avicel) are taught as examples of

excipients. Cellulose derivatives such as methylcellulose and carboxymethylcellulose are

disclosed as examples of binders. Starch and dried starch are taught as examples of

disintegrating agents. Stearates such as magnesium stearate are taught as examples of lubricants.

Regarding claim 4, the reference expressly teaches that the tablets formed may also be

provided with a conventional coating as required (e.g., sugar-coating, enteric, film, etc.) **(see e.g.,**

**col. 17, lines 11-40)**. The specific example discussed above, discloses a coating formulation for

the tablet as well **(col. 89, lines 35-45)**.

Regarding the limitations of claim 6, the Examiner accorded the claim its broadest

reasonable interpretation, considers the composition recited therein to be read upon by either of

the compositions recited in claims 1 or 2. That is, claim 6 is considered to be drawn to the

composition recited rather than the method by which it is produced, especially as the

compositional and structural (i.e., tablet) limitations are met. See **MPEP §2113**.

The limitations of claim 7 are considered to be taught and suggested by the reference

notably as the use of povidone (aka polyvinylpyrrolidone) is considered optional **(see e.g., col.**

**17, lines 11-40)**. Here, PVP is disclosed as being an example of a binder compound which can

be used in the practiced compositions. That is, since it can be used and other options for the

binder are taught and suggested, the use of PVP within the composition is considered to be

optional. The reference is completely silent regarding crospovidone (or polyvinyl

polypyrrolidone).

Application/Control Number: 15/713,427                                        Page 6
Art Unit: 1615

Regarding the amended limitations of claims 1 and 8, as discussed above, the tablet compositions are taught as further comprising a coating layer **(e.g., col. 17, lines 29-33)**. Yamashita teaches that the pharmaceutical compositions prepared may further comprise such additional components as pigments or color **(see e.g., col. 17, lines 59-64)**. However, Yamashita discloses neither the limitations that the pigment comprises iron oxide nor that the colorant is present in the coating layer in an amount ranging from 0.1-50 weight percent of said coating.

With regard to the binder limitations recited in claim 1, another perceived deficiency in the teachings of Yamashita is that hydroxypropyl cellulose (HPC) is not expressly disclosed, despite other cellulose derivative compounds are taught and suggested as examples of binders. However, a person of ordinary skill consulting the ***Handbook of Pharmaceutical Excipients***, for example, would observe that compounds such as methylcellulose and HPC are both used as suspending agents/viscosity modifying agents **(see e.g., pp. 134 and 181 of *HoPE*; 1986)**. Based on these definitions in the prior art, said skilled artisan would thus be provided a reasonable expectation of arriving at the instantly claimed invention understanding that such compounds as methylcellulose could be substituted by HPC, absent a clear showing of evidence to the contrary.

Where Yamashita would additionally be considered deficient is in its teachings of the tablet core composition which functions as a carrier for the claimed piperazin compound as well as with regard to the iron oxide colorant.

**Guitard** is considered to remedy these deficiencies. The Examiner acknowledges that the piperazin compound disclosed by Guitard is not the same. However, the compound is disclosed as being formed into a tablet which is optionally coated **(see claim 20)** and which is free of povidone or PVP and polyethylene glycol. The Examiner thus advances that the key

BREX00005099

Application/Control Number: 15/713,427                                    Page 7
Art Unit: 1615

deficiency which is resolved by Guitard is with respect to the carrier composition and that a

person of skill in the art at the time of the instant invention would have had a reasonable

expectation of successfully achieving the claimed composition in view of the combined

teachings.  Regarding the practiced carrier, Guitard expressly teaches:

> **Claims 3, 4, and 15** of the reference disclose the filler (e.g., excipient), that it is
> present in an amount ranging from 15-65% by weight of the tablet composition or
> core tablet, and that such compounds which embody the filler include lactose and
> microcrystalline cellulose;

> **Claims 11, 12, and 19** of the reference disclose the binder and that it is present in an
> amount ranging from 0-5% by weight of the tablet composition or core tablet, and
> that such compounds which embody the binder include hydroxyl propyl cellulose
> (HPC);

> **Claims 5, 6, and 16** of the reference disclose the disintegrant and that it is present in
> an amount ranging from 5-15% by weight of the tablet composition or core tablet,
> and that such compounds which embody the disintegrant include crosslinked sodium
> carboxymethylcellulose (aka croscarmellose sodium); and

> **Claims 9, 10, and 18** of the reference disclose the lubricant and that it is present in an
> amount ranging from 0.5-2% by weight of the tablet composition or core tablet, and
> that magnesium stearate.

Thus, in resolving the carrier discrepancy of Yamashita, the Examiner notes that both

references disclose the formation of tablet compositions wherein the dosage forms contain nearly

all of the same carrier components and the same class of active compound will be released from

said carrier (i.e., piperazin-based compounds).  In response to Applicant's previous assertions

Application/Control Number: 15/713,427                                    Page 8
Art Unit: 1615

regarding the generic teachings of Yamashita, the Examiner has presented Guitard as a showing

in the art which gives directed guidance in producing the carrier as claimed.  That is, the

compounds are known and known to be used together.  Amounts for said compounds are also

known as evidenced above.  As such, release of the alleged advantageous release profile alluded

to in Applicant's response (i.e., not claimed) would also be reasonably expected.

Lastly, regarding the colorant deficiency, **Guitard** teaches and suggests at **¶[0085]** that

"[t]he composition of the tablet … may be coloured or marked so as to impart an individual

appearance and to make them instantly recognizable.  The use of dyes can serve to enhance the

appearance as well as to identify the forms.  Dyes suitable for use in pharmacy typically include

… iron oxides".

