**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

OTSUKA PHARMACEUTICAL CO., LTD.
AND H. LUNDBECK A/S,

          Plaintiffs,

   v.

ZENARA PHARMA PRIVATE LTD., ET AL.,

          Defendants.

C.A. No. 19-1938-LPS (Consolidated)



**PLAINTIFFS' LETTER REQUESTING THE COURT DENY CERTAIN
DEFENDANTS' REQUEST FOR LEAVE TO FILE A JOINT MOTION FOR
SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '419 PATENT**

Dear Judge Stark:

Defendants again ask the Court to short circuit a trial on a fully developed record, relying on the false premise that infringement can be decided as a "matter of law." Infringement, however, is a question of fact that necessitates a factual record developed during both fact and expert discovery. And this is equally true for the disclosure-dedication doctrine and prosecution history estoppel, each of which relies on factual findings. Defendants' request appears to be part of a pattern of conduct designed to prevent any actual development of the factual record in this case. Defendants first attempted to cut off any discovery with premature Rule 12(c) motions. When these were denied, D.I. 27, several Defendants then tried to obstruct discovery into the relevant scientific facts by providing unprepared corporate witnesses who have no knowledge about Defendants' generic products. Additionally, Defendants hoped to put off this factual inquiry until expert discovery by repeatedly objecting to Plaintiffs' deposition questions regarding these facts as calling for expert testimony. And now Defendants are trying again to stop any further inquiry into these fact issues by cutting off expert discovery with motions for summary judgment. Summary judgment is thus premature, and even on the current record these motions will fail because there are multiple issues of disputed fact. It would be overly burdensome and an unnecessary drain on the parties' and Court's resources to entertain summary judgment briefing now before the close of expert discovery.

## I.      Summary Judgement is Premature and Will Not Resolve This Litigation

Summary judgment will not end the litigation and will not remove the '419 patent from this case. There are currently 12 generic defendant groups[1] ("SJ Defendants") seeking leave to file this motion for summary judgment.[2] Plaintiffs have asserted four other patents against each of these Defendant groups, meaning that summary judgment on the '419 patent alone will not end the case for any SJ Defendant. Moreover, three defendant groups are not even seeking summary judgment of noninfringement and, accordingly, this case will involve expert discovery and trial on the '419 patent, regardless of the outcome of any of these summary judgment motions. The only other defendant that started in these cases, Unichem, has been dismissed because it converted its Paragraph IV certifications for the patents in suit, including the '419 patent, to Paragraph III certifications, representing that it no longer challenges the validity of the patents in suit and will not market a generic brexpiprazole product until their expiration. D.I. 362. To promote judicial economy and preserve the resources of this Court and the parties, Plaintiffs urge the Court to exercise its discretion in denying the SJ Defendants' request for leave to file a motion for summary judgment of noninfringement for the '419 patent. *See, e.g.*, *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944-JFB-SRF, D.I. 83 at 3-4 (D. Del. Aug. 3, 2018) (D.I. 17, Ex. 2) (rejecting defendant's contention that summary judgment motion practice would "streamline" the case in denying a motion for leave).

---

[1]  Alembic has also stated that it intends to join this motion once fact discovery of its witnesses has closed because Alembic failed to provide any witnesses until January 2022 despite numerous requests from Plaintiffs.

[2]  Apotex has filed a separate letter requesting leave to file a motion for summary judgment of noninfringement of the '419 patent.

## II.    The Issues Rest on Factual Findings and Require Expert Discovery

Infringement itself is a question of fact, and "an infringement adjudication cannot be completed merely by reviewing the ANDA, and without taking into account any other evidence—including, most notably expert testimony." *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944, 2018 WL 3343238, at *3 (D. Del. May 11, 2018) (quoting *Lupin Atlantis Holdings v. Ranbaxy Labs., Ltd.*, No. 10-3897, 2011 WL 1540199, at *3 (E.D. Pa. Apr. 21, 2011)). Defendants ask this Court to take at face value their own self-serving statements as to the function of each excipient in their 12 different ANDA products. We know, however, in view of the limited fact discovery that Defendants have engaged in, that just because an ANDA identifies an excipient as, for example, a filler, that does not mean that is its only function. An excipient identified as a filler may also serve other functions, including as a binder.

Here, where infringement under the doctrine of equivalents will require consideration of different excipients and different formulations, the Court would benefit from a fully developed record. And previous cases have highlighted the importance of expert discovery in these types of infringement analyses. *See, e.g., Lupin*, 2011 WL 1540199, at *3 (discussing *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423 (S.D.N.Y. 2002)) ("Had the court [in *Astra*] disposed of the case at the motion to dismiss stage, on the basis of the defendant's ANDA alone, obviously it would not have heard or considered expert testimony relating to the question of infringement in fact, and would have reached an improvident result.").

Defendants' disclosure-dedication and prosecution history estoppel arguments also depend on subsidiary factual issues. For example, for the Court to conclude that an alternative to what is claimed has been dedicated to the public, "the disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005) (quoting *PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)). This necessarily implicates how a person of ordinary skill in the art would read the '419 patent disclosure, evidence that is currently missing from the record. The Court would thus benefit from a more robust evidentiary record, including expert depositions and live expert testimony at trial. *See* D.I. 126 at 7-9; Oct. 2, 2020 Joint Status Hearing Tr. at 21-22.

Moreover, the allegedly disclaiming disclosure must be more than "any generic reference in a written specification" but rather must be a "clear, precise disclosure" of "explicit alternatives to the inventions claimed." *PSC Comput.*, 355 F.3d at 1358-60. Aside from simply stating that their formulations do not include at least one of the recited elements, the SJ Defendants have not demonstrated that the '419 patent's generic references to various excipients are of such specificity that a person of ordinary skill in the art would conclude that the particular type, combination and/or amount of excipient that the SJ Defendants use is a disclosed but not claimed alternative in the '419 patent. *Pfizer*, 429 F.3d at 1378 (quoting *PSC Comput.*, 355 F.3d at 1360) ("This 'disclosure-

{01752463;v1 }

dedication' rule does not mean that any generic reference in a written specification necessarily dedicates all members of that particular genus to the public.").

Plaintiffs dispute that the general references to binders, disintegrants and lubricants in lists of "examples," many of which are themselves categories of pharmaceutical excipients, is sufficiently specific to support the conclusion that the particular excipients used in the SJ Defendants' formulations of generic brexpiprazole products have been dedicated under the disclosure-dedication doctrine. Many excipient "examples" vary widely in physical properties and in the function of the excipient in the pharmaceutical formulation based on these properties and the amount and proportion of the excipient in the formulation. The SJ Defendants' arguments regarding disclosure-dedication raise factual issues, and expert discovery is required to determine what a person of ordinary skill in the art would understand the general references to disclose. *See, e.g.*, *Recro Gainesville LLC v. Actavis Labs. FL, Inc.*, No. 14-1118, 2017 WL 1064883, at *5 (D. Del. Feb. 24, 2017) (finding no disclosure-dedication of polymer coating in light of expert testimony that "there are many thousands of [the disclosed] polymers in existence"). Defendants themselves acknowledge that not all excipients are recited in the specification of the '419 patent. D.I. 401 at 4 (stating "*many* of the allegedly equivalent ingredients are disclosed" and "*many* ingredients that are allegedly equivalent were disclosed") (emphasis added). This alone should preclude application of the disclosure-dedication doctrine.