Guitard does not teach or suggest that the dye is used in any particular amount within the

practiced tablet formulation.  Despite this, the Examiner respectfully advances that to arrive at

such an amount as is instantly claimed would have been well within the purview of the skilled

artisan at the time of the instant invention.  Such a limitation, absent a clear showing of evidence

to the contrary is broadly and reasonably considered to be tantamount to an aesthetic design

change.  See **MPEP §2144.04(I)** wherein the courts "found that matters relating to

ornamentation only which have no mechanical function cannot be relied upon to patentably

distinguish the claimed invention from the prior art."

Thus, based on the combined guidance of the prior art, it is apparent that one of ordinary

skill in the art would have had a reasonable expectation of success in producing the claimed

composition.  Therefore, the invention as a whole would have been *prima facie* obvious to one of

ordinary skill in the art at the time the invention was made, as evidenced by the references, in

combination, absent a clear showing of evidence to the contrary.

BREX00005101

Application/Control Number: 15/713,427                                           Page 9
Art Unit: 1615

The limitations of claim 8 are directed to a method which comprises granulating a mixture of the following components: the active ingredient 7-[4-(4-benozo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one, in addition to: a) an excipient, b) a binder, c) a disintegrant, and d) a lubricant, and then forming the mixture into a tablet. The amended method recites preparing a liquid coating composition and coating the surface of the tablet composition wherein said coating composition is as recited in claim 1.

The teachings of **Yamashita** and **Guitard** are discussed above, which are, at the outset, considered to teach and suggest the claimed composition. It is disclosed further that dosage forms immediately encompassed by the scope of the invention include both granular forms and tablet forms **(see e.g., col. 17, lines 11-33; and col. 89, "Preparation Examples")**. Yamashita is, thus considered to be heavily geared toward tablet preparation; the Preparation Examples section even discloses mixing the requisite components together and obtaining a tablet. Yamashita is considered to be somewhat deficient in that it does not expressly disclose the step of granulating the components together prior to mixing them together to form a tablet. The Examiner advances that such a teaching is considered to be suggested at the very least particularly given that the reference teaches and suggests granules as a dosage form.

However, in anticipation of Applicant's traversal of this point, the Examiner alternatively acknowledges that Yamashita teaches and alludes to the fact that tableting procedures are known in the art **(see e.g., col. 17, lines 11-12)**. Such known, conventional tableting procedures are evidenced by such showings in the prior art as are provided by **Bell et al.** Therein, the reference discloses typical tablet carrier compositions such as those disclosed in ¶[0253] (shown below):

BREX00005102

Application/Control Number: 15/713,427                                    Page 10
Art Unit: 1615

| Ingredient | % w/w |
| --- | --- |
| Compound of formula (I) | 10.00* |
| Microcrystalline cellulose | 64.12 |
| Lactose | 21.38 |
| Croscarmellose sodium | 3.00 |
| Magnesium stearate | 1.50 |

*Quantity adjusted in accordance with drug activity.

The disclosure for each of the microcrystalline cellulose/lactose combination, croscarmellose sodium, and magnesium stearate components is considered to read on the recited percentage limitations of claim 2. Though this particular example does not include hydroxypropyl cellulose, ¶[0255] does teach and suggest the use of the compound as a granulation binder and that it is in alternative to PVP. That is, a tablet carrier composition is taught and suggested which uses HPC as binder and that said composition need not contain povidone. To the granulation, ¶[0254] discloses that a typical tablet may be prepared using standard processes known to a formulation chemist (i.e., a person of ordinary skill in the pharmaceutical arts) which include different modes of granulation (e.g., wet granulation) and direct compression. The paragraph adds that such tablets may be coated as well.

Thus, based on the combined teachings of the references, it is apparent that one of ordinary skill in the art would have had a reasonable expectation of success in not only achieving the claimed composition, but also in deriving the instantly claimed method of preparing said composition. The Examiner has re-presented the teachings of Yamashita and Guitard, previously relied upon in the parent application demonstrating that such compositions are known in the art. The Bell reference is newly cited to demonstrate that methods for producing coated tablets such as that which is instantly claimed are, in fact, known and well-established in the prior art. The Examiner concedes that Bell does not employ the instantly claimed active ingredient. However, it is argued that Yamashita also teaches that many different active ingredients are envisioned as

BREX00005103

Application/Control Number: 15/713,427                                    Page 11
Art Unit: 1615

being used with the disclose tablet carrier. Such a position is considered to be supported by

Bell's teaching of a "typical" tablet. See ¶¶[0253]-[0255].

Therefore, the invention as a whole would have been *prima facie* obvious to one of

ordinary skill in the art at the time the invention was made, absent a clear showing of evidence to

the contrary.

### RESPONSE TO ARGUMENTS

Applicant's arguments with regard to the rejection of claims 1-3 and 6-8 under 35 USC

103(a) as being unpatentable over the combined teachings of Yamashita et al., Guitard et al., and

Bell et al. have been fully considered but they are not persuasive.

As an initial point, the Examiner acknowledges that the grounds of rejection do

mistakenly cite the reference **Sako et al. (USPN 6,562,375)**. However, the teachings of the

correct citation, **Guitard (US Pre-grant Publication N° 2008/0187582)**, are positively

discussed in the body of the rejection and a response to said teachings has been placed on the

record. It is noted further, that at no time prior to the filing of the response, was the Examiner

approached regarding the discrepancy or clarification solicited.

Regarding the Examiner's reliance upon the Handbook of Pharmaceutical Excipients, it is

acceptable for the Examiner to "fill in the gaps" using knowledge or evidence which is available

in the prior art, particularly where said showing provides added definition. Such is the case

regarding the Handbook.

Applicant initially traverses the rejection on the grounds that the Examiner provides no

reason or motivation for relying upon the state-of-the-art teachings provided by the **Handbook**

**of Pharmaceutical Excipients** pertaining to the known functionality of hydroxypropyl cellulose

(HPC).