Further, the two cases on which the SJ Defendants' rely for their disclosure-dedication arguments are distinguishable. In *Eagle II*, the specification "expressly" and "repeatedly" identified ethanol as an alternative to the claimed pharmaceutically acceptable fluid. *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1174 (Fed. Cir. 2020) ("*Eagle II*"). Similarly, in *Bendamustine*, the specification identified several "*precise*" alternatives to the claimed solvent. *In re Bendamustine Consol. Cases*, No. 13-2046, 2015 WL 1951399, at *1 (D. Del. Apr. 29, 2015) (emphasis in original). The general classes of binders, disintegrants and lubricants that encompass multiple grades with variable properties are thus unlike the single, specific solvent alternatives in *Eagle II* and *Bendamustine*.

Prosecution history estoppel is similarly situated in fact. Amendment-based estoppel requires consideration of the totality of the prosecution with the assistance of expert testimony to determine to what, if any, disclaimer occurred.[3] *See Kyowa Hakko Bio Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *6-7 (D. Del. Feb. 12, 2018); *Amgen Inc. v. Alkem Labs. Ltd.*, Nos. 17-815, 17-817, 2017 WL 6493150, at *2 (D. Del. Dec. 19, 2017). Here, prosecution of the '419 patent spans two years and more than 400 pages, reflecting a detailed analysis by the Examiner before issuance. Further, if the Court were to consider the prosecution histories of the parent

---

[3] Defendants' reliance on amendments made in *parent* applications are irrelevant for the purposes of prosecution history estoppel of the '419 patent because the original claims in the parent application were different than those initially presented in the application that led directly to the '419 patent. The '419 patent claims included the recited binder, disintegrants and lubricant from the beginning. *See* Ex. 5 at 33. Defendants' reliance on *Trading Techs.*, does not suggest otherwise. The case is inapposite as it related to a continuation-in-part and prosecution history *disclaimer*, not estoppel. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1321-23 (Fed. Cir. 2013).

{01752463;v1 }

application, the analysis must consider four additional file histories. Such an analysis is ill-suited to summary judgment, especially when it is not aided by expert discovery, which has yet to occur.

Similarly, argument-based prosecution history estoppel "depends on what a competitor, reading the prosecution history, would reasonably conclude was given up by the applicant." *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1108 (Fed. Cir. 1996). Courts "do not presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006). Any surrender made during prosecution must be both "clear and unmistakable." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)). Given this, the Court must hear expert testimony about what a person of ordinary skill in the art would understand from the totality of the prosecution history when evaluating the SJ Defendants' estoppel arguments. Here again, the record is currently devoid such evidence. Given that this case is set for a bench trial, and the Court will be asked to decide both fact and legal issues, Plaintiffs believe the Court will benefit from a full evidentiary record to support these decisions. *See* D.I. 126 at 7-9; Oct. 2, 2020 Joint Status Hearing Tr. at 21-22.

*Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) is distinguishable. There, the applicant repeatedly stressed during prosecution the "*particular* combinations of salts" and the advantages of these particular combinations, referring to the particularly claimed salts three times in the span of two pages and submitting a Declaration in support of the benefits of these particularly claimed salts. *Id.* at 1157-58 (emphasis in original). The Court held this was a clear and unmistakable surrender of claim scope. *Id.* at 1160-61. The statements that Defendants point to do not similarly amount to the "clear and unmistakable" disclaimer in *Coherus*.

## III.     Issues of Material Fact Preclude Summary Judgment

The '419 patent claims are directed to tablets containing brexpiprazole and various excipients. The proposed motion involves the majority of the limitations in independent claim 1 and implicates 12 different defendant products. While each of the Defendants assert that at least one of the recited excipients is not included in its composition, those excipients vary from defendant to defendant. Moreover, Defendants' own documents, witnesses and public statements make clear that other components their products contain function in the same way as the recited elements.



 This and other testimony establish that there are disputes of material fact, which preclude summary judgment.

Other Defendants have attempted to avoid highlighting these material disputes of fact by providing corporate witnesses that either refused to provide testimony about the formulation aspects of each Defendant's generic brexpiprazole products or had no knowledge of the formulation development at all.  Many witnesses were not involved in the development work of Defendants' generic brexpiprazole products, made no effort to speak to anyone who was knowledgeable about this development and generally refused to provide any answer other than reading from the regulatory submissions.

It would be unfair and highly prejudicial to Plaintiffs to allow Defendants to stonewall Plaintiffs on discovery and nonetheless try to get a summary judgment of noninfringement based on their ANDA submissions and representations alone.

Moreover, when Plaintiffs sought relevant testimony about formulation aspects, many of the SJ Defendants' counsel objected to the line of questioning as calling for expert testimony. It is improper for the SJ Defendants to obstruct discovery of underlying formulation facts by arguing they are the subject of expert discovery, while simultaneously attempting to cut off any expert discovery into these issues.

## IV.   Conclusion

Viewing the evidence in the light most favorable for Plaintiffs, the SJ Defendants have not satisfied their burden of showing that there are no issues of material fact or that they are entitled to relief as a matter of law.  For these reasons, Plaintiffs request that the Court deny Defendants' request to file a motion for summary judgment of noninfringement of the '419 patent.

{01752463;v1 }

ASHBY & GEDDES

*Of Counsel:*                                      */s/ Andrew C. Mayo*

James B. Monroe                          Steven J. Balick (#2114)
Paul W. Browning                         Andrew C. Mayo (#5207)
Denise Main                              500 Delaware Avenue, 8th Floor
Erin M. Sommers                          P.O. Box 1150
Collette C. Corser                       Wilmington, DE 19899
Tyler B. Latcham                         (302) 654-1888
Kenneth S. Guerra                        sbalick@ashbygeddes.com
Kayvon M. Ghayoumi                       amayo@ashbygeddes.com
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP                 *Attorneys for Plaintiffs Otsuka Pharmaceutical*
901 New York Avenue, NW                  *Co., Ltd. and H. Lundbeck A/S*
Washington, DC 20001-4431
(202) 408-4000

Dated:  December 8, 2021

# EXHIBIT 1
# Filed Under Seal

**EXHIBIT 2**
**Filed Under Seal**

**EXHIBIT 3**
**Filed Under Seal**

**EXHIBIT 4**
**Filed Under Seal**

# EXHIBIT 5

~ 1 ~

DESCRIPTION

Title of Invention:
Tablet comprising 7-[4-{4-benzo[b]thiophen-4-yl-piperazin-1-
5   yl}butoxy]-1H-quinolin-2-one or a salt thereof

This application is a continuation of U.S. Application
No. 15/019,874, filed February 9, 2016, which is a continuation
of U.S. Application No. 14/351,325, 371(c) date of April 11,
10  2014, now abandoned, which is the National Stage Application of
PCT/JP2012/076415, filed October 12, 2012, and claims benefit to
JP 2011-227057 filed October 14, 2011, all of which are
incorporated herein by reference.

15  Technical Field
[0001]
The present invention relates to a tablet comprising 7-
[4-{4-benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-2-
one or a salt thereof as an active ingredient.
20

Background Art
[0002]
7-[4-{4-Benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-
1H-quinolin-2-one (hereunder referred to as Compound (I)) or a
25  salt thereof is known to act as a dopamine $D_2$ receptor partial
agonist, a serotonin 5-$HT_{2A}$ receptor antagonist, and an $\alpha_1$
adrenergic receptor antagonist, as well as a serotonin uptake
inhibitor (or a serotonin reuptake inhibitor) (Patent Literature
1), and to possess a wide therapeutic spectrum in the treatment
30  of central nervous system diseases (in particular,
schizophrenia).