Application/Control Number: 15/713,427                                        Page 12
Art Unit: 1615

The Examiner, in response, respectfully disagrees with this position and maintains the rejection for the reasons already of record.  Therein, the Examiner agrees with and reiterates the point that Yamashita, while teaching the use of other cellulose compounds (e.g., HPMC) fails to expressly teach the use of HPC.  However, the aforementioned guidance provided by the state-of-the-art teaching discussed in the Handbook, minimally outlines the Examiner's reasoning for substituting in HPC.  Given the known and common functionality shared by the cellulose compounds, it is respectfully maintained that the skilled artisan would have had a reasonable expectation of arriving at the instantly claimed composition.

Applicant next traverses the rejection on the grounds that the Example upon which the Examiner relies employs a specific coating composition which includes polyethylene glycol, a compound now excluded in the amended composition.  Applicant additionally acknowledges the Examiner's reliance on the teachings of Guitard for coating tablets whose binder excludes PVP or povidone and which include dyes defined as including iron oxide and/or titanium dioxide.  Applicant acknowledges that while Guitard does teach and suggest using one or more dyes, it is alleged that the claimed tablet imparts photostability to the coated tablet as evidenced by the instant specification and which is not indicated by the combined teachings.

The Examiner, in response, notes that the reference, teaches additional options to using polyethylene glycol **(see e.g., col. 17, lines 27-29)**, thereby teaching and suggesting to the skilled artisan that polyethylene glycol is, in fact, optional, or not required.  **MPEP §2123** states that "[d]isclosed examples and preferred embodiments do not constitute a teaching away from a broader disclosure or nonpreferred embodiments."  Thus, as the reference discloses lubricant compounds which are noted alternatives to PEG, the Examiner respectfully maintains that the broader brushstrokes of the reference clearly teach that PEG is not required.

Application/Control Number: 15/713,427                                          Page 13
Art Unit: 1615

Applicant's traversal of Guitard's teaching of iron oxide and titanium dioxide in combination as dyes to impart an individual appearance have been considered. Also fully considered are the remarks directed to the reference's perceived failure to disclose the ability for the compounds to impart photostability.

The Examiner, in response, notes Applicant's concession that Guitard teaches and suggests the combination of dyes. However, in noting the compounds are taught, it should also be understood that properties of the compounds and the compounds are not mutually exclusive. See **MPEP §2112.01(II)**. As such, a teaching and suggestion of the combination would be reasonably expected to carry with it the same properties. Furthermore, the Examiner notes that the compositions produced by Guitard which employ these compounds, are shown to have a high level of stability. See e.g., ¶¶**[0004]**, **[0078]**, and **[0081]**.

Thus, the Examiner respectfully maintains that this line of traversal is unpersuasive.

Applicant lastly traverses the rejection on the grounds noting that while Bell is relied upon for its teaching of producing the claimed tablet, there is no teaching in any of the references (including Bell) of enhancing the photostability of the recited tablets by employing a coating layer containing both iron and titanium oxides and wherein the coatings exclude PEG.

The Examiner respectfully maintains that the reasons upon which the rejection is traversed are discussed above as having been taught and suggested by Yamashita and Guitard. The teachings of Bell are relied upon by the Examiner for teaching and demonstrating to the skilled artisan that the process by which the tablets are produced is well-known in the art.

For these reasons, Applicant's arguments are found unpersuasive. Said rejection is therefore **maintained**.

BREX00005106

Application/Control Number: 15/713,427                                    Page 14
Art Unit: 1615

All claims have been rejected; no claims are allowed.


### CONCLUSION

Applicant's amendments necessitated the new ground(s) of rejection presented in this

Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a).

Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR

1.136(a) will be calculated from the mailing date of the advisory action. In no event, however,

will the statutory period for reply expire later than SIX MONTHS from the mailing date of this

final action.


### CORRESPONDENCE

Any inquiry concerning this communication or earlier communications from the

Examiner should be directed to Jeffrey T. Palenik whose telephone number is (571) 270-1966.

The Examiner can normally be reached on **9:30 am - 7:00 pm; M-F (EST)**.

If attempts to reach the Examiner by telephone are unsuccessful, the Examiner's

supervisor, Robert A. Wax can be reached on (571) 272-0623. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application/Control Number: 15/713,427                                        Page 15
Art Unit: 1615

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you

would like assistance from a USPTO Customer Service Representative or access to the

automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jeffrey T. Palenik/
Primary Examiner, Art Unit 1615

# J. E. 6

PTO/SB/30 (11-17)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Request for Continued Examination (RCE) Transmittal | Application Number | 15/713,427 |
|---|---|---|
| | Filing Date | September 22, 2017 |
| | First Named Inventor | Yoshiharu INOUE |
| Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | Art Unit | 1615 |
| | Examiner Name | Jeffrey T. PALENIK |
| | Attorney Docket Number | 04676.0317-03 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. [Submission required under 37 CFR 1.114] Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      ii. ☐ Other _____

   b. ☑ Enclosed

      I. ☑ Amendment/Reply          iii. ☑ Information Disclosure Statement (IDS)

      ii. ☐ Affidavit(s)/ Declaration(s)   iv. ☑ Other Extension of Time

2. [Miscellaneous]

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. [Fees] The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☑ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. 06-0916 .

      i. ☑ RCE fee required under 37 CFR 1.17(e)

      ii. ☑ Extension of time fee (37 CFR 1.136 and 1.17)

      iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)   d. ☑ Payment by EFS-Web