Citation List
Patent Literature
35  [0003]

- 2 -

PTL 1: Japanese Unexamined Patent Publication No. 2006-316052

Summary of Invention
  Technical Problem

5   [0004]

           An object of the present invention is to provide a
tablet comprising Compound (I) or a salt thereof as an active
ingredient and having excellent disintegration ability, storage
stability, and high photostability.

10

Solution to Problem
  [0005]

           The present inventors conducted intensive research to
achieve the above object and found that a tablet comprising

15  Compound (I) or a salt thereof as an active ingredient and
further comprising lactose, corn starch, microcrystalline
cellulose or like excipient; low-substituted hydroxypropyl
cellulose, croscarmellose sodium, sodium carboxymethyl starch or
like disintegrant; and hydroxypropyl cellulose or like binder

20  exhibits excellent disintegration ability and storage stability.
The present inventors further found that higher photostability
can be attained by applying a coating layer containing a
colorant. The present invention was completed through further
studies based on this finding, and provides the following items.

25  [0006]

           Item 1. A tablet comprising 7-[4-{4-benzo[b]thiophen-4-
yl-piperazin-1-yl}butoxy]-1H-quinolin-2-one or a salt thereof as
an active ingredient.
  [0007]

30         Item 2. The tablet according to Item 1, further
comprising:

           an excipient (a), a binder (b), a disintegrant (c) and
a lubricant (d),

           wherein the excipient (a) is at least one member

35  selected from the group consisting of sugars, sugar alcohols,

4829-5503-8532, v. 1

– 3 –

starches, and celluloses;

 the binder (b) is a cellulose derivative;

 the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

 the lubricant (d) is a stearate.

[0008]

 Item. 3

 The tablet according to Item 2,

 wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

 the binder (b) is hydroxypropyl cellulose;

 the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

 the lubricant (d) is magnesium stearate.

[0009]

 Item 4. The tablet according to Item 2 or 3, wherein the tablet is an uncoated tablet comprising:

 0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

 10 to 98.5% by weight of the excipient (a);

 0.1 to 20% by weight of the binder (b);

 1 to 25% by weight of the disintegrant (c); and

 0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet.

[0010]

 Item 5. The tablet according to any one of Items 2 to 4, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

 1 to 2000 parts by weight of the excipient (a);

 0.01 to 100 parts by weight of the binder (b);

— 4 —

0.1 to 500 parts by weight of the disintegrant (c); and

0.01 to 50 parts by weight of the lubricant (d).

[0011]

Item 6. The tablet according to any one of Items 1 to 5, which further comprises a coating layer on the surface thereof.

[0012]

Item 7. The tablet according to Item 6, which further comprises the colorant (e) in the coating layer,

wherein the colorant (e) contains an iron oxide, and

the tablet contains 0.1 to 50% by weight of the colorant (e) with respect to the weight of the coating layer.

[0013]

Item 8. The tablet according to any one of Items 1 to 7, which is obtained by forming, into a tablet, a granulated substance obtained through wet granulation.

[0014]

Item 9. The tablet according to any one of Items 1 to 8, wherein the tablet does not contain povidone or crospovidone.

[0015]

Item 10. A method for producing a tablet, the method comprising the steps of:

(1) granulating a mixture containing 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and

(2) forming the obtained mixture into a tablet,

wherein the excipient (a) is at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

the binder (b) is a cellulose derivative;

the disintegrant (c) is at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

the lubricant (d) is a stearate.

[0016]

- 5 -

Item 11. The method for producing the tablet according to Item 10, further comprising the step of:

(3) mixing a coating agent, a colorant (e), and a liquid medium to obtain a mixture, and coating the surface of the tablet using the mixture.

Advantageous Effects of Invention

[0017]

The tablet of the present invention exhibits excellent disintegration ability, storage stability, and high photostability, so that it can be effectively used in the medical field.

Brief Description of Drawings

[0018]

Fig. 1 is a graph showing dissolution test results of tablets obtained in Examples 1-1 to 1-3, and Examples 2-1 to 2-3.

Description of Embodiments

[0019]

The tablet of the present invention comprises Compound (I) or a salt thereof as an active ingredient.

Here, the tablet of the present invention may be an uncoated tablet having no coating layer applied thereon or a coated tablet having a coating layer on the surface thereof. Furthermore, the tablet of the present invention may be used as an orally disintegrating tablet.

Compound (I) or a salt thereof can be produced by a known method, for example, that disclosed in Japanese Unexamined Patent Publication No. 2006-316052 or a method based thereon.

[0020]

Salts of Compound (I) are not particularly limited as long as they are pharmacologically acceptable. Preferable examples thereof include: metal salts such as alkali metal salts

- 6 -

(e.g., sodium salts and potassium salts), alkaline earth metal
salts (e.g., calcium salts and magnesium salts), salts of
inorganic bases such as ammonium salts, alkali metal carbonates
(e.g., lithium carbonate, potassium carbonate, sodium carbonate,
5    and cesium carbonate), alkali metal hydrogen carbonates (e.g.,
lithium hydrogen carbonate, sodium hydrogen carbonate, and
potassium hydrogen carbonate), and alkali metal hydroxides (e.g.,
lithium hydroxide, sodium hydroxide, potassium hydroxide, and
cesium hydroxide); salts of organic bases such as
10   tri(lower)alkylamines (e.g., trimethylamine, triethylamine, and
N-ethyldiisopropylamine), pyridine, quinoline, piperidine,
imidazole, picoline, dimethylaminopyridine, dimethylaniline, N-
(lower)alkyl-morpholine (e.g., N-methylmorpholine), 1,5-
diazabicyclo[4.3.0]non-5-ene (DBN), 1,8-diazabicyclo[5.4.0]undec-
15   7-ene (DBU), 1,4-diazabicyclo[2.2.2]octane (DABCO); salts of
inorganic acids such as hydrochloride, hydrobromate, sulfate,
nitrate, and phosphate; salts of organic acids such as formate,
acetate, propionate, oxalate, malonate, succinate, fumarate,
maleate, lactate, malate, citrate, tartrate, carbonate, picrate,
20   methanesulfonate, ethanesulfonate, p-toluenesulfonate, and
glutamate; and the like.

[0021]

Compound (I) or a salt thereof in the above forms may
be used singly or in a combination of two or more.

25   [0022]

The content of Compound (I) or a salt thereof is
preferably about 0.05 to 25% by weight, and more preferably about
0.1 to 15% by weight with respect to the weight of the tablet
(the weight of an uncoated tablet before applying a coating when
30   the tablet is a coated tablet).

[0023]

The tablet of the present invention preferably
comprises additives such as an excipient (a), a binder (b), a
disintegrant (c), and a lubricant (d).