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED | | |
|---|---|---|
| Signature | /Adriana L. Burgy/ | Date | January 16, 2019 |
| Name (Print/Type) | Adriana L. Burgy | Registration No. | 48,564 |

| CERTIFICATE OF MAILING OR TRANSMISSION | |
|---|---|
| I hereby certify that this correspondence is being EFS-Web transmitted to the United States Patent and Trademark Office (USPTO), deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the USPTO on the date shown below. | |
| Signature | |
| Name (Print/Type) | Date |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SE ND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

BREX00005114

PATENT
Attorney Docket No. 04676.0317-03

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| **Yoshiharu INOUE** | ) Group Art Unit: 1615 |
| | ) |
| Application No.: 15/713,427 | ) Examiner: Jeffrey T. PALENIK |
| | ) |
| Filed: September 22, 2017 | ) Confirmation No.: 5849 |
| | ) |
| For:  TABLET COMPRISING 7-[4-(4- | ) **VIA EFS-WEB** |
| BENZO[b]THIOPEN-4-YL- | ) |
| PIPERAZIN-1 -YL)BUTOXY]-1H- | ) |
| QUINOLIN-2-ONE OR A SALT | ) |
| THEREOF | ) |

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

### AMENDMENT WITH REQUEST FOR CONTINUED EXAMINATION

This Amendment accompanies a Request for Continued Examination, fulfills the requirement for a submission under 37 C.F.R. § 1.114, and responds to the final Office Action dated July 16, 2018, the period for response having been extended to January 16, 2019, by a petition for extension of time and fee filed concurrently herewith. Applicant proposes that this application be amended as follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## AMENDMENTS TO THE CLAIMS:

This listing of claims will replace all prior versions and listings of claims in the application:

1.      (Currently Amended)  A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c) and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein the coating layer contains hydroxypropyl methyl cellulose, talc, and a colorant (e),

the colorant (e) contains an iron oxide and titanium oxide, and

the coating layer substantially does not contain polyethylene glycol.

2.      (Previously Amended)  The tablet according to claim 1, wherein the tablet tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);

BREX00005116

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet; and

0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

3.    (Original)  The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

Claims 4 and 5.      (Canceled).

6.    (Original)  The tablet according to claim 1 or 2, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

7.    (Original)  The tablet according to claim 1 or 2, wherein the tablet does not contain povidone or crospovidone.

8.    (Currently Amended)  A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

-3-

(2) forming the obtained mixture into a tablet; and

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet using the coating mixture,

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate;

the colorant (e) contains an iron oxide and titanium oxide;

the coating agent contains hydroxypropyl methyl cellulose and talc; and

the coating mixture substantially does not contain polyethylene glycol.

9.      (Canceled).

10.     (New)  The tablet according to claim 1, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

11.     (New)  The tablet according to claim 2, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

-4-

BREX00005118

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

12.    (New)  The method for producing the tablet according to claim 8, wherein

the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the

disintegrant (c) is low-substituted hydroxypropyl cellulose.

BREX00005119

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## REMARKS

### I.    Claim Status

Upon entry of this Amendment, claims 1-3, 6-8, 10-12 are pending.   Applicant amends claims 1 and 8, support for the amendments can be found at, *e.g.*, at paragraphs [0076] and [0127] of the published application.[1] Applicant adds new claims 10-12, support for the new claims can be found at paragraph [0198] and in Table 6 of Example 3-1. Additionally, the originally-filed specification, claims, and abstract fully support the amendments to the claims. No new matter has been added. Applicant respectfully requests their entry.

### II.    Rejection under Pre-AIA 35 U.S.C. § 103(a)

The Office maintains the rejection of claims 1-3 and 6-8 under 35 U.S.C. § 103(a), as unpatentable over Yamashita (U.S. Patent No. 7,888,362 B1, also published as J.P. 2006/316052) in view of Guitard (U.S. Pre-Grant Publication No. 2008/0187582 A1) and Bell (U.S. Pre-Grant Publication No. 2005/0043325 A1). Office Action at 3-11.  Applicant continues to respectfully disagree and traverse this rejection for the reasons of record and the additional reasons below.

According to the Office, Yamashita is relied upon to teach "a conventional coating" and "discloses a coating formulation for a tablet as well (**col. 89, lines 34-45**)." Office Action at 5 (emphasis original).  In response to Applicant's arguments challenging the use of these Yamashita teachings, the Office clarifies their use of Yamashita by explaining that Yamashita "teaches additional options to using polyethylene glycol (**see**

---

[1]    Unless otherwise specified, all citations to the instant specification refer to the paragraph designations used in the published application, i.e., U.S. Patent Application Publication No. 2018/0008600.

-6-

BREX00005120

**e.g., col. 17, lines 27-29**), thereby teaching and suggesting to the skilled artisan that polyethylene glycol is, in fact, not required." *Id.* at 12 (emphasis original). The Office concludes that "as the reference discloses lubricant compounds which are noted alternatives to PEG, the Examiner respectfully maintains that *the broader brushstrokes of the reference clearly teach that PEG is not required.*" *Id.* (emphasis added). Here, Yamashita's teachings are disregarded; Yamashita's teachings do not support the assertions made by the Office.

As stated in the M.P.E.P., "[a]ll words in a claim must be considered in judging the patentability of that claim against the prior art." M.P.E.P. § 2143.03 (citing *In re Wilson*, 424 F.2d 1382, 1385, 165 U.S.P.Q. 494, 496 (C.C.P.A. 1970)). When considering whether a claim is obvious, an examiner must make "a searching comparison of the claimed invention – *including all its limitations* – with the teaching of the prior art." *In re Ochiai*, 71 F.3d 1565, 1572 (Fed. Cir. 1995) (emphasis added). Thus, as explained above, "obviousness requires a suggestion of all limitations in a claim." *CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (*citing In re Royka*, 490 F.2d 981, 985 (C.C.P.A. 1974)). But here, Yamashita fails to teach and/or suggest "the coating layer contains hydroxypropyl methyl cellulose, talc, and a colorant (e)" and that "the coating layer substantially does not contain polyethylene glycol."