35   [0024]

- 7 -

Examples of excipients (a) include, for example, sugar such as fructose, white soft sugar, sucrose, powdered sucrose, lactose, powdered hydrogenated maltose starch syrup, and maltose; sugar alcohols such as D-mannitol, D-sorbitol, xylitol,
5    erythritol, maltitol; starch such as wheat starch, corn starch, and potato starch; starch derivatives such as dextrin, beta-cyclodextrin; cellulose or a derivative thereof such as microcrystalline cellulose, powdered cellulose, ethyl cellulose, carboxymethyl cellulose (carmellose), sodium carboxymethyl
10   cellulose (carmellose sodium), and microcrystalline cellulose/carmellose sodium; silicic acid or a salt thereof such as light anhydrous silicic acid, hydrated silicon dioxide, silicon dioxide, calcium silicate, magnesium silicate, and magnesium aluminometasilicate; kaolin; titanium oxide; magnesium
15   oxide; talc; precipitated calcium carbonate; anhydrous dibasic calcium phosphate.
[0025]

These excipients (a) may be used singly or in a combination of two or more. Among these, sugar, a sugar alcohol,
20   starch, and cellulose are preferable, and lactose, microcrystalline cellulose and corn starch are more preferable.
[0026]

The excipient (a) content is not particularly limited, and is preferably about 10 to 98.5% by weight with respect to the
25   weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 20 to 95%, and still more preferably about 30 to 90% by weight.
[0027]

The excipient (a) amount is not particularly limited,
30   and is preferably about 1 to 2000 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably about 3 to 1800 parts by weight.

By setting the content and the amount of the excipient (a) as described above, the productivity can be improved.
35   [0028]

~ 8 ~

Examples of the binder (b) include sucrose; white soft sugar; pregelatinized starch; partially pregelatinized starch; cellulose or a derivative thereof such as microcrystalline cellulose, methyl cellulose, ethyl cellulose, sodium

5    carboxymethyl cellulose (carmellose sodium), hydroxyethyl cellulose, hydroxyethyl methyl cellulose, hydroxypropyl cellulose, low-substituted hydroxypropyl cellulose, hydroxypropyl methyl cellulose (hypromelloses such as hypromellose 2208, hypromellose 2906, and hypromellose 2910); other polysaccharides

10   such as acacia, powdered acacia, agar, powdered agar, guar gum, tragacanth, powdered tragacanth, pullulan, and pectin; acrylic acid based polymer such as methacrylic acid copolymer L, methacrylic acid copolymer LD, methacrylic acid copolymer S, ethyl acrylate-methyl methacrylate copolymer dispersion,

15   aminoalkyl methacrylate copolymer E, and aminoalkyl methacrylate copolymer RS; sodium alginate; purified gelatin; hydrolyzed gelatin powder; carboxyvinyl polymer; copolyvidone; povidone; polyvinyl alcohol. These binders (b) may be used singly or in a combination of two or more. Among these, a cellulose derivative

20   is preferable, and hydroxypropyl cellulose is more preferable. It should be noted that, when povidone is contained as a binder (b), the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if this component is substantially not contained.

25   [0029]

The binder (b) content is not particularly limited, and is preferably about 0.1 to 20% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), and more preferably about 0.5 to 5% by

30   weight.

[0030]

The binder (b) amount is not particularly limited, and is preferably about 0.01 to 100 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably

35   about 0.1 to 50 parts by weight. By setting the content and

– 9 –

amount of the binder (b) as described above, the productivity and disintegration ability can be improved.

[0031]

Examples of disintegrants (c) include starch or a derivative thereof such as wheat starch, corn starch, potato starch, partially pregelatinized starch, sodium carboxymethyl starch, and hydroxypropyl starch; cellulose or a derivative thereof such as microcrystalline cellulose, carboxymethyl cellulose (carmellose), calcium carboxymethyl cellulose (carmellose calcium), croscarmellose sodium, and low-substituted hydroxypropyl cellulose; crospovidone; alginic acid; and bentonite. These disintegrants (c) may be used singly or in a combination of two or more. Among these, starch or a derivative thereof, and cellulose or a derivative thereof are preferable, and sodium carboxymethyl starch, carmellose calcium, croscarmellose sodium and low-substituted hydroxypropyl cellulose are more preferable. It should be noted that, when crospovidone is contained, the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if this component is substantially not contained.

[0032]

Here, in the present specification, "low-substituted hydroxypropyl cellulose" is a derivative of cellulose including hydroxypropoxyl groups by about 5 to 16%. The amount of the hydroxypropoxyl groups in the low-substituted hydroxypropyl cellulose may be measured by a method listed in, for example, the Japanese Pharmacopeia. The low-substituted hydroxypropyl cellulose may be produced by a method known in the art, or a commercially available product thereof may also be used. Examples of commercially available products of the low-substituted hydroxypropyl cellulose include, but are not limited to, "LH series" and "NBD series" manufactured by Shin-Etsu Chemical Co., Ltd.

[0033]

Furthermore, in the present specification,

~ 10 ~

"hydroxypropyl cellulose" is a derivative of cellulose including hydroxypropoxyl groups by about 50 to 85%. The amount of the hydroxypropoxyl groups in the hydroxypropyl cellulose may be measured by a method listed in, for example, the Japanese
5   Pharmacopeia. The hydroxypropyl cellulose may be produced by a method known in the art, or a commercially available product thereof may also be used. Examples of commercially available products of the hydroxypropyl cellulose include, but are not limited to, "HPC series" manufactured by Nippon Soda Co., Ltd.;
10   and "Klucel series" manufactured by Hercules Inc.

[0034]

In the present specification, "sodium carboxymethyl starch" is a derivative of starch including sodium about 6 to 11%.
15   [0035]

The disintegrant (c) content is not particularly limited, and is preferably about 1 to 25% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 2 to 20% by
20   weight, and still more preferably about 3 to 15% by weight.

[0036]

Furthermore, the disintegrant (c) amount is not particularly limited, and is preferably about 0.1 to 500 parts by weight per 1 part by weight of Compound (I) or a salt thereof,
25   more preferably about 1 to 500 parts by weight, and still more preferably about 1 to 250 parts by weight. By setting the content and amount of the disintegrant (c) as described above, the disintegration ability can be improved.

[0037]

30   Examples of lubricants (d) include stearic acid or a salt thereof such as stearic acid, aluminum stearate, calcium stearate, and magnesium stearate; carnauba wax; glycerol ester of fatty acid; hydrogenated oil; yellow beeswax; white beeswax; talc; sodium stearyl fumarate; and polyethylene glycol (macrogols
35   such as macrogol 400, macrogol 600, macrogol 1500, macrogol 4000,

- 11 -

and macrogol 6000). These lubricants (d) may be used singly or in a combination of two or more. Among these, stearate, sucrose ester of fatty acid, and hydrogenated oil are preferable, and magnesium stearate is more preferable.

5    [0038]

The lubricant (d) content is not particularly limited, and is preferably about 0.1 to 10% by weight with respect to the weight of the tablet (when the tablet is coated, the weight of the uncoated tablet), more preferably about 0.2 to 8% by weight,

10   and still more preferably about 0.3 to 7% by weight.

[0039]

The lubricant (d) amount is not particularly limited, and is preferably about 0.01 to 50 parts by weight per 1 part by weight of Compound (I) or a salt thereof, and more preferably

15   about 0.02 to 30 parts by weight. By setting the content and amount of the lubricant (d) as described above, the tabletability can be improved.

[0040]

The tablet of the present invention may comprise other

20   components in addition to the excipient (a), the binder (b), the disintegrant (c), and the lubricant (d). Examples of other components include various additives applicable to tablets, such as colorants, pH adjusters, preservatives, absorbefacients, taste enhancers, antioxidants, buffers, chelating agents, abrasives,

25   solvents, hardening agents, surfactants, sweeteners, fluidizers, brightening agents, and flavors. Those components may be used in an amount that does not adversely affect the present invention.

[0041]

The tablet of the present invention may be used as an

30   uncoated tablet that comprises the above described components but does not have a coating layer provided thereon. A coated tablet (film-coated tablet) provided with a coating layer is preferable to achieve long-term storage stability and prevent degradation due to light or the like.