In Yamashita, the Office cites to the following passage to supply the support for "a conventional coating":

> For shaping in tablet form, various materials conventionally
> well known as carrier in the art can be widely used. As
> examples, ***excipient*** such as lactose, saccharose, sodium

-7-

chloride, glucose, urea, starch, calcium carbonate, kaolin, crystalline cellulose, silicate; **binder** such as water, ethanol, propanol, simple syrup, glucose solution, starch liquid, gelatine solution, carboxymethylcellulose, shellac, methylcellulose, potassium phosphate, polyvinylpyrrolidone; **disintegrating agent** such as dried starch, sodium alginate, agar powder, laminaran powder, sodium hydrogen carbonate, calcium carbonate, polyoxyethylene sorbitan fatty acid ester, sodium lauryl sulfate, stearic acid monoglyceride, starch, lactose; **disintegration preventing agent** such as saccharose, stearin, cacao butter, hydrogenated oil; sorbefacient such as quaternary ammonium base, sodium lauryl sulfate; **moisturizing agent** such as glycerine, starch; absorbing agent such as starch, lactose, kaolin, bentonite, colloidal silica; **lubricant** such as purified talc, stearate, borate powder, polyethylene glycol can be used, for example. Furthermore, **the tablet may be a tablet provided with conventional coating as required, for example, sugar-coated tablet, gelatine encapsulated tablet, enteric coating tablet, film coated tablet or double tablet, multilayer tablet**.

For **shaping in pill form**, various materials conventionally well known as carrier in the art can be widely used. As examples, **excipient** such as glucose, lactose, starch, cacao butter, hydrogenated vegetable oil, kaolin, talc; **binder** such as powdered gum arabic, powdered tragacanth, gelatine, ethanol; **disintegrating agent** such as laminaran, agar can be used, for example.

For **shaping in suppository form**, various materials conventionally well known as carrier can be widely used. Examples thereof include **polyethylene glycol**, cacao butter, higher alcohol, esters of higher alcohol, gelatine, semisynthesized glyceride, for example.

Yamashita at Col. 17, ll. 11-45 (emphases added).  Here, Yamashita outlines "various materials conventionally well known as carrier[s] in the art can be widely used." *Id*. This disclosure identifies that polyethylene glycol can be used as a lubricant and lists other possible "lubricants." *Id*. Yamashita's listing of possible types of carriers and specific carrier examples, however, does not amount to the assertions made by the

-8-

Office. That is, Yamashita does not teach and/or suggest that because polyethylene glycol can be used as a **lubricant** and there are other listed **lubricants** that polyethylene glycol used as a **coating** could be substituted for any of the listed other **lubricants** or that polyethylene glycol is "optional" when used as a **coating**. There is no guidance provided by Yamashita to suggest such an interpretation nor has the Office cited to any type of scientific principle or anything else that would similarly suggest such a substitution or rationale. Instead, the Office merely makes the bald assertion. Office Action at 12.

In fact, examining the **coating** disclosure of Yamashita, it merely provides that "the tablet may be a tablet provided with ***conventional coating***." Yamashita at Col. 11, ll. 29-33 (emphasis added). Yamashita exemplifies what would be "conventional coatings" that includes "sugar-coated tablet, gelatine encapsulated tablet, enteric coating tablet, film coated tablet or double tablet, multilayer tablet." *Id.* None of those examples include any of the listed possible "lubricants" in Yamashita's disclosure nor any teachings regarding a particular coating composition, as recited by the pending claims.

Within Yamashita, it references "polyethylene glycol" in two other instances besides those described above. As reproduced above, Yamashita explains that polyethylene glycol can be used as a carrier in suppository form. Yamashita at Col. 17, ll. 41-45. Like the disclosure of lubricants, this in the context of **suppository form** fails to provide any guidance for using polyethylene glycol in a **coating**.

The last reference to "polyethylene glycol" is in the example highlighted by the Office from Yamashita. Office Action at 5 (pointing to Yamashita's disclosure at Col. 89,

BREX00005123

lines 35-45). Here, Yamashita's example, referenced by the Office, indicates that a coated tablet was prepared "with a film" including "3 g of polyethylene glycol 6000." Yamashita at Col. 89, II. 35-45. As provided by the claims and the specification, "polyethylene glycol (macrogol) is substantially not contained [in the coating layer]." Applicant's Specification at [0076]. Yamashita's coating also includes: a film coating agent of TC-5, hydroxymethyl cellulose, castor oil, and ethanol. This is Yamashita's only disclosure of a coating composition. Yamashita's **coating** teaching fails to teach and/or suggest the specific claimed coating of: hydroxypropyl methyl cellulose, talc, and a colorant (e). Moreover, Yamashita's general disclosure of "conventional coatings" fails to amount to a teaching of the specific coating recited in the claims. In view of Yamashita's teachings, it remains unclear how a person of ordinary skill in the art would arrive at the claimed subject matter when Yamashita only discloses one coating composition outside the claimed subject matter and that teaches a coating layer with polyethylene glycol, where the claims recite a coating substantially without polyethylene glycol.

Instead, the Office's alleged motivation to find that polyethylene glycol is optional, Office Action at 5 and 12, amounts to improper hindsight in view of Applicant's disclosure. *See, e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371 (Fed. Cir. 2004) ("the suggestion to combine references must not be derived by hindsight from knowledge of the invention itself."); *see In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988) ("[t]here must be a reason or suggestion in the art for selecting the procedure used, other than the knowledge learned from the applicant's disclosure"). Absent some further guidance or rationale, *see* M.P.E.P. § 2141.01(III),

BREX00005124

Yamashita fails to guide a person of ordinary skill in the art towards the claimed subject matter. The obviousness rejection is improper and should be withdrawn.