35

~ 12 ~

[0042]

The coating layer may comprise pharmaceutical additives, such as a coating agent, plasticizer, dispersant, defoaming agent, and the like, usually used for coating (for providing a coat to) orally administrable pharmaceutical preparations.

[0043]

Examples of additives include celluloses such as microcrystalline cellulose, methyl cellulose, ethyl cellulose, carmellose sodium, hydroxypropyl cellulose, and hydroxypropyl methyl cellulose (hypromellose) and derivatives thereof; polyethylene glycol (macrogol); polyvinyl alcohol; titanium oxide; and talc. These additives may be used singly or in a combination of two or more.

[0044]

Among these, a combination of hydroxypropyl methyl cellulose (hypromellose), talc, and titanium oxide, which are components for coating agent, is preferable. It should be noted that, when polyethylene glycol (macrogol) exists in the coating layer, the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if polyethylene glycol (macrogol) is substantially not contained.

[0045]

Furthermore, with regard to the coated tablet, by coloring the coating layer, photostability can be supplied to the coated tablet. Therefore, a colorant (e) is preferably added to the coating agent for coating the tablet.

[0046]

Examples of colorants (e) include: iron oxides such as red ferric oxide, yellow ferric oxide, and black iron oxide; titanium oxide; beta-carotene; food blue No. 2; food blue No. 2 aluminium lake; and riboflavin.

[0047]

Among these, containing an iron oxide is more preferable from a standpoint of not only adding a color to the

-- 13 --

tablet but also further improving photostability of the tablet.

[0048]

The colorant (e) may be suitably selected, or used in combination, depending on the color of the coated tablet prepared. For example, to obtain a white coated tablet, titanium oxide is used; to obtain a red coated tablet, a combination of titanium oxide and red ferric oxide is used; to obtain a yellow coated tablet, a combination of titanium oxide and yellow ferric oxide is used; to obtain a blue coated tablet, a combination of titanium oxide and food blue No. 2 aluminium lake is used; to obtain an orange coated tablet, a combination of titanium oxide, red ferric oxide, and yellow ferric oxide is used; to obtain a green coated tablet, a combination of titanium oxide, yellow ferric oxide, and black iron oxide, or a combination of titanium oxide, yellow ferric oxide and food blue No. 2 aluminium lake is used; and to obtain a purple coated tablet, a combination of titanium oxide, red ferric oxide and black iron oxide, or a combination of titanium oxide, red ferric oxide and food blue No. 2 aluminium lake is used. As described above, a coated tablet may be made into various colors.

[0049]

The colorant (e) content is preferably about 0.1 to 3% by weight with respect to the total weight of the coated tablet, and about 5 to 50% by weight with respect to the weight of the coating layer of the coated tablet.

[0050]

The amount of a coating layer in tablet that is coated using the coating agent and a colorant (e) that is contained if necessary is preferably about 1 to 10 parts by weight per 100 parts by weight of a tablet (uncoated tablet) before having a coating provided thereon.

[0051]

Specific preferable examples of the additives contained in the tablet of the present invention include:

as an excipient (a), at least one member selected from

- 14 -

the group consisting of sugars, sugar alcohols, starches, and
celluloses;

    as a binder (b), cellulose derivatives;

    as a disintegrant (c), at least one member selected
5  from the group consisting of cellulose derivatives and starch
derivatives; and,

    as a lubricant (d), stearates.

[0052]

    From a standpoint of productivity and disintegration
10  ability, these additives are preferably used in a combination of:
as an excipient (a), at least one member selected from the group
consisting of lactose, corn starch, and microcrystalline
cellulose; as a binder (b), hydroxypropyl cellulose; as a
disintegrant (c), at least one member selected from the group
15  consisting of low-substituted hydroxypropyl cellulose,
croscarmellose sodium, and sodium carboxymethyl starch; and, as a
lubricant (d), magnesium stearate.

[0053]

    The tablet of the present invention preferably contains
20  each of the components in the content and amount shown below.

[0054]

    Content of each of the Components in the Tablet

Compound (I) or a salt thereof:

           0.05 to 20% by weight
25  Sugar and/or sugar alcohol:  20 to 80% by weight

Starch:           5 to 50% by weight

Cellulose:       1 to 30% by weight

Hydroxypropyl cellulose: 0.1 to 20% by weight

At least one member selected from the group consisting of low-
30  substituted hydroxypropyl cellulose, croscarmellose sodium, and
starch derivatives:

           1 to 25% by weight

Stearate:       0.1 to 10% by weight

[0055]

35      Amount of each of the Components in the Tablet per 1

– 15 –

part by weight of Compound (I) or a Salt thereof

| | |
|---|---|
| Sugar and/or sugar alcohol: | 1 to 1000 parts by weight |
| Starch: | 1 to 400 parts by weight |
| Cellulose: | 0.1 to 200 parts by weight |
| Hydroxypropyl cellulose: | 0.01 to 100 parts by weight |

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:

| | |
|---|---|
| | 0.1 to 500 parts by weight |
| Stearate: | 0.01 to 50 parts by weight |

[0056]

The content and amount of each of the components in a further preferable mode of the tablet of the present invention are shown below.

[0057]

Content of each of the Components in the Tablet
Compound (I) or a salt thereof:

| | |
|---|---|
| | 0.1 to 15% by weight |
| Lactose: | 30 to 60% by weight |
| Corn starch: | 10 to 30% by weight |
| Microcrystalline cellulose: | 5 to 20% by weight |
| Hydroxypropyl cellulose: | 0.5 to 10% by weight |

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

| | |
|---|---|
| | 2 to 15% by weight |
| Magnesium stearate: | 0.1 to 10% by weight |

[0058]

Amount of each of the Components in the Tablet per 1 Part by Weight of Compound (I) or a Salt Thereof

| | |
|---|---|
| Lactose: | 2 to 500 parts by weight |
| Corn starch: | 2 to 200 parts by weight |
| Microcrystalline cellulose: | 0.5 to 100 parts by weight |
| Hydroxypropyl cellulose: | 0.05 to 50 parts by weight |

At least one member selected from the group consisting of low-

- 16 -

substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

|  |  |
| --- | --- |
|  | 1 to 250 parts by weight |
| Magnesium stearate: | 0.05 to 30 parts by weight |

[0059]

When the tablet of the present invention is a coated tablet, preferable examples of the additives contained in the coated tablet include, as the components for an uncoated tablet before coating:

as an excipient (a), at least one member selected from the group consisting of sugars, sugar alcohols, starches, and celluloses;

as a binder (b), cellulose derivatives;

as a disintegrant (c), at least one member selected from the group consisting of cellulose derivatives and starch derivatives; and

as a lubricant (d), stearates, and as components for the coating layer:

cellulose derivatives, talc, titanium oxides and iron oxides as colorant (e).

[0060]

Furthermore, when the tablet of the present invention is a coated tablet, a more preferable combination is a formulation obtained by applying a coating layer on an uncoated tablet; in which, the uncoated tablet contains Compound (I) or a salt thereof, lactose, corn starch, microcrystalline cellulose, low-substituted hydroxypropyl cellulose, hydroxypropyl cellulose, and magnesium stearate, and the coating layer contains hypromellose, talc, titanium oxide, and at least one colorant (e) (iron oxide) selected from the group consisting of red ferric oxide, yellow ferric oxide, and black iron oxide.