Additionally, as provided by the M.P.E.P., "the rationale to support a conclusion that the claim would have been obvious is that all the claimed elements were known in the prior art and one skilled in the art could have combined the elements as claimed by known methods with no change in their respective functions, and the combination yielded nothing more than **predictable results** to one of ordinary skill in the art. M.P.E.P. § 2143 (I)(A) (citing *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 416, 82 U.S.P.Q.2d 1385, 1395; *Sakraida v. AG Pro, Inc.,* 425 U.S. 273, 282, 189 U.S.P.Q. 449, 453 (1976); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 62-63, 163 U.S.P.Q. 673, 675 (1969); *Great Atl. & P. Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 87 U.S.P.Q. 303, 306 (1950)). "[I]t can be **important** to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR,* 550 U.S. at 418, 82 U.S.P.Q.2d at 1396 (emphasis added). "If *any of these findings cannot be made*, then this rationale cannot be used to support a conclusion that the claim would have been obvious to one of ordinary skill in the art." M.P.E.P. § 2143 (I)(A) (emphasis added). That is the case here; the Office fails to consider the unpredictability of the claimed composition.

For example, Applicant's Examples No. 3-5 and 3-7, particularly Table 7, of the present specification show that tablets coated in a coating liquid that "substantially does not contain polyethylene glycol" (referred to as Macrogol 6000 in Table 7) unexpectedly have "no increase in impurity, even after light irradiation." Applicant's Specification at

-11-

[0201]. Comparatively, the coatings used in Examples No. 3-4 and 3-6 contain polyethylene glycol and have increased impurity, which leads to reduced photostability and storage stability. *Id.* at [0067]. In contrast, neither Yamashita nor Guitard teaches that a coating layer that "substantially does not contain polyethylene glycol" results in "no increase in impurity." This effect is not predictable from the cited prior art.

That is, Guitard teaches that high stability may be obtained, but does not attribute this high stability to "a coating layer [that] substantially does not contain polyethylene glycol." Guitard at [0004], [0078], and [0081]. Guitard further allows for "a coating comprising . . . polyoxyethlyene glycol, e.g., PEG 6000 or PEG 8000." *Id.* at [0077]. This is consistent with Yamashita; Yamashita uses "a film coating agent made up of," *inter alia*, "3 g of polyethylene glycol 6000." Yamashita at Col. 89, ll. 34-44. Further, "[a] prior art reference must be considered in its entirety, i.e., as a whole, including portions that would lead away from the claimed invention." M.P.E.P. § 2142.02(VI) (*citing* W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 220 U.S.P.Q. 303 (Fed. Cir. 1983), *cert denied*, 469 U.S. 851 (1984)). Here, both Yamashita and Guitard teach coatings **with** polyethylene glycol and fail to recognize the unpredictability of a coating layer that "substantially does not contain polyethylene glycol" to result in "no increase in impurity."

For the foregoing reasons, the Office fails to establish a prima facie case of obviousness over the cited art. Applicant respectfully requests the withdrawal of the rejection.

BREX00005126

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## III. Conclusion

In view of the foregoing amendments and remarks, Applicant respectfully requests reconsideration of this application and the timely allowance of the pending claims.

Please grant any extensions of time required to enter this response and charge any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

/Adriana L. Burgy/

Dated: January 16, 2019          By:_____

Adriana L. Burgy
Reg. No. 48,564
(202) 408-4000

-13-

# J. E. 7

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

22852        7590        02/25/2019
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413

| EXAMINER |
|---|
| PALENIK, JEFFREY T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1615 | |

DATE MAILED: 02/25/2019

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

TITLE OF INVENTION: Tablet Comprising 7-[4-(4-benzo[b]thiopen-4-yl-piperazin-1-yl)butoxy]-1H-Quinolin-2-One or a Salt Thereof

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 05/28/2019 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

BREX00005265

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

22852    7590    02/25/2019
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

TITLE OF INVENTION: Tablet Comprising 7-[4-(4-benzo[b]thiopen-4-yl-piperazin-1 -yl)butoxy]-1H-Quinolin-2-One or a Salt Thereof

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 05/28/2019 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PALENIK, JEFFREY T | 1615 | 424-474000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required) ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020

Page 2 of 3
OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

BREX00005266

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

22852        7590        02/25/2019
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413

| EXAMINER |
|---|
| PALENIK, JEFFREY T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1615 | |

DATE MAILED: 02/25/2019

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

BREX00005267

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

BREX00005268

| *Notice of Allowability* | Application No. 15/713,427 | | Applicant(s) INOUE, Yoshiharu | |
|---|---|---|---|---|
| | Examiner Jeffrey T Palenik | | Art Unit 1615 | AIA Status No |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to Applicant's RCE,.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1,3,6-8,10 and 12 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☑ All        b) ☐ Some    *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☑ Certified copies of the priority documents have been received in Application No. 14/351,325 .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file areply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☑ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 1/16/2019; 2/8/2019.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. with Allowance.

5. ☑ Examiner's Amendment/Comment

6. ☑ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/Jeffrey T. Palenik/
Primary Examiner, Art Unit 1615

BREX00005269

Application/Control Number: 15/713,427                                               Page 2
Art Unit: 1615

## DETAILED ACTION

### STATUS OF THE APPLICATION

Receipt is acknowledged of Applicant's Request for Continued Examination (RCE),

Remarks, and Amendments, filed on 16 January 2019 in the matter of Application N°

15/713,427. Said documents are entered on the record. The Examiner further acknowledges the

following:

**The present application is being examined under the pre-AIA first to invent**

**provisions.**

No claims have been canceled. Claims 10-12 have been added and are supported by the

original disclosure (see e.g., claim 1).