[0061]

The preferable content and amount of each of the components, and further preferable content and amount of each of the components in a preferable mode of the coated tablet are

– 17 –

shown below.

[0062]

Content of each of the Components in the Uncoated Tablet

Compound (I) or a salt thereof:

|  | |
|---|---|
|  | 0.05 to 20% by weight |
| Sugar and/or sugar alcohol: | 20 to 80% by weight |
| Starch: | 5 to 50% by weight |
| Cellulose: | 1 to 30% by weight |
| Hydroxypropyl cellulose: | 0.1 to 20% by weight |

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:

|  | |
|---|---|
|  | 1 to 25% by weight |
| Stearate: | 0.1 to 10% by weight |

[0063]

Content of each of the Components in the Coating Layer (per entire coated tablet)

| Cellulose derivative: | 1 to 6% by weight |
|---|---|
| Talc: | 0.1 to 1% by weight |
| Titanium oxide: | 0.1 to 2% by weight |
| Iron oxide: | 0.01 to 1% by weight |

[0064]

Amount of each of the Components in the Coated Tablet per 1 part by weight of Compound (I) or a Salt thereof

| Lactose: | 1 to 1000 parts by weight |
|---|---|
| Starch: | 1 to 400 parts by weight |
| Cellulose: | 0.1 to 200 parts by weight |
| Hydroxypropyl cellulose: | 0.01 to 100 parts by weight |

At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and starch derivatives:

|  | |
|---|---|
|  | 0.1 to 500 parts by weight |
| Stearate: | 0.01 to 50 parts by weight |
| Hypromellose: | 0.1 to 50 parts by weight |

-- 18 --

| | |
|---|---|
| Talc: | 0.01 to 10 parts by weight |
| Titanium oxide: | 0.01 to 20 parts by weight |
| Iron oxide: | 0.0005 to 5 parts by weight |

[0065]

5   The content and amount of each of the components in a further preferable mode of the coated tablet are shown below.

[0066]

Content of each of the Components in the Uncoated Tablet

10   Compound (I) or a salt thereof:

| | |
|---|---|
| | 0.1 to 15% by weight |
| Lactose: | 30 to 60% by weight |
| Corn starch: | 10 to 30% by weight |
| Microcrystalline cellulose: | 5 to 20% by weight |
| Hydroxypropyl cellulose: | 0.5 to 10% by weight |

15   At least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

| | |
|---|---|
| | 2 to 15% by weight |
| Magnesium stearate: | 0.1 to 10% by weight |

20

[0067]

Content of each of the Components in the Coating Layer (per entire coated tablet)

| | |
|---|---|
| Hypromellose: | 1.5 to 4% by weight |
| Talc: | 0.2 to 0.5% by weight |
| Titanium oxide: | 0.2 to 1% by weight |
| Iron oxide: | 0.02 to 0.5% by weight |

25

[0068]

Amount of each of the Components in the Coated Tablet per 1 part by weight of Compound (I) or a Salt thereof

| | |
|---|---|
| Lactose: | 2 to 500 parts by weight |
| Corn starch: | 2 to 200 parts by weight |
| Microcrystalline cellulose: | 0.5 to 100 parts by weight |
| Hydroxypropyl cellulose: | 0.05 to 50 parts by weight |

30

35   At least one member selected from the group consisting of low-

– 19 –

substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch:

|  |  |
|---|---|
|  | 1 to 250 parts by weight |
| Magnesium stearate: | 0.05 to 30 parts by weight |
| Hypromellose: | 0.2 to 40 parts by weight |
| Talc: | 0.02 to 8 parts by weight |
| Titanium oxide: | 0.02 to 15 parts by weight |
| Iron oxide: | 0.001 to 2.5 parts by weight |

[0069]

The method for producing the tablet of the present invention is not particularly limited; for example, the tablet of the present invention can be produced by a step of forming into a tablet a mixture containing Compound (I) or a salt thereof, and components other than Compound (I) or a salt thereof necessary to form a tablet (i.e., an excipient (a), a binder (b), a disintegrant (c), a lubricant (d) and the like). Alternatively, the tablet of the present invention can be produced by the method comprising: granulating a mixture containing Compound (I) or a salt thereof, an excipient (a), a binder (b), and a disintegrant (c), and further mixing thereto a lubricant (d); and forming the obtained mixture into a tablet.

[0070]

The granulation method used for forming the granulated substance into a tablet is not particularly limited. Examples thereof include dry granulation methods and wet granulation methods (e.g., a fluidized-bed granulation method, and a knead-granulation method). Among these, wet granulation methods are preferably used for the production, from a standpoint of being able to uniformly mix the active ingredient and other components in the tablet, and being able to obtain a tablet whose components are uniformly distributed therein.

[0071]

Examples of the tablet forming methods include tableting, such as direct compression tableting, dry tableting,

- 20 -

wet tableting, and external lubrication tableting.

[0072]

The coated tablet of the present invention can be produced by mixing a coating agent, a colorant (e), and a liquid medium; spraying the obtained liquid mixture on the surface of the uncoated tablet obtained by the method described above; and successively drying it.

[0073]

Examples of the liquid medium (e.g., a dispersion medium) used in the above described step include: water; methanol, ethanol, isopropanol, and like lower alcohols; acetone, methyl ethyl ketone, and like ketones; dichloromethane, dichloroethane, chloroform, carbon tetrachloride and like halogenated hydrocarbons; and mixtures of these solvents.

[0074]

The tablet of the present invention preferably comprises Compound (I), which is an active ingredient, or a salt thereof in an amount of about 0.05 to 25 mg calculated as Compound (I).

[0075]

The dose of the tablet of the present invention is suitably selected according to the intended use; the patient's age, sex, and other conditions; the severity of the disease; and the like. The dose is preferably selected so that the amount of Compound (I) (i.e., the active ingredient) or a salt thereof taken is about 0.05 to 6 mg per day calculated as Compound (I).

Examples

[0076]

The present invention is explained in detail below with reference to Examples. However, the scope of the present invention is not limited to these Examples. Note that in all of the Examples described below, Compound (I) was "7-[4-{4-benzo[b]thiophen-4-yl-piperazin-1-yl}butoxy]-1H-quinolin-2-one."

[0077]

- 21 -

Example 1

Uncoated tablets (a tablet not provided with a coating layer) of Compound (I) were produced using the components and amounts shown in Table 1, by following the procedures described

5   below.

[0078]

Example 1-1

Compound (I), lactose, corn starch, microcrystalline cellulose (CEOLUS PH-301), and low-substituted

10  hydroxypropylcellulose (LH-11, manufactured by Shin-Etsu Chemical Co., Ltd., hydroxypropoxyl groups content: 10.0 to 12.9%) were weighed and mixed. A separately prepared aqueous solution of hydroxypropylcellulose was added to the powder mixture, followed by wet kneading granulation. After drying and sizing the result,

15  magnesium stearate was added thereto and mixed. The resulting mixture was compressed using a single tableting machine equipped with a punch of diameter 6.5 mm in such a manner that the weight of the tablet became 100 mg, obtaining uncoated tablets containing 10 mg of Compound (I) per tablet.

20  [0079]

Example 1-2

Compound (I), lactose, corn starch, microcrystalline cellulose, and croscarmellose sodium were weighed and mixed. A separately prepared aqueous solution of hydroxypropylcellulose

25  was added to the powder mixture, followed by wet kneading granulation. After drying and sizing the result, magnesium stearate was added thereto and mixed. The resulting mixture was compressed using a single tableting machine equipped with a punch of diameter 6.5 mm in such a manner that the weight of the tablet

30  became 100 mg, obtaining uncoated tablets containing 10 mg of Compound (I) per tablet.