Claims 1 and 8 have been amended narrowing the coating layer to containing

(comprising) hydroxypropyl methylcellulose, talc, and a colorant (e). The amendments are

supported by the original disclosure.

No new matter has been added.

Thus, claims 1, 3, 6-8, 10, and 12 are pending allowance for the reasons discussed herein.

### INFORMATION DISCLOSURE STATEMENT

Two new Information Disclosure Statements, filed 16 January 2019 and 8 February 2019,

are acknowledged and have been considered.

### EXAMINER'S AMENDMENT

An Examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to Applicant, an amendment may be filed as provided by **37 CFR**

BREX00005270

Application/Control Number: 15/713,427                                              Page 3
Art Unit: 1615

§1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the

payment of the issue fee.

Authorization for this Examiner's amendment was given in a telephone interview with

Ms. Adriana L. Burgy on 15 February 2019.

1. **Please AMEND claim** 1 **to reads as follows:**

A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-

quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a

disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-

quinolin-2-one or a salt thereof,

10 to 98.5% by weight of excipient (a), which is at least one member selected from

the group consisting of lactose, corn starch, and microcrystalline cellulose;

0.1 to 20% by weight of binder (b), which is hydroxypropyl cellulose;

1 to 25% by weight of disintegrant (c), which is at least one member selected from

the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium,

and sodium carboxymethyl starch; and

0.1 to 10% by weight of lubricant (d), which is magnesium stearate;

wherein said coating comprises hydroxypropyl methylcellulose, talc, and a colorant

(e);

wherein colorant (e) is present in an amount ranging from 0.1 to 50% by weight of

the coating and comprises iron oxide and titanium oxide, and substantially contains no

polyethylene glycol.

Application/Control Number: 15/713,427                                                      Page 4
Art Unit: 1615

2. **Please CANCEL claims 2 and 11.**

3. **Please AMEND the preambles of each of claims 3, 6, and 7 to read as follows:**

    "The tablet according to claim 1,"

4. **Please AMEND the preamble of claim 8 to read as follows:**

    "A method for producing the tablet of claim 1, the method comprising the steps of:"


### REASONS FOR ALLOWANCE

The following is the Examiner's statement of reasons for allowance:

With Applicant's filed amendment in mind, reconsideration of the obviousness rejection of record revealed that Applicant's amendment to the coating layer was sufficient in overcoming the previously maintained rejection. Said rejection is **withdrawn**.

In view of the withdrawn rejection, a supplemental search of the prior art was conducted. This search produced an additional reference: **Dalen et al. (US Pre-Grant Publication Nº 2003/0153617)** which the Examiner considered to teach the amended coating composition comprising HPMC, talc, 0.1-50% weight of the coating as iron oxides, and no PEG (i.e., 27.8% by weight of the coating). However, the drug disclosed in the core tablet is simvastatin and said core contains neither of components (b) nor (c).

An additional reference revealed by the search is **Okamoto et al. (US Pre-Grant Publication Nº 2010/0130569 A1)** which teaches a core tablet formulation in Example 3 which is considered to read on the recited core tablet with two exceptions. First, the drug of the practiced invention is pramipexole which while also being a form of $D_2$ receptor antagonist, is disclosed as being used to treat ocular conditions, whereas the instantly claimed active (aka brexpiprazole) is known in the art for treating such conditions as schizophrenia and depression.

BREX00005272

Application/Control Number: 15/713,427                                      Page 5
Art Unit: 1615

Secondly, the reference teaches and suggests several generic types of coatings and that they may

comprise HPMC.  However, there is no teaching of the amended coating composition.

The Examiner can derive no motivation to combine the two references in order to arrive

at the composition as amended above.

Thus, the search has elicited <u>no</u> results which either anticipate or render obvious (e.g., by

way of teaching *or* suggesting), the instantly amended invention.  **This is to say that the instant**

**pending claims are immediately free and clear of the prior art.**


Any comments considered necessary by Applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

Any inquiry concerning this communication or earlier communications from the

Examiner should be directed to Jeffrey T. Palenik whose telephone number is (571)270-1966.

The Examiner can normally be reached between **9:30 am -7:00 pm; M-F (EST)**.

If attempts to reach the Examiner by telephone are unsuccessful, the Examiner's

supervisor, Robert A. Wax can be reached on 571-272-0623.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

BREX00005273

Application/Control Number: 15/713,427                                                    Page 6
Art Unit: 1615

      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov.  Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you

would like assistance from a USPTO Customer Service Representative or access to the

automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Jeffrey T. Palenik/
Primary Examiner, Art Unit 1615

BREX00005274

# J. E. 8

PATENT
Attorney Docket No. 04676.0317-03

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| | ) |
| **Yoshiharu INOUE** | ) Group Art Unit: 1615 |
| | ) |
| Application No.: 15/713,427 | ) Examiner: Jeffrey T. PALENIK |
| | ) |
| Filed: September 22, 2017 | ) Notice of Allowance Dated: February 25, 2019 |
| | ) |
| For:   TABLET COMPRISING 7-[4- | ) Confirmation No.: 5849 |
|         (4-BENZO[b]THIOPEN-4-YL- | ) |
|         PIPERAZIN-1 -YL)BUTOXY]- | ) **VIA EFS-WEB** |
|         1H-QUINOLIN-2-ONE OR A | ) |
|         SALT THEREOF | ) |

**Mail Stop Issue Fee**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

### AMENDMENT AFTER ALLOWANCE

Pursuant to 37 C.F.R. § 1.312 and subject to the recommendation of the Examiner

and approval of the Director, and without withdrawing the case from issue, kindly amend

the subject application as follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## AMENDMENTS TO THE CLAIMS:

This listing of claims will replace all prior versions and listings of claims in the application:

1.      (Currently Amended)  A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,

10 to 98.5% by weight of the excipient (a), which is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

0.1 to 20% by weight of the binder (b), which is hydroxypropyl cellulose;

1 to 25% by weight of the disintegrant (c), which is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

0.1 to 10% by weight of the lubricant (d), which is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein said coating comprises hydroxypropyl methyl cellulose, talc, and a colorant (e)[[,]]. wherein the colorant (e) is present in an amount ranging from 0.1 to 50% by weight of the coating and comprises iron oxide and titanium oxide, and substantially contains no polyethylene glycol the coating substantially does not contain polyethylene glycol.