[0080]

Example 1-3

Compound (I), lactose, corn starch, microcrystalline

35  cellulose, and sodium carboxymethyl starch were weighed and mixed.

— 22 —

A separately prepared aqueous solution of hydroxypropylcellulose
was added to the powder mixture, followed by wet kneading
granulation.  After drying and sizing the result, magnesium
stearate was added thereto and mixed.  The resulting mixture was
5   compressed using a single tableting machine equipped with a punch
of diameter 6.5 mm in such a manner that the weight of the tablet
became 100 mg, obtaining uncoated tablets containing 10 mg of
Compound (I) per tablet.
[0081]
10

~ 23 ~

Table 1

| Components (mg) | Example 1-1 | Example 1-2 | Example 1-3 |
|---|---|---|---|
| Compound (I) | 10.0 | 10.0 | 10.0 |
| Lactose | 48.2 | 53.2 | 53.2 |
| Corn starch | 20.0 | 20.0 | 20.0 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | ~ | ~ |
| Croscarmellose sodium | ~ | 5.0 | ~ |
| Sodium carboxymethyl starch | ~ | ~ | 5.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.8 | 0.8 | 0.8 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |

[0082]

Table 2 shows the tablet properties of uncoated tablets obtained in Examples 1-1 to 1-3.

[0083]

Table 2

| Tablet properties | Example 1-1 | Example 1-2 | Example 1-3 |
|---|---|---|---|
| Hardness (Kp, n=3) | 5.4 | 5.6 | 4.7 |
| Thickness (mm, n=3) | 2.78 | 2.77 | 2.82 |
| Disintegration time (mm:ss, n=6) | 1:18-1:36 | 2:00-2:16 | 1:09-1:35 |

[0084]

The measurement of disintegration time (disintegration test) results show the measurement results of six tablets of each Example. The test was performed using water as a test liquid according to the disintegration test of the Japanese Pharmacopeia (without an auxiliary disk).

[0085]

Examples 2-1 to 2-3

The uncoated tablets produced in Examples 1-1 to 1-3 each having a weight of 100 mg and containing 10 mg of Compound

~ 24 ~

(I) were subjected to coating by spraying a coating liquid comprising the coating layer components whose amounts are shown in Table 3 thereby obtaining coated tablets.

[0086]

Table 3

| Components (mg) | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Uncoated tablet | Example 1-1 | Example 1-2 | Example 1-3 |
| Weight of uncoated tablet (mg) | 100.0 | 100.0 | 100.0 |
| Coating layer (mg) | | | |
| Hypromellose | 2.07 | 2.07 | 2.07 |
| Macrogol 6000 | 0.30 | 0.30 | 0.30 |
| Talc | 0.30 | 0.30 | 0.30 |
| Titanium oxide | 0.30 | 0.30 | 0.30 |
| Yellow ferric oxide | 0.03 | 0.03 | 0.03 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 103.0 | 103.0 | 103.0 |

[0087]

Measurements of disintegration time (disintegration tests) were performed for the coated tablets produced in Examples 2-1 to 2-3 in the same manner as in Example 1-1. Table 4 shows the results. No delay in disintegration time due to coating was observed in the coated tablets produced in Examples 2-1 to 2-3.

[0088]

Table 4

| | Example 2-1 | Example 2-2 | Example 2-3 |
|---|---|---|---|
| Disintegration time (mm:ss, n=6) | 1:35-1:50 | 2:22-2:40 | 1:26-1:44 |

[0089]

-- 25 --

Dissolution tests were performed for the uncoated tablets produced in Examples 1-1 to 1-3, and the coated tablets produced in Examples 2-1 to 2-3. Fig. 1 shows the results.

[0090]

5        The dissolution test results show the average values of the measurement results of two tablets of each Example. The dissolution test was performed in accordance with the dissolution test method (paddle method; 50 rpm) of the Japanese Pharmacopoeia, using a disodium hydrogenphosphate-citric acid buffer solution
10      (900 mL) with pH 4.5 as a test liquid.

[0091]

The dissolution test results confirm excellent dissolution profiles of the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3.
15      [0092]

Furthermore, a stability test was performed for the uncoated tablets produced in Examples 1-1 to 1-3 and the coated tablets produced in Examples 2-1 to 2-3 under the storage conditions of light irradiation (visible light: total illuminance
20      of $1.8 \times 10^6$ lux·hr; ultraviolet light: total intensity of 300 W·hr/m$^2$) and a closed system at 40°C (sealed in bottles for one month or three months). The contents of Compound (I) and impurity after the storage in each condition were measured. Table 5 shows the results.
25      [0093]

Note that after the storage under the above light irradiation conditions, yellow coloring was observed in the uncoated tablets produced in Examples 1-1 to 1-3.

[0094]

30

~ 26 ~

Table 5

| Example No. | 1-1 | 1-2 | 1-3 | 2-1 | 2-2 | 2-3 |
|---|---|---|---|---|---|---|
| Contents of Compound (I) (%, n=3) | | | | | | |
| Initial | 98.1 | 99.4 | 99.7 | 99.6 | 101.5 | 101.9 |
| Light irradiation | 98.3 | 99.3 | 99.8 | 100.0 | 101.7 | 102.3 |
| 40°C ~1 month | 99.6 | 101.4 | 100.8 | 102.2 | 103.5 | 103.4 |
| 40°C ~3 months | 98.0 | 100.5 | 100.0 | 100.1 | 102.8 | 103.5 |
| Content of impurity (%, n=1) | | | | | | |
| Initial | 0.365 | 0.362 | 0.371 | 0.373 | 0.367 | 0.374 |
| Light irradiation | 0.662 | 0.634 | 0.592 | 0.477 | 0.500 | 0.463 |
| 40°C ~ 1 month | 0.354 | 0.378 | 0.376 | 0.370 | 0.393 | 0.411 |
| 40°C ~ 3 months | 0.409 | 0.373 | 0.401 | 0.385 | 0.409 | 0.419 |

Example 3-1

Using the components and amounts shown in Table 6,
5  uncoated tablets containing 0.25 mg of Compound (I) per tablet
were produced in the same manner as in Example 1-1, except that a
rotary tableting machine equipped with a punch of diameter 6.0 mm
was used to obtain uncoated tablets each having a weight of 90 mg.
[0095]
10  Table 6

| Components (mg) | Example 3-1 |
|---|---|
| Compound (I) | 0.25 |
| Lactose | 48.15 |
| Corn starch | 20.0 |
| Microcrystalline cellulose | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 |
| Hydroxypropylcellulose | 1.0 |
| Magnesium stearate | 0.6 |
| Weight of uncoated tablet (mg) | 90.0 |

[0096]

Examples 3-2 to 3-9

4829-5503-8532, v. 1

— 27 —

The uncoated tablets produced in Example 3-1 each
having a weight of 90 mg and containing 0.25 mg of Compound (I)
were subjected to coating by spraying a coating liquid comprising
the coating layer components whose amounts are shown in Table 7
5   thereby obtaining coated tablets.