-2-

BREX00005293

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

2.      (Canceled)

3.      (Previously Amended)  The tablet according to claim 1, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

    1 to 2000 parts by weight of the excipient (a);

    0.01 to 100 parts by weight of the binder (b);

    0.1 to 500 parts by weight of the disintegrant (c); and

    0.01 to 50 parts by weight of the lubricant (d).

Claims 4 and 5.      (Canceled).

6.      (Previously Amended)  The tablet according to claim 1, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

7.      (Previously Amended)  The tablet according to claim 1, wherein the tablet does not contain povidone or crospovidone.

8.      (Currently Amended)  A method for producing a the tablet of claim 1, the method comprising the steps of:

    (1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

    (2) forming the obtained mixture into a tablet form; and

    (3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet form using the coating mixture to form the tablet,

    wherein the tablet comprises:

-3-

BREX00005294

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,

10 to 98.5% by weight of the excipient (a), which is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

0.1 to 20% by weight of the binder (b), which is hydroxypropyl cellulose;

1 to 25% by weight of the disintegrant (c), which is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

0.1 to 10% by weight of the lubricant (d), which is magnesium stearate;

the tablet further comprising a coating layer on the surface thereof,

wherein said coating agent comprises hydroxypropyl methyl cellulose and talc, the colorant (e) is present in an amount ranging from 0.1 to 50% by weight of the coating mixture and comprises iron oxide and titanium oxide, and

~~wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;~~

~~the binder (b) is hydroxypropyl cellulose;~~

~~the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and~~

BREX00005295

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

~~the lubricant (d) is magnesium stearate;~~

~~the colorant (e) contains an iron oxide and titanium oxide;~~

~~the coating agent contains hydroxypropyl methyl cellulose and talc; and~~

the coating mixture substantially does not contain polyethylene glycol.

9.   (Canceled).

10.   (Previously Presented)  The tablet according to claim 1, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

11.   (Canceled)

12.   (Previously Presented)  The method for producing the tablet according to claim 8, wherein the excipient (a) is lactose, corn starch, and microcrystalline cellulose; and the disintegrant (c) is low-substituted hydroxypropyl cellulose.

BREX00005296

Application No.: 15/713,427
Attorney Docket No.: 04676.0317-03

## REMARKS

The above-identified application was allowed in the mailed February 25, 2019. The issue fee has not been paid.

Each of the requested amendments is fully supported by the specification and drawings, will not require an additional search, and does not raise new issues. Therefore, Applicant respectfully requests that this Amendment be entered, and the requested changes made.

Please grant any extensions of time required to enter this response and charge any additional required fees to Deposit Account No. 06-0916.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

*/Adriana L. Burgy/*

Dated: April 12, 2019          By:_____
Adriana L. Burgy
Reg. No. 48,564
(202) 408-4000

-6-

BREX00005297

# J. E. 9

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/713,427 | 09/22/2017 | Yoshiharu INOUE | 04676.0317-03000 | 5849 |

22852        7590        04/22/2019

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413

| EXAMINER |
|---|
| PALENIK, JEFFREY T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1615 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/22/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

regional-desk@finnegan.com

PTOL-90A (Rev. 04/07)

BREX00005305

| ***Response to Rule 312 Communication*** | Application No. | Applicant(s) |
| | 15/713,427 | INOUE, Yoshiharu |
| | Examiner | Art Unit | AIA Status |
| | Jeffrey T Palenik | 1615 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☑ The amendment filed on <u>12 April 2019</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☑   entered.

   b) ☐   entered as directed to matters of form not affecting the scope of the invention.

   c) ☐   disapproved because the amendment was filed after the payment of the issue fee.
   Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1) and the required fee to withdraw the application from issue.

   d) ☐   disapproved. See explanation below.

   e) ☐   entered in part. See explanation below.

   _____

/Jeffrey T. Palenik/
Primary Examiner, Art Unit 1615

BREX00005306

```
OK TO ENTER: /J.T.P./
04/17/2019
```

PATENT
Attorney Docket No. 04676.0317-03

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Application of: | ) | |
| | ) | |
| **Yoshiharu INOUE** | ) | Group Art Unit: 1615 |
| | ) | |
| Application No.: 15/713,427 | ) | Examiner: Jeffrey T. PALENIK |
| | ) | |
| Filed: September 22, 2017 | ) | Notice of Allowance Dated: February 25, 2019 |
| | ) | |
| For:    TABLET COMPRISING 7-[4- | ) | Confirmation No.:  5849 |
| (4-BENZO[b]THIOPEN-4-YL- | ) | |
| PIPERAZIN-1 -YL)BUTOXY]- | ) | **VIA EFS-WEB** |
| 1H-QUINOLIN-2-ONE OR A | ) | |
| SALT THEREOF | ) | |

**Mail Stop Issue Fee**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Commissioner:

## AMENDMENT AFTER ALLOWANCE

Pursuant to 37 C.F.R. § 1.312 and subject to the recommendation of the Examiner and approval of the Director, and without withdrawing the case from issue, kindly amend the subject application as follows:

**Amendments to the Claims** are reflected in the listing of claims in this paper.

**Remarks/Arguments** follow the amendment sections of this paper.

BREX00005307