[0097]

Table 7

| Example No. | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
|---|---|---|---|---|---|---|---|---|
| Uncoated tablet | Example 3-1 | | | | | | | |
| Weight of uncoated tablet (mg) | 90.0 | | | | | | | |
| Coating layer (mg) | | | | | | | | |
| Hypromellose | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 | 1.8 | 2.1 |
| Macrogol 6000 | 0.3 | – | 0.3 | – | 0.3 | – | 0.3 | – |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.6 | 0.6 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 |
| red ferric oxide | – | – | 0.06 | 0.06 | – | – | – | – |
| Yellow ferric oxide | – | – | – | – | 0.06 | 0.06 | – | – |
| Food blue No. 2 Aluminium lake (3-5%) | – | – | – | – | – | – | 0.06 | 0.06 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

[0098]

Furthermore, a stability test was performed for the
10   uncoated tablets produced in Example 3-1 and the coated tablets
produced in Examples 3-2 to 3-9 under the storage conditions of
light irradiation (visible light: total illuminance of $1.8 \times 10^6$
lux·hr; ultraviolet light: total intensity of 300 W·hr/m$^2$) and an
open system at 40°C/75% RH (three months, six months), i.e.,
15   conditions as or more severe as those of Examples 1-1 to 1-3 and
Examples 2-1 to 2-3. The contents of impurity after the storage
in each condition were measured. Table 8 shows the results.

No increase in impurity was observed in the tablets of
Examples 3-5 and 3-7, even after the light irradiation.

~ 28 ~

[0099]

Table 8

| Example No. | 3-1 | 3-2 | 3-3 | 3-4 | 3-5 | 3-6 | 3-7 | 3-8 | 3-9 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | (Content of Impurity: a, n=1) | | | | | |
| Initial | 0.687 | 0.772 | 0.773 | 0.683 | 0.713 | 0.677 | 0.805 | 0.951 | 0.909 |
| Light irradiation | 4.142 | 2.069 | 1.469 | 1.401 | 0.676 | 1.493 | 0.675 | 2.573 | 1.186 |
| 40°C/75% RH - 3 months | 0.980 | 1.820 | 0.900 | 1.613 | 1.093 | 1.483 | 1.112 | 2.055 | 1.393 |
| 40°C/75% RH - 6 months | 1.140 | 2.264 | 1.672 | 2.232 | 1.232 | 1.766 | 1.247 | 2.130 | 1.783 |

4829-5603-8632, v. 1

- 30 -

[0100]

Examples 4-1 to 4-13

Coated tablets of Compound (I) of Examples 4-1 to 4-13 that comprise the components and amounts shown in Table 9 were produced in the same manner as in Example 3-2.

[0101]

Table 9

| Components (mg) | Example No. | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4-1 | 4-2 | 4-3 | 4-4 | 4-5 | 4-6 | 4-7 | 4-8 | 4-9 | 4-10 | 4-11 | 4-12 | 4-13 |
| Compound (%) | 0.05 | 0.25 | 0.5 | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 0.25 | 0.25 | 0.25 | 1.0 |
| Lactose | 46.35 | 48.15 | 47.9 | 47.4 | 46.4 | 45.4 | 44.4 | 43.4 | 42.4 | 48.15 | 48.15 | 48.15 | 47.4 |
| Corn starch | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 |
| Microcrystalline cellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Low-substituted hydroxypropylcellulose | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Hydroxypropylcellulose | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| Magnesium stearate | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 |
| Weight of uncoated tablet (mg) | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 | 90.0 |
| Hypromellose | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 |
| Talc | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 |
| Titanium oxide | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.54 | 0.57 |
| Red ferric oxide | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 | – | – | 0.02 | 0.01 |
| Yellow ferric oxide | – | – | – | – | – | – | – | – | – | – | 0.04 | – | – |
| Black iron oxide | – | – | – | – | – | – | – | – | – | 0.06 | 0.02 | 0.04 | 0.02 |
| Weight of coating layer (mg) | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 |
| Weight of coated tablet (mg) | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 | 93.0 |

4629-6593-8552, v. 1

~ 32 ~

Industrial Applicability

[0102]

     The tablet of the present invention comprising benzothiophen compound (I) or a salt thereof has excellent disintegration ability, storage stability, and photostability.  Therefore, the tablet of the present invention is highly usable in the medical field.

– 33 –

CLAIMS

1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), a binder (b), a disintegrant (c), and a lubricant (d),

wherein the excipient (a) is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;

the binder (b) is hydroxypropyl cellulose;

the disintegrant (c) is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate.

2. The tablet according to claim 1, wherein the tablet is an uncoated tablet comprising:

0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof;

10 to 98.5% by weight of the excipient (a);

0.1 to 20% by weight of the binder (b);

1 to 25% by weight of the disintegrant (c); and

0.1 to 10% by weight of the lubricant (d), with respect to the weight of the uncoated tablet.

3. The tablet according to claim 1 or 2, wherein per 1 part by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof, the tablet comprises:

1 to 2000 parts by weight of the excipient (a);

0.01 to 100 parts by weight of the binder (b);

0.1 to 500 parts by weight of the disintegrant (c); and

-- 34 --

0.01 to 50 parts by weight of the lubricant (d).

4.  The tablet according to claim 1, which
further comprises a coating layer on the surface thereof.

5.  The tablet according to claim 4, which
further comprises the colorant (e) in the coating layer,
    wherein the colorant (e) contains an iron
oxide, and
    the tablet contains 0.1 to 50% by weight of the
colorant (e) with respect to the weight of the coating
layer.

6.  The tablet according to claim 1 or 2, which
is obtained by forming, into a tablet, a granulated
substance obtained through wet granulation.

7.  The tablet according to claim 1 or 2,
wherein the tablet does not contain povidone or
crospovidone.

8.  A method for producing a tablet, the method
comprising the steps of:
    (1) granulating a mixture containing 7-[4-(4-
benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-
2-one or a salt thereof, an excipient (a), a binder (b),
and a disintegrant (c), and further mixing thereto a
lubricant (d); and
    (2) forming the obtained mixture into a tablet,
    wherein the excipient (a) is at least one
member selected from the group consisting of lactose, corn
starch, and microcrystalline cellulose;
    the binder (b) is hydroxypropyl cellulose;
    the disintegrant (c) is at least one member
selected from the group consisting of low-substituted

– 35 –

hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch; and

the lubricant (d) is magnesium stearate.

5                9.  The method for producing the tablet according to claim 8, further comprising the step of:

(3)  mixing a coating agent, a colorant (e), and a liquid medium to obtain a coating mixture, and coating the surface of the tablet using the coating mixture.

10

- 36 -

## ABSTRACT

This invention relates to a tablet containing,
as an active ingredient, 7-[4-(4-benzo[b]thiophen-4-yl-
5   piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,
that has excellent disintegration ability, storage
stability and photostability.

The tablet of the present invention comprising
an uncoated tablet containing 7-[4-(4-benzo[b]thiophen-4-
10  yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt
thereof as an active ingredient, excipients such as
lactose, corn starch, and microcrystalline cellulose;
disintegrants such as low-substituted
hydroxypropylcellulose, croscarmellose sodium, and sodium
15  carboxymethyl starch; binders such as
hydroxypropylcellulose; lubricants such as stearate;

and further comprising a coating layer
containing hypromellose; talc; titanium oxide; colorant;
and the like, the coating layer being applied to the
20  surface of the uncoated tablet.

**EXHIBIT 6**
**Filed Under Seal**

# EXHIBIT 7
# Filed Under Seal

**EXHIBIT 8**
**Filed Under Seal**

**EXHIBIT 9**
**Filed Under Seal**

# EXHIBIT 10
# Filed Under Seal